Marcus A. Helt (Texas Bar #24052187)
Jane A. Gerber (Texas Bar #24092416)
MCDERMOTT WILL & EMERY LLP
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201
Tel:    (214) 210-2821 / Fax: (972) 528-5765
Email:   mhelt@mwe.com
Email:   jagerber@mwe.com

*PROPOSED COUNSEL FOR THE DEBTOR
AND DEBTOR-IN-POSSESSION*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

|  |  |
|---|---|
| In re: | ) )  Chapter 11 ) |
| RED RIVER WASTE SOLUTIONS, LP,[1] | )  Case No. 21-42423 (ELM) ) |
| Debtor. | ) ) |

**DEBTOR'S APPLICATION FOR AN ORDER AUTHORIZING DEBTOR TO
(I) EMPLOY AND RETAIN CRS CAPSTONE PARTNERS LLC TO PROVIDE A
CHIEF RESTRUCTURING OFFICER AND ADDITIONAL PERSONNEL AND
(II) DESIGNATE JAMES CALANDRA AS THE CHIEF RESTRUCTURING OFFICER
OF THE DEBTOR AS OF THE PETITION DATE**

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON DECEMBER 16, 2021 AT 1:30 P.M. (CT) BEFORE THE HONORABLE EDWARD L MORRIS, IN THE ELDON B. MAHON U.S. COURTHOUSE, AND MAY BE ATTENDED REMOTELY (BY VIDEO AND TELEPHONE VIA THE COURT'S WEBEX PLATFORM) AS SET FORTH IN GENERAL ORDER 2021-06.  IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING.  UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-THREE (23) DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING.  YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

---

[1]    The last four digits of the Debtor's taxpayer identification number are 8719.  The Debtor's principal office is located at 4004 East Hwy, 290 West, Dripping Springs, Texas 78620.

1

> **WEBEX CONNECTION INFORMATION AND INSTRUCTIONS MAY BE FOUND IN GENERAL ORDER 2021-06 AND CLERK'S NOTICE 21-05. WEBEX HEARING INSTRUCTIONS FOR THE HONORABLE EDWARD L. MORRIS MAY BE FOUND AT THE FOLLOWING WEB ADDRESS:**
>
> **https://www.txnb.uscourts.gov/content/judge-edward-l-morris-0**
>
> **For WebEx Video Participation/Attendance**:
>
> Link: **https://us-courts.webex.com/meet/morris**
>
> **For WebEx Telephonic Only Participation/Attendance**:
>
> Dial-In: 1.650.479.3207
>
> Meeting ID: 473 581 124
>
> All parties may access copies of the Debtor's filings on the website of the Debtor's proposed claims and noticing agent at: https://cases.stretto.com/RedRiverWasteSolutions or call (855 287-3382.

Red River Waste Solutions, LP, as the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Debtor or "Red River")[2] respectfully states the following in support of this Application (this "Application"):[3]

## Relief Requested

1. The Debtor seeks entry of an order, substantially in the form attached hereto as **Exhibit B** (the "Order") authorizing the Debtor to (i) employ and retain CRS Capstone Partners LLC ("Capstone" or the "Firm") to provide a chief restructuring officers and additional personnel, and (ii) designate James Calandra ("Mr. Calandra") as the chief restructuring officer (the "CRO") effective as of October 14, 2021, pursuant to sections 105(a) and 363 of the Bankruptcy Code (defined herein) and in accordance with the terms and conditions reflected in the Engagement Agreement (defined herein), including the professional service fees (the "Professional Service

---

[2] A detailed description of the Debtor and its business, and the facts and circumstances supporting this Application are set forth in the *Declaration of James Calandra in Support of Chapter 11 Petition and First Day Motions* [Docket No. 2] (the "First Day Declaration").

[3] Capitalized terms used but not otherwise defined in this Application shall have the meanings ascribed to them in the *Statement of Background Information* [Docket No. 3] (the "Statement") and the First Day Declaration, filed October 14, 2021.

2

Fees") set forth therein. Specifically, the Debtor requests entry of the Order authorizing the employment and retention of Capstone to render these services pursuant to the terms of the engagement agreement executed of July 23, 2021, between the Debtor and Capstone, a copy of which is attached to the Order as **Exhibit 1** (the "Engagement Agreement").[4] In support of the Application, the Debtor submits the *Declaration of James Calandra in Support of the Debtor's Application for an Order Authorizing the Debtor to (I) Employ and Retain of CRS Capstone Partners LLC to Provide a Chief Restructuring Officer and Additional Personnel and (II) Designate James Calandra as the Chief Restructuring Officer as of the Petition Date* attached hereto as **Exhibit A** (the "Calandra Declaration").

