# EXHIBIT B

**Proposed Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RED RIVER WASTE SOLUTIONS, LP,[1] | ) | Case No. 21-42423 (ELM) |
| | ) | |
| Debtor. | ) | |
| | ) | **Docket No. __** |

**ORDER AUTHORIZING DEBTOR TO (I) EMPLOY AND
RETAIN CRS CAPSTONE PARTNERS LLC TO PROVIDE A CHIEF
RESTRUCTURING OFFICER AND ADDITIONAL PERSONNEL AND
(II) DESIGNATE JAMES CALANDRA AS THE CHIEF RESTRUCTURING
OFFICER OF THE DEBTOR AS OF THE PETITION DATE**

Upon the *Application for an Order Authorizing the Debtor to (I) Employ CRS Capstone Partners LLC to Provide a Chief Restructuring Officer and Additional Personnel and (II) Designate James Calandra as the Chief Restructuring Officer as of the Petition Date* (the "Application")[2] of the above-captioned debtor and debtor-in-possession (the "Debtor") for an order authorizing the Debtor to employ Capstone to provide a chief restricting officer and

---

[1] The last four digits of the Debtor's taxpayer identification number are 8719. The Debtor's principal office is located at 4004 East Hwy, 290 West, Dripping Springs, Texas 78620.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

additional personnel to the Debtor and to designate a the chief restricting officer, effective as of October 14, 2021, pursuant to the terms and subject to the conditions of the Engagement Agreement, a copy of which is attached to the Order as **Exhibit 1**, as modified by this order, all as more fully set forth in the Application; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Application is in the best interest of the Debtor's estate, its creditors, and other parties in interest, and this Court having found that the Debtor's notice of the Application and opportunity for a hearing on the Application were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Application is GRANTED as set forth herein.

2. The terms of the Engagement Agreement, including without limitation, the compensation provisions and the indemnification provisions, are reasonable terms and conditions of employment and are hereby approved; provided, however, that Capstone and Mr. Calandra shall be required to seek approval from the Court prior to submitting any indemnification claims under the indemnification provision of the Engagement Agreement.

3. Pursuant to Bankruptcy Code sections 105(a) and 363(b), the Debtor is hereby authorized, *nunc pro tunc* to the Petition Date, to employ and retain Capstone to provide a Chief Restructuring Officer ("CRO") and additional personnel and to designate James Calandra as the Debtor's CRO, pursuant to the terms of the Engagement Agreement.

4. Capstone shall be compensated for such services, and shall be reimbursed for any related expenses, pursuant to the terms set forth in the Engagement Agreement, as modified by this Order, and shall file fee applications for allowance of compensation and reimbursement of expenses, pursuant to, and in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, such Bankruptcy Rules and Local Rules as may then be applicable, the U.S. Trustee Guidelines, and any other applicable order and procedures of the Court; *provided* that Capstone's professionals shall be required only to maintain reasonably detailed summary time records of services to the Debtor in one-half hour increments, which time records shall set forth, in summary format, a description of the services rendered and the professionals rendering such services.

5. Notwithstanding anything in the Application or the Engagement Agreement to the contrary, for the avoidance of doubt, the Bankruptcy Court shall have jurisdiction over any and all matters arising under or in connection with Capstone's engagement by the Debtor on behalf of the Debtor and the Engagement Agreement, including the Indemnification Provisions.

6. Notwithstanding anything in the Application or Engagement Agreement, to the extent the Debtor wishes to expand the scope of Capstone's services beyond those services set forth in the Application or Engagement Application, the Debtor shall be required to seek further approval from this Court.

7. To the extent that there is any inconsistency between the terms of the Application, the Engagement Agreement, the Calandra Declaration, or this Order, the terms of this Order shall govern.

8. The Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Order in accordance with the Application.

9. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entirety.

10. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

# # # END OF ORDER # # #

DM_US 183270089-4.114930.0011

Submitted by:

Marcus A. Helt (Texas Bar #24052187)
Jane A. Gerber (Texas Bar #24092416)
MCDERMOTT WILL & EMERY LLP
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201
Tel:    (214) 210-2821 / Fax: (972) 528-5765
Email:  mhelt@mwe.com
Email:  jagerber@mwe.com

*PROPOSED COUNSEL FOR THE DEBTOR
AND DEBTOR-IN-POSSESSION*

4

# **Exhibit 1**

**Engagement Agreement**



# ENGAGEMENT AGREEMENT

This Engagement Agreement (the "Agreement") is made by and between Red River Waste Solutions, LP, having its principal place of business at 4004 E. Highway 290, Dripping Springs, TX 78620 (together with all of its related parents, subsidiaries, affiliates, successors and assigns, "RRWS" or the "Company"), and CRS Capstone Partners LLC ,whose headquarters is located at 176 Federal St., 3rd Floor, Boston, MA 02110 ("Capstone"). In consideration of the mutual promises set forth below, the parties agree as follows:

Section 1: Engagement. RRWS hereby engages Capstone to act as financial advisor to and chief restructuring officer of the Company.

