Michael S. Held (SBN 09388150)
J. Machir Stull (SBN 24070697)
**JACKSON WALKER LLP**
2323 Ross Avenue, Suite 600
Dallas, TX 75201
T: 214.953.6000
F: 214.953.5822
Email: mheld@jw.com
       mstull@jw.com

**COUNSEL FOR TBK BANK, SSB, F/K/A TRIUMPH SAVINGS BANK d/b/a TRIUMPH COMMERCIAL FINANCE**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § | |
| RED RIVER WASTE SOLUTIONS, LP | § § | CASE NO: 21-42423-elm |
| | § § | Chapter 11 |
| Debtor. | § | |

## LIMITED OBJECTION TO BID PROCEDURES MOTION

COMES NOW Triumph Savings Bank d/b/a Triumph Commercial Finance and TBK Bank, SSB ("TBK") and files this limited objection (the "Limited Objection") to the Bid Procedures Motion.[1]

### I. BACKGROUND

1. On February 7, 2022, TBK filed a limited objection [Docket No. 337],[2] which contained a fulsome description of TBK's dealings with the Debtor—including descriptions of TBK's Loan

---

[1] *Debtor's Expedited Motion for Entry of an Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially All of the Debtor's Assets; (II) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 353] (the "Bid Procedures Motion").

[2] Capitalized and undefined terms in this Limited Objection shall have the meanings ascribed to them in the limited objection filed at Docket No. 337.

1

31884715v.9

Documents and TBK's Collateral. The entirety of the background, the loan descriptions and the collateral descriptions are incorporated herein by reference. Below is a summary of the Debtor's secured indebtedness with regards to TBK.

2. TBK is a secured creditor, having entered into two separate loan agreements with the Debtor.

3. The First Loan Agreement evidences a loan to the Debtor in the original principal amount of $1,00601.20. As of the Petition Date, the Debtor owes TBK an amount not less than $893,042.20 on account of the First Loan Agreement, plus subsequently accruing interest, fees, expenses, and/or costs. The security for the First Loan Agreement includes (a) a blanket security interest on all of the Debtor's assets, and (b) interests and liens on the following specific collateral:

- Two year-2021 model Mack trucks; and
- 9,464 Otto residential 95-gallon trash carts.

4. The Second Loan Agreement evidences a loan to the Debtor in the original principal amount of $929,345.54. As of the Petition Date, the Debtor owes TBK an amount not less than $909,763.47 on account of the Second Loan Agreement, plus subsequently accruing interest, fees, expenses, and/or other costs. The security for the Second Loan Agreement includes (a) a blanket security interest on all of the Debtor's assets, and (b) interests and liens on the following specific collateral:

- Two year-2020 model Freightliner trucks;
- 10,920 Otto residential 95-gallon trash carts;
- 100 Otto residential 65-gallon trash carts; and
- 100 Otto residential 35-gallon trash carts.

5. Together, all of the above specifically identified collateral shall be referred to herein as the "Equipment Collateral". TBK has provided the Debtor and its professionals with specific identification for each of the Equipment Collateral, including model number, serial number and other specifications. Such information has also been included in prior pleadings filed by TBK in this bankruptcy.

6. On March 1, 2022, TBK filed Proof of Claim No. 130 [Claims Register No. 66] (the "TBK Claim"), which sets forth its secured claim in an amount not less than $1,802,805.67.

## II. LIMITED OBJECTION

7. The Debtor suggests throughout the Bid Procedures Motion that it intends to use the sale process to maximize value for the benefit of all creditors and parties in interest. Nevertheless, despite TBK's requests that certain protective provisions mandated by the Bankruptcy Code be included in the proposed bid procedures, as of the filing of this Limited Objection, the requested provisions have not been incorporated into the proposed bid procedures.