### Jurisdiction and Venue

2.  The United States Bankruptcy Court for the Northern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The Debtor confirms its consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court.

3.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.  The bases for the relief requested herein are sections 105(a), and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Bankruptcy Rules 2014 and 2016 and rules 2014-1, 2016, and 9013-1 of the Local Bankruptcy Rules for the Northern District of Texas (the "Local Rules").

### Background

5.  On October 14, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The same day the Debtor filed its Statement and the First Day Declaration, describing the facts and circumstances of the case and supporting this Application, which are incorporated by reference herein.

---

[4] To the extent there is any inconsistency between this Application, the Order, and the Engagement Agreement, the Order shall govern.

3

6.  The Debtor is operating its business and managing its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner in this chapter 11 case.  The *Amended Appointment of the Official Unsecured Creditors' Committee* [Docket No. 89] was filed on October 28, 2021, appointing the official committee of unsecured creditors (the "Committee").

7.  Beginning on or around July 23, 2021, and prior to the Petition Date, the Debtor consulted with Capstone and Capstone provided restructuring advisory services prepetition.  Effective as of the Petition Date, Capstone continued to provide services to the Debtor pursuant to the terms of the Engagement Agreement.

### Capstone's and Mr. Calandra's Qualifications

8.  To ensure appropriate compliance with its duties and obligations as debtor in possession, the Debtor seeks to employ Capstone to provide a CRO in order to enhance the attempts to maximize the value of the estate.  Due to Capstone's familiarity with the Debtor's business, as well as the experience providing restructuring, crisis and turnaround management, with a major focus on crisis management and the restructuring of distressed companies, the Debtor has determined that Capstone is best-suited to provide these services.  Capstone intends to provide Mr. Calandra, a Managing Director in the Firm, as the Debtor's CRO.

9.  The Debtor believes that Capstone has considerable experience in matters of this character and is a firm well-qualified to handle the role of providing a CRO and additional personnel in connection with this chapter 11 case.  In addition, Capstone is well-acquainted with the operations of the Debtor and is more than capable of assuming its role expeditiously and efficiently.  In particular, Mr. Calandra has already been employed by the Debtor in connection with preparing for this chapter 11 case and is intimately familiar with the Debtor's business and financial situation.

10.  The Debtor's selection of Capstone is appropriate under the circumstances and in the best interest of its estate, and Capstone has ample experience providing the services described in the Engagement Agreement.  Accordingly, the Debtor believes that Capstone is both uniquely

4

qualified and able to advise the Debtor in this chapter 11 case in an efficient, timely, and value-maximizing manner.

### Scope of Services to be Provided and Terms of Engagement

11.     The Debtor believes that it is necessary and appropriate to employ Capstone to provide a CRO that is familiar with the industry in which the Debtor operates to render the professional services described herein to allow the Debtor to, among other things, fully evaluate the Debtor's current financial condition and prospects and to assist in the negotiation, promulgation, and evaluation of any proposed transaction involving the assets of the Debtor, including any sale transaction(s) and/or plan of reorganization.  The Debtor requires the services of an experienced advisor such as Capstone to provide a CRO and additional personnel to guide the Debtor through its reorganization efforts in order to maximize the value of the estate.

12.     The Debtor selected Capstone to provide a CRO because of its professionals' advisory experience as it relates to debtors' and creditors' rights, insolvency, debt restructuring and corporate reorganization, and its involvement in numerous other proceedings under chapter 11 of the Bankruptcy Code before this and other courts.  Capstone also possesses industry expertise that is critical for the Debtor.  Capstone's as well as Mr. Calandra's qualifications and experience are further described in the Calandra Declaration attached hereto.

13.     Subject to the Court's approval, the Debtor anticipates that Capstone will perform the following financial advisory services, among others (collectively, the "Services"), pursuant to the terms and provisions of the Engagement Agreement, as necessary and appropriate, and as mutually agreed upon by Capstone and the Debtor.[5]

(a)     Assume management of the Debtor as CRO, reporting directly to the Debtor's board of directors or similar governance body.  The CRO shall have the authority to, without limitation: (i) control the cash, bank accounts, corporate credit cards, properties and other assets of the Debtor, (ii) manage in all respects the sale of the Debtor's properties and assets, and (iii) hire and terminate any employee, professional advisor, consultant or independent contractor of the Debtor.