Section 2: Scope of Services. Capstone will provide financial advisory services to the Company in connection with developing and implementing a restructuring plan satisfactory to the Company's stakeholders (the "Advisory Services"). Capstone will provide a Chief Restructuring Officer Jim Calandra to the Company ("CRO Services") as well as additional personnel ("Additional Services"). The CRO Services and Additional Services will include, without limitation, the following:

- Assume management of the Company as CRO, reporting directly to the Company's board of directors or similar governance body. The CRO shall have the authority to, without limitation: (i) control the cash, bank accounts, corporate credit cards, properties and other assets of the Company, (ii) manage in all respects the sale of the Company's properties and assets, and (iii) hire and terminate any employee, professional, advisor, consultant or independent contractor of the Company.
- Create, implement and manage a restructuring plan satisfactory to RRWS's primary secured lender and other key stakeholders. Such plan may include, without limitation, the sale of the Company's properties and assets, individually or together, or directing winddown and liquidation of the Company, whether out of court or under any formal Bankruptcy Court proceedings, in coordination with the Board of Directors or the relevant governing body of RRWS and RRWS's legal advisors.
- Direct the Company in its communications and negotiations with (i) its customers, (ii) its secured and unsecured creditors (including any official or ad hoc committees organized in a bankruptcy process) and (iii) any other constituencies in the execution of the Company's plans;
- Assist the Company and its legal advisors in preparing any motions, filings, compliance and reporting as necessary with the US Bankruptcy Court;
- Prepare and maintain a weekly cash flow projection and cash budget model in coordination with the Company's management and personnel;



- Provide all other services that may be reasonably requested by the Company and its Board of Directors or similar governing body, and the Company's other key stakeholders, in furtherance of the Company's objectives.

Capstone accepts the above engagement and agrees to devote commercially reasonable time and effort to provide the CRO Services and the Advisory Services on terms acceptable to the Company. Capstone, for all purposes hereunder, shall be an independent contractor. This Agreement is not intended in any way to create the relationship of principal or agent between the Company and Capstone, nor shall this Agreement be deemed to have established a partnership or joint venture.

The Company acknowledges that Capstone has been retained hereunder solely as an advisor to the Company, and not as an advisor to or agent of any other person, and that the engagement of Capstone is as an independent contractor and not in any other capacity including as a fiduciary. Neither this agreement nor Capstone's performance hereunder nor any previous or existing relationship between Capstone and the Company will be deemed to create any fiduciary relationship. The Company further acknowledges that it is not relying on the advice of Capstone for tax or legal matters and will rely on the advice of its own professionals and advisors for such matters and will make an independent analysis and decision regarding any such advice.

Section 3: Professional Service Fees. As compensation for the Advisory Services rendered hereunder by Capstone, the Company agrees to pay Capstone a refundable retainer of $100,000 payable on terms to be agreed (the "Retainer"). The Retainer will be held as a deposit and applied to the final billing. The Advisory Services will be billed to the Company for Services rendered hereunder by Capstone; our fees for services rendered regarding all advisory activities will be based on the hours actually expended by assigned staff members at our hourly billing rates which are in effect at the time that the services are rendered; our rates are revised annually in January. In consideration of the scope of the engagement, our services will be billed to the Company by assigned Capstone staff at our hourly rates as follows:

| | |
|---|---|
| Managing Directors | $550 – $600 |
| Senior Directors & Directors | $450 – $500 |
| Vice Presidents | $400 – $450 |
| Associates | $350 – $400 |
| Analysts | $300 |



Invoices will be presented to the Company weekly and are due upon presentation. Capstone will also be reimbursed for our reasonable out-of-pocket expenses incurred in rendering our services, including without limitation travel, photocopying, delivery services, and postage and vendor charges. It is anticipated that the CRO and Capstone will utilize staff based out of Capstone's Texas office, and that the CRO and Capstone will make every effort to minimize any travel costs.

Section 4: Term and Termination. This letter agreement will terminate on the completion by Capstone of the services to be provided hereunder; provided, that either party may terminate this letter agreement at any time by giving five (5) business days' written notice. Termination shall not affect our right to receive payment for services performed, or reimbursement for expenses incurred, in accordance with the terms of this letter agreement. The Company and Capstone expressly acknowledge and agree that the provisions of Sections 3 through 11, inclusive, shall survive any termination of this Agreement.