8. Unfortunately, TBK is now compelled to file this Limited Objection to preserve certain customary protections entitled to secured creditors. *See, e.g., In re Murray Metallurgical Coal Holdings, LLC*, 618 B.R. 825, 830 (Bankr. S.D. Ohio 2020) ("The time to object on the basis of a purported denial of the right to credit bid was in response to the motion that set the parameters for bidding—the Bidding Procedures Motion."). Such protections include (a) the allocation of any purchase price as to the Equipment Collateral, (b) the right to credit bid for the Equipment Collateral pursuant to section 363(k) and to be deemed a Qualified Bidder for such limited purpose,[3] and (c) the preservation of all rights under section 363(f). The proposed bid procedures

---

[3] The Supreme Court has recognized the "ability to credit-bid helps to protect a creditor against the risk that its collateral will be sold at a depressed price. It enables the creditor to purchase the collateral for what it considers the fair market price (up to the amount of its security interest) without committing additional cash to protect the loan." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S.Ct. 2065, 2070 n. 2 (2012); *see also River*

31884715v.9

should not be approved unless and until they incorporate such protections, as further outlined below.

9. **<u>First</u>**, the Bid Procedures Motion is silent as to how the purchase price will be allocated. Without knowing the amount that a proposed purchaser has bid for specific collateral such as the Equipment Collateral, secured creditors like TBK cannot determine whether to (a) credit bid for their collateral pursuant to section 363(k), (b) object to the sale pursuant to section 363(f), or (c) allow their collateral to be sold.[4] It is customary and reasonable for allocation requirements to be included in bid procedures. For example, in a recent case in the Northern District of Texas, Fort Worth Division, the bid procedures required qualified bidders to:

> (i) Identify the consideration to be paid for the Assets, which shall be in cash; and
> (ii) specify the portion of the aggregate purchase price that is being allocated to each of the Assets, specifically including without limitation, the (i) BP Hedges, (ii) Debtors' oil and gas reserves, and (iii) Debtors' personal property and equipment.

*See In re Bainbridge Uinta, LLC*, Case No. 20-42794 [Docket No. 138] (Bankr. N.D. Tex. 2020) (Judge Mullin). *See also In re JEH Company*, Case No. 13-42397 [Docket No. 179] (Bankr. N.D. Tex. 20013) (Judge Nelms) ("The bid shall specify what portion of the Bid Amount is allocable to the equipment collateral of Wells Fargo and Toyota Credit.").[5]

---

*Road Hotel Partners, LLC v. Amalgamated Bank*, 651 F.3d 642, 649-50 (7th Cir. 2011) ("In essence, by granting secured creditors the right to credit bid, the Code promises lenders that their liens will not be extinguished for less than face value without their consent."), aff'd sub nom. *RadLAX*, 132 S. Ct. 2065 (2012); *In re J & M Salupo Dev. Co.*, 388 B.R. 795, 803 n. 2 (6th Cir. B.A.P. 2008) (noting credit bidding is a "fundamental protection" of secured creditors).

[4] If requested by the Debtor, the Court should not allow the Debtor to allocate the purchase price *<u>after</u>* the close of the sale. To allow such post-sale allocation of purchase price would be improper and effectively divest secured creditors such as TBK of these fundamental protections.

[5] The Debtor cited to *In re Lockwood Holdings, Inc.* as precedent in the Bid Procedures Motion. In that case, Judge Jones approved bid procedures that required "Qualified Bids" to include "the purchase price in U.S. dollars for each asset or group of assets subject to the applicable bid, and a specific allocation of consideration among the groups of assets being bid upon (all asset bids must also contain an allocation)." *See* Case No. 18-30197 [Docket No. 513] (Bankr. S.D. Tex. 2018) (Judge Jones).

10. TBK's Equipment Collateral is limited—just four trucks and trash carts.[6] Given these dynamics, any argument that requiring allocation is unduly cumbersome or will "chill bidding" is dubious. It would take little effort for a potential buyer to assign value to the Equipment Collateral, particularly when the Debtor already has conducted a "desktop" appraisal of all of its vehicles that could be used as an inventory for a proposed purchaser.[7] Furthermore, the proposed bid procedures already include 16 prerequisites that a potential bidder must comply with in order to become a Qualified Bidder, many of which are much more likely to chill bidding. *See* Proposed Bid Procedures, ¶ A(1)-(16). At most, the requirement that a potential purchaser allocate purchase price for the Equipment Collateral is a slight inconvenience.[8]

11. The Debtor's CRO also seems to have testified at a recent deposition that the Debtor has not begun the sale process in earnest, stating:

> So there are no marketing materials or offering materials, because there has not been a sale process in this case. The whole purpose of the bid procedures is to initiate a sale process, so there has not yet been any marketing materials or offering materials that have been provided to anybody.