---

[5]   To the extent there is any inconsistency between the summary of the Services set forth in this Application and the Services as set forth in the Engagement Agreement, the terms of the Engagement Agreement shall control.

(b) Create, implement and manage a restructuring plan satisfactory to the Debtor's primary secured lender and other key stakeholders. Such plan may include, without limitation, the sale of the Debtor's properties and assets, individually or together, or directing winddown and liquidation of the Debtor, whether out court or under any formal Bankruptcy Court proceedings, in coordination with the Board of Directors or the relevant governing body of the Debtor and the Debtor's legal advisors.

(c) Direct the Debtor in its communications and negotiations with (i) its customers, (ii) its secured and unsecured creditors (including any official or ad hoc committees organized in a bankruptcy process) and (iii) any other constituencies in the execution of the Debtor's plans.

(d) Assist the Debtor and its legal advisors in preparing any motions, filings, compliance and reporting as necessary with the U.S. Bankruptcy Court.

(e) Prepare and maintain a weekly cash flow projection and cash budget model in coordination with the Debtor's management and personnel.

(f) Provide all other services that may be reasonably requested by the Debtor and the Board of Directors or similar governing body, and the Debtor's other key stakeholders in furtherance of the Debtor's objectives.

14. The terms and conditions of the Engagement Agreement were heavily negotiated and reflect the parties' mutual agreement as to the substantial efforts and resources that will be required in connection with Capstone's engagement.

15. The Debtor does not believe that the services to be rendered by Capstone will be duplicative of the services performed by any other professional. Capstone will work together with any other professionals retained by the Debtor to minimize and avoid duplication of services. The Debtor firmly believes that Capstone will provide these necessary services in a cost-effective, efficient, and timely manner.

## Professional Compensation

16. As set forth more fully in the Engagement Agreement, and subject to the terms thereof and the Court's approval, the Debtor and Capstone have agreed that Capstone shall be compensated for services rendered to the Debtor based upon the following hourly rates.

| Staff Level | Hourly Rate Ranges |
|---|---|
| Managing Directors | $550 - $600 |
| Senior Directors and Directors | $450 - $500 |
| Vice Presidents | $400 - $450 |
| Associates | $350 - $400 |
| Analysts | $300 |

17. Although the Debtor seeks authority to retain and compensate Capstone pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, Capstone agrees to apply to the Court for payment of its hourly fees and reimbursement of expenses pursuant to sections 330 and 331 of the Bankruptcy Code, Federal Rule of Bankruptcy Procedure 2014, applicable Local Rules, and U.S. Trustee Guidelines (defined herein). However, in the event the Debtor requests and obtains an order from the Bankruptcy Court approving the implementation of interim compensation procedures with respect to the fees and expenses incurred by estate professionals, then the Debtor has agreed to pay Capstone's hourly fees in accordance with the terms of any such interim compensation order. Capstone understands and agrees that any payments on account of their hourly fees shall only be made pursuant to the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and orders of the Bankruptcy Court.

18. The Debtor believes that the Professional Service Fees described above and in the Engagement Agreement is consistent with, and typical of, compensation arrangements entered into by Capstone and other comparable firms in connection with the rendering of similar services under similar circumstances and is reasonable, market-based, and merited by Capstone's restructuring expertise. After discussions and arm's-length negotiations, the Debtor believes that the Professional Service Fees are reasonable, market-based, and designed to compensate Capstone fairly for its work and to cover customary expenses.

DM_US 183270089-4.114930.0011

19.    Capstone's strategic and financial expertise, as well as its financing skills and restructuring capabilities, some or all of which has and will be required by the Debtor during the term of Capstone's engagement, were all important factors to the Debtor in determining the reasonableness of the Professional Service Fees. The Debtor believes that the ultimate benefit of Capstone's services hereunder cannot be measured only by reference to the number of hours to be expended by Capstone's professionals in the performance of such services. The Debtor and Capstone have agreed upon the fee structure in anticipation that a substantial commitment of professional time and effort will be required of Capstone and its professionals in connection with this chapter 11 case and in light of the fact that: (i) such commitment may foreclose other opportunities for Capstone and (ii) the actual time and commitment required of Capstone and its professionals to perform its services under the Engagement Agreement may vary substantially from week-to-week and month-to-month, creating "peak load" issues for Capstone.