Section 5: Representations. The Company represents and warrants that the Company, to the best of its knowledge, is now and shall remain in material compliance with all local, state, and federal laws, rules, and regulations materially affecting the operation of the Company.

Section 6: Indemnification. The Company, or its survivor, shall: (i) indemnify and hold harmless Capstone, its officers, directors, members, managers, employees, affiliates, consultants and agents or assignees (collectively the "Capstone Indemnified Persons") from and against any and all losses, claims, damages or liabilities to which any Capstone Indemnified Person may become subject arising in any manner out of or in connection with the rendering of services by Capstone hereunder unless it is finally determined by a court or arbitral tribunal that such losses, claims, damages or liabilities are solely the result of Capstone's gross negligence or willful misconduct; and (ii) reimburse each Capstone Indemnified Person promptly for all legal and other expenses reasonably incurred by it in connection with investigating, preparing to defend or defending, or providing evidence in or preparing to serve or serving as a witness with respect to, any lawsuits, investigations, claims or other proceedings arising in any manner out of or in connection with the rendering of services by Capstone hereunder.

The Company agrees that the indemnification and reimbursement commitments set forth in this Section 6 shall apply whether or not Capstone or any Capstone Indemnified Person is a formal party to any lawsuit, investigation, claim or other proceeding and whether or not any such Capstone Indemnified Person is at the time affiliated with Capstone. The Company further agrees that, without Capstone's prior written consent, such consent not to be unreasonably withheld or delayed, the Company will not enter into any settlement of a lawsuit, claim or other proceeding arising out of the transactions contemplated by this Agreement to which Capstone or any Capstone Indemnified Person is an actual party or, in the reasonable judgment of such party, is a potential party, unless such settlement includes

- 3 -



an explicit and unconditional release from the party bringing such lawsuit, claim or other proceeding of Capstone and/or all Capstone Indemnified Persons.

If indemnification is to be sought hereunder, then the party seeking indemnification shall notify the Company of the commencement of any action or proceeding in respect thereof; provided, however, that the failure to so notify the Company shall not relieve the Company from any liability that it may have to such party seeking indemnification pursuant to this Section 6 except to the extent the Company has been prejudiced in any material respect by such failure or from any liability that the Company may have to the party seeking indemnification other than pursuant to this Section 6. Notwithstanding the above, following such notification, the Company may elect in writing to assume the defense of such action or proceeding, and, upon such election, the Company shall not be liable for any legal costs subsequently incurred by such party seeking indemnification (other than reasonable costs of investigation and providing evidence) in connection therewith, unless (i) the Company has failed to provide counsel reasonably satisfactory to such party seeking indemnification in a timely manner, (ii) counsel which has been provided by the Company reasonably determines that its representation of such party seeking indemnification would present it with a conflict of interest or (iii) the party seeking indemnification reasonably determines that there may be legal defenses available to it which are different from or in addition to those available to the Company and such party seeking indemnification reasonably determines that the counsel which has been provided by the Company would have a conflict of interest with respect to such legal defenses.

The Company and Capstone agree that if any indemnification or reimbursement sought pursuant to the preceding paragraph is for any reason unavailable or insufficient to hold it harmless, then the Company and Capstone shall contribute to the losses, claims, damages, judgments, assessments, costs and other liabilities and related expenses for which such indemnification is held unenforceable as is appropriate to reflect (i) the relative benefits to the Company on the one hand and Capstone on the other hand, in connection with the transaction to which such indemnification or reimbursement relates, (ii) the relative fault of the parties, and (iii) other equitable considerations; provided, however, that in no event shall the amount to be contributed by Capstone exceed the fees actually received by Capstone under this engagement. The Company agrees that for the purposes of this paragraph the relative benefits to the Company and any Indemnified Party shall be deemed to be in same proportion that the aggregate cash consideration and value of securities or any other property payable, exchangeable or transferable in such transaction bears to the fees paid or payable to Capstone under this Agreement.



Section 7: Confidentiality. Subject to Sections 2 herein, any materials prepared by Capstone and any advice rendered by Capstone to the Company, which Capstone expressly designates as confidential (the "*Confidential Information*"), are solely for the Company and the Company's confidential use and may not be reproduced, summarized, referred to, disclosed publicly or given to any other person or entity other than the Company's legal and accounting advisors (or as required by law). Any disclosure of Confidential Information must be agreed to in advance by Capstone.