*See* Tr., Depo. of James Calandra, Feb. 23, 2022, 13:8-14 [Docket No. 437-4]. Since the sale process has not yet been initiated, it is unclear how the inclusion of credit bid rights or requiring buyers to allocate the purchase price would chill bidding. Any suggestion would be speculation at best.

---

[6] In addition, the universe of other pre-petition lenders with equipment collateral in this case also appears limited to likely no more than 10 or 15 financed vehicles.

[7] Tr., Nov. 26, 2021, 76:8-13 ("They completed an appraisal, a desktop appraisal of all of the vehicles, the yellow iron, the heavy equipment, and the carts and containers.") (Calandra). TBK reserves all rights with respect to the desktop valuation and asserted values therein.

[8] It is also worth noting that the proposed bid procedures already contemplate that bidders can interpose bids for less than all of the Debtor's assets. Specifically, the proposed bid procedures require a Qualified Bidder to identify "the Assets, or portion of the Assets, sought to be acquired[.]" *See* Proposed Bid Procedures, ¶ A(2).

12. Finally, the Final Dip Order entered in this case provides the DIP Lender with the opportunity to credit bid on its collateral: "The full amount of the DIP Obligations may be used by the DIP Lender in its sole discretion to 'credit bid' for the DIP Vehicles on a dollar-for-dollar basis, as provided in section 363(k) of the Bankruptcy Code[.]" *See* Final DIP Order [Docket No. 392], ¶ 29. Exhibit B to the Final DIP Order includes the list of DIP Vehicles: There are 149 vehicles on that list. The Final DIP Order goes on to state that denial of credit bid rights "would result in the DIP Lender not receiving the indubitable equivalent of its claims." *See id.* As such, any allegation that affording TBK its statutory credit bid rights would have a chilling effect are specious, when the Debtor has already agreed to allow the DIP Lender to retains its rights to credit bid for any or all of the 149 separate DIP Vehicles listed on Exhibit B to the Final DIP Order.

13. Without pre-sale allocation and preservation of secured creditors' credit bid rights, a potential purchaser will likely face objections to the sale from some or all of the secured lenders with liens on equipment collateral. A contested sale hearing with an uncertain outcome—potentially with the added cost and time of discovery in advance of the sale hearing—has the potential to chill bidding.

14. **<u>Second</u>**, the proposed bid procedures should (a) state that secured creditors such as TBK are Qualified Bidders with respect to their specific collateral, without requiring them to comply with the 16 prerequisite requirements outlined in paragraph A(1)-(16) of the proposed bid procedures, and (b) reserve all rights for secured creditors such as TBK to credit bid for their specific collateral.[9] It is customary and reasonable for bid procedures to include specific

---

[9] It is well settled among district and bankruptcy courts that creditors can bid the full face value of their secured claims under § 363(k). *See, e.g., In re SubMicron Sys. Corp.*, 432 F.3d 448, 459-60 (3d Cir. 2006) (citing *In re SunCruz Casinos, LLC*, 298 B.R. 833, 839 (Bankr.S.D.Fla.2003) ("[T]he plain language of [section 363(k)] makes clear that the secured creditor may credit bid its *entire claim,* including any unsecured deficiency portion thereof.") (emphasis in original)).

reservations for secured creditors such as TBK to exercise their credit rights pursuant to section 363(k).[10] To this end, in another recent case from the Northern District of Texas, Fort Worth Division, the proposed bid procedures included the following provision:

> Secured creditors with a valid and unavoidable lien on collateral whose collateral is being sold and included in the auction ("Secured Creditors") […] are "qualified bidders" with respect to their rights under 11 U.S.C. § 363(k) and may credit bid as part of the Auction. Such Secured Creditors need not otherwise qualify pursuant to the Bid Procedures, including but not limited to providing Bid Documents, to exercise such right. The Debtor may allow the property pledged to a Secured Creditor that tenders a credit be to be withdrawn from the Assets being transferred.