20.    As of the Petition Date, the Debtor does not owe Capstone any fees for services performed or expenses incurred under the Engagement Agreement. During the 90-day period before the Petition Date, Capstone received $665,853.00 for fees and expenses for professional services performed under the Engagement Agreement. Capstone has not received any retainers and Capstone does not currently hold any retainers.

## Indemnification Provisions

21.    The Engagement Agreement contains standard indemnification language with respect to Capstone's services. Capstone believes that the indemnification provisions contained in the Engagement Agreements are customary and reasonable.

22.    The Debtor and Capstone believes that, subject to any modifications set forth in an order of the Court granting this Application, the Indemnification Provisions are customary and reasonable for financial advisor engagements, both in and outside the context of chapter 11, and reflect the qualifications and limitations on indemnification provisions that are customary in this district and other jurisdictions  See, e.g., In re BJ Services, LLC, Case No, 20-33627 (MI) (Bankr. S.D. Tex. Aug 18, 2020) [Docket No. 378]; In re Erickson Inc., Case No 16-34393 (HDH) (Bankr.

N.D. Tex. December 16, 2016) [Docket No. 189]; In re Stage Stores, Inc., Case No 20-32564 (DRJ) Bankr. S.D. Tex. July 10, 2020) [Docket No. 582]; In re iHeartMedia, Inc., Case No. 18-31274 (MI) (Bankr. S.D. Tex May 15, 2018) [Docket No 725]; In re Seadrill Ltd., Case No. 17-60079 (DRJ) Bankr. S.D. Tex. Oct. 31, 2017) [Docket No. 391].

23. The Debtor and Capstone negotiated the terms of the Engagement Agreement, including the Indemnification provisions,[6] at arms'-length and in good faith, and the Indemnification provisions are reasonable and in the best interest of the Debtor, its estate, and its stakeholders. The Debtor and Capstone believe that these provisions contained in the Engagement Agreement, viewed in conjunction with the other terms of Capstone's proposed retention, are reasonable and in the best interests of the Debtor, the estate, and creditors in light of the fact that the Debtor requires Capstone's services in this chapter 11 case. Accordingly, as part of this Application, the Debtor requests that this Court approve the Indemnification provisions.

## Capstone's Disinterestedness

24. Although the Debtor submits that the employment of Capstone is not governed by section 327 of the Bankruptcy Code, the Debtor attaches the Calandra Declaration, which discloses, among other things, any relationship that Capstone or Mr. Calandra has with the Debtor, its significant creditors, or other significant parties in interest known to Capstone.

25. Notwithstanding the specific disclosures set forth in the Calandra Declaration, Capstone has informed the Debtor that as of the date hereof (a) it has no connections with the Debtor, its affiliates, its creditors or other parties in interest in this chapter 11 case, including the respective attorneys and accountants and the United States Trustee for Region 6 or his attorneys, or any person employed at that office, or any judge in the United States Bankruptcy Court for the Northern District of Texas; (b) it does not have or represent any entity having an interest adverse to the interests of the Debtor's estate or of any class of creditors or equity security holders; and (c) neither Capstone nor any employee of Capstone (i) is a creditor, equity security holder or an

---

[6] *See* Engagement Agreement, Section 6.

insider of the Debtor or (ii) is or was, within two years before the Petition Date, a director, officer, or employee of the Debtor.

26.Capstone has informed the Debtor that it will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new material facts or relationships are discovered or arise, Capstone will supplement its disclosure to this Court.

27.Capstone has agreed not to share with any other person or firm the compensation to be paid for professional services rendered in connection with the chapter 11 case.

### **Record Keeping**

28.It is not the general practice of financial advisory firms, including Capstone, to keep detailed time records similar to those customarily kept by attorneys and required by the applicable compensation guidelines promulgated by the United States Trustee (the "U.S. Trustee Guidelines"). Capstone does not ordinarily maintain contemporaneous time records in tenth-hour increments or provide or conform to a schedule of hourly rates for its professionals.

29.Accordingly, Capstone requests that it be excused from compliance with such information requirements. Instead, Capstone should be required to maintain time records in half-hour increments, not decimal hours, setting forth, in a summary format, a description of the Services rendered by each professional, and the amount of time spent by each such individual in rendering Services on behalf of the Debtor. The Debtor believes that the ultimate benefit of Capstone's Services cannot be measured by reference to the number of hours to be expended by Capstone's professionals in the performance of such Services and that the Professional Service Fees are reasonable regardless of the number of hours expended by Capstone's professionals in the performance of their Services.