Any Confidential Information shall be held in confidence and be used only for the purpose proposed herein. Upon termination of this Agreement, Capstone (at the Company's option) hereby agrees to return all proprietary information provided by or on behalf of the Company, except that Capstone shall be able to retain copies of any such materials it deems in its sole discretion to be commercially appropriate working papers kept in confidence by Capstone for regulatory record keeping purposes. The confidentiality of said proprietary information shall survive the termination of this Agreement. Nevertheless, Capstone will be free to disclose any proprietary information obtained from or on behalf of the Company to the extent that such disclosure: (i) has been consented to by the Company; or (ii) is required by law, regulation, judicial or governmental order, subpoena or other legal process or is requested or required by any governmental authority or regulatory agency including, without limitation, any disclosure that Capstone may be required to make pursuant to internal risk control procedures in connection with any related financing that Capstone may arrange, so long as Capstone uses commercially reasonable efforts to provide the Company prior written notice of such disclosure at least 5 days prior to such disclosure.

Section 8: Forbearance. Any forbearance by Capstone on behalf of the Company in exercising any of its rights under this Agreement shall not be considered a waiver of such right(s). Any waiver must be expressly granted in writing and a waiver on any one occasion shall not be construed as a waiver on any future occasion.

Section 9: Notification. Any notices pursuant to this Agreement shall be in writing and shall be deemed sufficiently given when sent and on the date of posting, by certified mail, return receipt requested, overnight delivery or similar messenger service, to the respective addresses of the Company and Capstone set forth above, or to any other address specified by any party by written notice to the other party.



<u>Section 10: Governance</u>. This Agreement incorporates the entire understanding between the parties hereto and supersedes all previous agreements relating to the subject matter hereof. This Agreement may not be amended or modified except in a writing signed by the Company and Capstone. This Agreement shall be binding upon and inure to the benefit of the Company and Capstone and their respective successors and assigns. If any term or provision of this Agreement shall to any extent be deemed illegal, invalid or unenforceable, the remainder of this Agreement shall not be affected thereby and each term and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

This Agreement shall be governed by and construed and enforced in accordance with the laws of The Commonwealth of Massachusetts. The parties hereto irrevocably and unconditionally consent to submit to the exclusive jurisdiction of the United States District Court located in the City of Boston and, in the event such United States District Court does not have jurisdiction over the parties hereto, then to the courts of The Commonwealth of Massachusetts located in Suffolk County for any lawsuits, actions or other proceedings arising out of or relating to this Agreement and agree not to commence any such lawsuit, action or other proceeding except in such courts.  The parties hereto further agree that service of any process, summons, notice or document by mail to their respective addresses set forth above shall be effective service of process for any lawsuit, action or other proceeding brought against either party in any such court.  The parties hereto hereby irrevocably and unconditionally waive any objection to the laying of venue of any lawsuit, action or other proceeding arising out of or relating to this Agreement in the courts of The Commonwealth of Massachusetts or the United States District Court located in the City of Boston, and hereby further irrevocably and unconditionally waive and agree not to plead or claim in any such court that any such lawsuit, action or other proceeding brought in any such court has been brought in an inconvenient forum.  Any right to trial by jury with respect to any lawsuit, claim or other proceeding arising out of or relating to this Agreement or the services to be rendered by Capstone hereunder is expressly and irrevocably waived.

<u>Section 11: Arbitration</u>. Any controversy or claim arising out of or relating to the services or fees set forth herein shall be settled by binding arbitration, administered by the American Arbitration Association in accordance with its commercial arbitration rules, and determination of the fees rendered by the arbitrator may be entered in any court having jurisdiction thereof. Each party shall bear its own costs and expenses of arbitration, and shall share equally the costs of the arbitrator and the administrative fees and costs of arbitration. The arbitration award shall be made within nine months of the notice of intent to arbitrate given by any party, and the arbitrator shall agree to comply with this schedule before accepting appointment.

This Agreement has been and is made solely for the benefit of the Company, Capstone and their respective successors and assignees, and no other person shall acquire or have any right under or by virtue of this Agreement. By signing below, both parties hereby understand



and agree to the full terms, conditions and provisions of this Agreement and further represent and warrant that the undersigned constitute all, or the authorized representative of all, of the owners, partners and shareholders of the Company and Capstone, respectively, and that they are duly authorized to enter into this Agreement which shall be binding and enforceable in accordance with its terms.

| RED RIVER WASTE SOLUTIONS, LP | CRS CAPSTONE PARTNERS LLC |
|---|---|
| By: *[signature]* | By: *[signature]* |
| Name: James Smith | Name: James Calandra |
| Title: Chief Executive Officer | Title: Managing Director & Head of Financial Advisory Services |
| Date: July 23, 2021 | Date: July 23, 2021 |