*See In re JEH Company, et al.*, Case No. 13-42397-11 [Docket No. 137] (Judge Nelms).[11]

15. As stated above, the Debtor agreed in the Final DIP Order that the DIP Lender's credit bid rights for its encumbered collateral are preserved since any denial of credit bid rights "would result in the DIP Lender not receiving the indubitable equivalent of its claims." *See* Final DIP Order [Docket No. 392], ¶ 29. This is true for TBK as well.

---

[10] The Debtor's CRO seems to have testified at a recent deposition that he thought the proposed bid procedures did have credit bid rights:

> Q: As you sit here today, can you think of any reasons why you would or the debtor would, would not permit credit bids as part of the sale?
> A: I haven't really thought about it, so I don't—clearly, I thought the bid procedures did accommodate a credit bid[.]

Tr., Depo. of James Calandra, Feb. 23, 2022, 68:2-8 [Docket No. 437-4].

[11] Similarly, Judge Jones included the following credit bid rights in the bid procedures approved in the *Lockwood Holdings* case:

> Any creditor that has a valid, perfected, unavoidable, and enforceable security interest (a "Security Interest") in the Debtors' assets (any such creditor, a "Secured Party") may make one or more credit bids for all or any portion of the secured claim(s) held by such Secured Party at the Auction, subject to the requirements of section 363(k) of the Bankruptcy Code (a "Credit Bid").

*See* Case No. 18-30197 [Docket No. 513] (Bankr. S.D. Tex. 2018) (Judge Jones). *See also In re Ascent Group, LLC*, Case No. 16-34436 [Docket No. 96] (Bankr. N.D. Tex. 2016) (Judge Jernigan); *In re BFN Operations, LLC, et al.*, Case No. 16-32435 [Docket No. 124] (Bankr. N.D. Tex. 2016) (Judge Houser/Larson).

16. **_Third_**, the proposed bid procedures should explicitly preserve the rights of secured creditors such as TBK under section 363(f) to withdraw their specific collateral from the sale or otherwise object to the sale unless the proposed purchase price (and allocation thereof) unambiguously provides for the payment in full of their claims.

17. **_Fourth_**, secured creditors such as TBK should (a) receive notice of all Qualified Bids and a list of Qualified Bidders, and (b) have other consultation rights throughout any sale process.

18. In summary, TBK requests that the Court include standard provisions in any approved bid procedures to ensure that fundamental rights conferred by the Bankruptcy Code on secured lenders such as TBK are preserved.

### III. RESERVATION OF RIGHTS

19. TBK expressly reserves the right to update, supplement and/or amend this Limited Objection. TBK also preserves its right to raise any other such objections or to join in any other objections to the Bid Procedures Motion. TBK also reserves all rights and due process considerations under Bankruptcy Rule 7001.

### IV. CONCLUSION

WHEREFORE, PREMISES CONSIDERED, TBK respectfully requests that the Court sustain its Limited Objection and grant such other and further relief as is just and appropriate under the circumstances.

DATED: March 8, 2022

    Respectfully submitted,

By: */s/ J. Machir Stull*
Michael S. Held
State Bar No. 09388150
J. Machir Stull
State Bar No. 24070697

**JACKSON WALKER LLP**
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
T:(214) 953-6000
F: (214) 953-5822

**ATTORNEYS FOR TRIUMPH SAVINGS BANK D/B/A TRIUMPH COMMERCIAL FINANCE AND TBK BANK, SSB**

## CERTIFICATE OF SERVICE

This is to certify that on this March 8, 2022, a true and correct copy of the foregoing was served electronically or by United States First Class Mail, postage prepaid upon those parties receiving notice pursuant to the Court's ECF notification system.

    */s/ J. Machir Stull*
    J. Machir Stull

31884715v.9