30.Capstone will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned Services.

31.Given the nature of the Services to be provided by Capstone, such billing format and associated time details will be sufficient for the Debtor and other parties-in-interest to make informed judgments regarding the nature and appropriateness of Capstone's fees and expenses.

DM_US 183270089-4.114930.0011

**Basis for Relief**

**A. Approval of the Relief Sought is Appropriate Pursuant to §§ 363(b) and 105(a) of the Bankruptcy Code.**

32. The Debtor seeks approval of the employment of Capstone pursuant to sections 363(b) and 105(a) of the Bankruptcy Code. Section 363(b)(1) of the Bankruptcy Code, provides, in relevant part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Further, pursuant to section 105(a) of the Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary to carry out the provisions of this title." 11 U.S.C. § 105(a).

33. Under applicable case law, if a debtor's proposed use of its assets pursuant to § 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved. *See, e.g., Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (noting that under normal circumstances, the court defers to the trustee's judgment so long as there is a "legitimate business justification"); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) (requiring an "articulated business justification"); *In re Del. & Hudson R.R. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to § 363(b)).

34. The retention of interim corporate officers and other temporary employees, therefore, is proper under section 363 of the Bankruptcy Code. Courts have applied the section 363(b) standard when a debtor employs one or more individuals to serve as restructuring officers or managers. *See In re Tokheim Corp.*, Case No. 02-13437 (RJN) (Bankr. D. Del. Feb. 25, 2003). This Court and other courts have authorized retention of officers, including restructuring officers, utilizing this provision of the Bankruptcy Code on numerous occasions. *See, e.g., In re American Workers Insurance Services, Inc.*, Case No. 19-44208 (Bankr. N.D. Tex. Nov. 13, 2019) (Docket No. 90); *In re Mid-Cities Home Medical Equipment Co., Inc.*, Case No. 19- 41232-ELM-11 (Bankr. N.D. Tex. May 17, 2019) (Docket No. 89); *In re Senior Care Centers, LLC*, Case No. 18-33967 (Bankr. N.D. Tex. Feb. 27, 2019) (Docket No. 605); *In re TPP Acquisition, Inc. d/b/a The*

*Picture People*, Case No. 16-33437 (Bankr. N.D. Tex. Nov. 21, 2016) (Docket No. 377); *In re Energy & Exploration Partners, Inc.*, Case No. 15-44931 (Bankr. N.D. Tex. Jan. 26, 2016) (Docket No. 263); *In re Pilgrim's Pride Corporation*, Case No. 08-45664 (Bankr. N.D. Tex. Feb. 9, 2009) (Docket. No. 825); *In re Mirant Corp.*, Case No. 03-46590 (DML) (Bankr. N.D. Tex. Sept. 29, 2003) (Docket. No. 999); *In re PRC, LLC*, Case No. 08-10239 (MG) (Bankr. S.D.N.Y. Feb. 27, 2008) (Docket. No. 182); *In re Bally Total Fitness of Greater N.Y., Inc.*, Case No. 07-12395 (BRL) (Bankr. S.D.N.Y. Aug. 1, 2007) (Docket. No. 283).

35. Courts have allowed fees and expenses incurred by professionals retained under section 363 of the Bankruptcy Code to be treated as an administrative expense incurred by debtors in the ordinary course of business. *See In re TPP Acquisition, Inc. d/b/a The Picture People*, Case No. 16-33437 (Bankr. N.D. Tex. Nov. 21, 2016) (Docket No. 377) (fees for the retention of CEO treated as administrative expenses to be paid in the ordinary course of business); *In re 4 West Holdings, Inc.*, Case No. 18-30777 (Bankr. N.D. Tex. 2018) (Dkt. Nos. 132 and 263) (retention of CRO allowed to be paid in the ordinary course of business subject to monthly filings with an objection period); *see also In re UCI, Int'l, LLC*, Case No. 16-11354 (Bankr. D. Del. Jul. 12, 2016) (Docket No. 294) (authorizing retention of chief restructuring officer pursuant to § 363 of the Bankruptcy Code, and allowing the debtors to pay, in the ordinary course of business, fees and expenses incurred in connection with the chief restructuring officer's retention); *In re Juniper GTL, LLC*, Case No. 16-31959 (Bankr. S.D. Tex. May 24, 2016) (Docket No. 176); *In re HII Technologies, Inc.*, Case No. 15-60070 (DRJ) (Bankr. S.D. Tex. Sept. 22, 2015) (Docket No. 32); *see also In re First River Energy, LLC*, Case No. 18-50085 (Bankr. W.D. Tex. Feb. 13, 2018) (Docket No. 200) (authorizing retention of chief restructuring officer pursuant to § 363 of the Bankruptcy Code and treating incurred fees and expenses as an administrative expense following reports of compensation and expiration of objection period). Notwithstanding the foregoing, as noted above, Capstone has agreed to apply to the Court for payment of its hourly fees and reimbursement of expenses pursuant to sections 330 and 331 of the Bankruptcy Code, Rule 2014, the applicable Local Rules, and the U.S. Trustee Guidelines.

36. The resources, capabilities, and experience of Mr. Calandra and Capstone in advising the Debtor is crucial during this chapter 11 case. Mr. Calandra and Capstone have extensive experience and excellent reputations for providing high quality advisory services to debtors and creditors in large and complex Chapter 11 Cases and other debt restructurings. They already possess a well-developed knowledge of the Debtor's financial history and business operations and are well-suited to provide the Debtor with the financial and restructuring management services contemplated in the Engagement Agreement.

37. Accordingly, the Debtor submits that the relief requested in the Application is in the best interests of the Debtor's estate and all parties-in-interest to this chapter 11 case.

**B. The Retention of Capstone Is Critical to the Debtor's Success**

38. Denial of the relief requested herein will deprive the Debtor of the assistance of a qualified CRO with expertise in bankruptcy proceedings. Moreover, with prior knowledge of services provided to the Debtor, a denial of Capstone's employment would result in an unjust disadvantage to the Debtor and all parties-in-interest because of Capstone's understanding of the Debtor's operations. Indeed, if the Debtor was forced to engage a new firm to provide a CRO who lacks a thorough understanding of the Debtor's business, such change would mandate the commitment of significant and costly estate resources to educate a replacement.

39. Accordingly, the Debtor submits that the employment of Capstone to provide a CRO would be in the best interests of the Debtor and the estate. As noted above, Capstone has extensive experience in matters involving complex financial restructurings and an excellent reputation for the services that it has rendered in chapter 11 cases on behalf of debtors and creditors throughout the United States. Accordingly, the Debtor submits that it has satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules to support entry of an order authorizing the Debtor to retain and employ Capstone in this chapter 11 case on the terms described herein and in the Engagement Agreement.

**Relief as of October 14, 2021 is Appropriate**

40. At the Debtor's request, Capstone has acted as financial advisor since the Petition

Date with the understanding that the Debtor would seek approval of its employment and retention effective as of the Petition Date, so that Capstone may be compensated for its Services provided prior to entry of an order approving Capstone's retention. The Debtor believes that no party in interest will be prejudiced by the granting of this Application as of the Petition Date, because Capstone has provided and will continue to provide valuable Services to the Debtor's estate in the interim period.[7]

## Notice

41.     Notice of this Application will be provided to the parties listed on the Debtor's service list in accordance with the *Order Granting Chapter 11 Complex Case Treatment* [Docket No. 56].

## No Prior Request

42.     No prior request for the relief sought in this Application has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

---

[7] Pursuant to Local Rule 2014-1(b), an application for approval of employment of a professional is "deemed contemporaneous" when made within 30 days of the commencement of that professional's provision of services. Nonetheless, in an abundance of caution, the Debtor is requesting that Capstone employment be effective as of the Petition Date.

WHEREFORE, the Debtor respectfully requests that the Court enter the order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Respectfully submitted this 12th day of November, 2021.

Dated: November 12, 2021

*/s/ Marcus A. Helt*
Marcus A. Helt, Esq. (Texas Bar #24052187)
Jane A. Gerber, Esq. (Texas Bar #24092416)
**MCDERMOTT WILL & EMERY LLP**
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201
Tel:    (214) 210-2821
Fax:   (972) 528-5765
Email: mhelt@mwe.com
Email: jagerber@mwe.com

*PROPOSED COUNSEL FOR THE DEBTOR
AND DEBTOR-IN-POSSESSION*

**Certificate of Service**

I certify that on November 12, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

*/s/ Marcus A. Helt*
Marcus A. Helt