

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed September 29, 2022**

_____
**United States Bankruptcy Judge**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | |
|---|---|
| In re: | ) )  Chapter 11 |
| RED RIVER WASTE SOLUTIONS, LP,[1] | )  Case No. 21-42423 (ELM) |
| Debtor. | ) ) |

### ORDER CONFIRMING FOURTH AMENDED PLAN FOR
### RED RIVER WASTE SOLUTIONS, LP

The Debtor[2] having:

(a)     commenced its Chapter 11 Case on the Petition Date;

(b)     continued to operate its business and manage its property as debtor-in-possession in accordance with sections 1107(a) and 1108 of the Bankruptcy Code;

(c)     on September 7, 2022, filed the *Fourth Amended Chapter 11 Plan of Red River Waste Solutions, LP* [Docket No. 1095] (the "<u>Fourth Amended Plan</u>") (as amended, modified, and revised, the "<u>Plan</u>");

---

[1]     The last four digits of the Debtor's taxpayer identification number are 8719. The Debtor's principal office is located at 4004 East Hwy, 290 West, Dripping Springs, Texas 78620.

[2]     Capitalized terms not defined herein shall have the meanings ascribed to them in the Plan, as defined herein.

1

(d)     on September 7, 2022, filed the *Disclosure Statement for Fourth Amended Chapter 11 Plan for Red River Waste Solutions, LP* [Docket No. 1096] (the "<u>Disclosure Statement</u>");

(e)     on September 20, 2022, filed the *First Modification to the Debtor's Fourth Amended Chapter 11 Plan for Red River Waste Solutions, LP* [Docket No. 1128] (the "<u>First Modification</u>");

(f)     On September 22, 2022, filed the *Second Modification to the Debtor's Fourth Amended Chapter 11 Plan for Red River Waste Solutions, LP* [Docket No. 1149] (together with the First Modification, the "<u>Modifications</u>");

(g)     on September 20, 2022, filed the *Debtor's Emergency Motion to Approve Non-Material Modifications to the Debtor's Fourth Amended Chapter 11 Plan* [Docket No. 1129], as amended by the *Debtor's First Amended Emergency Motion to Approve Non-Material Modifications to the Debtor's Fourth Amended Chapter 11 Plan* [Docket No. 1150] filed on September 22, 2022;

(h)     on September 26, 2022, filed the *Notice of Second Supplement to Plan Supplement* [Docket No. 1162];

(i)     caused (i) the Solicitation Packages (as defined in the Solicitation Procedures Motion)[3] to be distributed to Holders of Claims entitled to vote on the Plan and (ii) the notices and opt-out forms described in the Solicitation Procedures Motion to be distributed to Holders of Claims and Interests not entitled to vote on the Plan, in accordance with the Solicitation Procedures Order,[4] as evidenced by the *Certificate of Service* [Docket No. 1110] (the "<u>Solicitation Certificate of Service</u>") filed on September 13, 2022;

(j)     on September 19, 2022, filed the Plan Supplement [Docket No. 1127];

(k)     on September 21, 2022, filed the *Notice to Voting Parties Regarding Balloting Error Related to Consensual Release* [Docket No. 1137] (the "<u>Ballot Notice</u>");

(l)     on September 21, 2022, informed parties who had voted on the Plan by electronic transmission of a Ballot of the ballot error and provided corrected ballots to such parties (such notices together, with the Ballot Notice, the "<u>Ballot Corrections</u>");

(m)     on September 22, 2022, filed the *Debtor's Emergency Motion for Entry of an Order Finding that Certain Ballots Accepted Consensual Releases as to Union Bank as*

---

[3]     "<u>Solicitation Procedures Motion</u>" means the *Debtor's Motion for Entry of an Order: (I) Approving Disclosure Statement; (II) Establishing Procedures for Solicitation and Tabulation of Votes on Plan; (III) Approving Certain Forms and Notices; (IV) Scheduling a Confirmation Hearing; and (VI) Granting Related Relief* [Docket No. 832].

[4]     "<u>Solicitation Procedures Order</u>" means the *Order: (I) Approving Disclosure Statement; (II) Establishing Procedures for Solicitation and Tabulation of Votes on Plan; (III) Approving Certain Forms and Notices; (IV) Scheduling a Confirmation Hearing; and (V) Granting Related Relief* [Docket No. 1100].

1

*Set Forth in the Debtor's Fourth Amended Chapter 11 Plan* [Docket No. 1147]; and

(n)     on September 28, 2022, filed the *Declaration of Angela Tsai on Behalf of Stretto Regarding Solicitation of Votes and Tabulation of Ballots Accepting and Rejecting Proposed Fourth Amended Chapter 11 Plan for Red River Waste Solutions* [Docket No. 1166] (the "Voting Report").

The Bankruptcy Court having:

(a)     on September 8, 2022, entered the Solicitation Procedures Order approving the Disclosure Statement;

(b)     set September 26, 2022, at 5:00 p.m. (Central Time) as the deadline for filing objections to Confirmation of the Plan (the "Objection Deadline");

(c)     set September 26, 2022, at 5:00 p.m. (Central Time) as the deadline for voting on the Plan;

(d)     set September 28, 2022, as the date for the commencement of the confirmation hearing (as continued from time to time, the "Confirmation Hearing");

(e)     reviewed the Plan, the Disclosure Statement, the Voting Report, and all pleadings, exhibits, declarations, affidavits, statements, responses and comments regarding the Confirmation of the Plan, including all objections, statements, and reservations of rights filed by parties-in-interest on the docket of this Chapter 11 Case;

(f)     held the Confirmation Hearing commencing on September 28, 2022, and continuing through September 29, 2022;

(g)     heard the statements and arguments made by counsel regarding Confirmation of the Plan;

(h)     considered all oral representations, live testimony, written direct testimony, exhibits, documents, filings and other evidence presented at the Confirmation Hearing;

(i)     approved the Modifications by this order, with findings of fact and conclusions of law detailed herein, so that the Plan considered for confirmation at the Confirmation Hearing is the Plan inclusive of the Modifications, as set forth in the Plan attached as **Exhibit A**;

(j)     made rulings on the record at the Confirmation Hearing; and

(k)     overruled on the merits all unresolved objections, reservations of rights, and other statements opposing Confirmation of the Plan, except as otherwise stated or indicated on the record.

NOW, THEREFORE, IT IS HEREBY FOUND AND CONCLUDED THAT:

A.    <u>Findings of Fact and Conclusions of Law</u>.  The findings and conclusions set forth in this Confirmation Order constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any findings of fact constitute conclusions of law, or any conclusions of law constitute findings of fact, they are adopted as such.

B.    <u>Jurisdiction and Venue</u>.  The Debtor is and was qualified to be a debtor under section 109 of the Bankruptcy Code.  Venue in the Northern District of Texas was proper as of the Petition Date and continues to be proper.  Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2).  The Bankruptcy Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and the Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

C.    <u>Voting Report</u>.  Prior to the Confirmation Hearing, the Notice and Claims Agent filed the Voting Report.  All procedures used to distribute solicitation materials to the applicable Holders of Claims and Interests and to tabulate the Ballots, were fair and conducted in accordance with the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations.  Pursuant to sections 1124, 1126 and 1129(a)(10) of the Bankruptcy Code, at least one Impaired Class entitled to vote on the Plan has voted to accept the Plan.

D.    <u>Judicial Notice</u>.  The Bankruptcy Court takes judicial notice of the docket of the Chapter 11 Case maintained by the clerk of the Bankruptcy Court and/or its duly appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered,

during the pendency of the Chapter 11 Case. The Court also takes judicial notice of all resolutions of any objections to Confirmation addressed on the record at the Confirmation Hearing, which are hereby incorporated by reference.

E.    Notice. Except as otherwise supplemented herein, as evidenced by the Solicitation Certificate of Service, the Ballot Corrections, and the Voting Report, due, adequate, and sufficient notice of the Disclosure Statement, the Plan, the Plan Supplement, the Confirmation Hearing, and the release and exculpation provisions set forth in Article IX of the Plan, along with all deadlines for voting on or objecting to the Plan, has been given to (a) all known Holders of Claims and Interests, (b) parties that requested notice in accordance with Bankruptcy Rule 2002, (c) all parties to Unexpired Leases and Executory Contracts and (d) all taxing authorities listed on the Schedules or in the claims register, in compliance with the Solicitation Procedures Order and Bankruptcy Rules 2002, 3017, 3019, and 3020(b), and such transmittal and service were appropriate, adequate, and sufficient.    Adequate and sufficient notice of the Confirmation Hearing and other dates, deadlines, and hearings described in the Solicitation Procedures Order was given in compliance with the Bankruptcy Rules and such order, and no other or further notice is or shall be required.

F.    Solicitation. Votes for acceptance and rejection of the Plan were solicited in good faith and complied with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017, 3018, and 3019, the Solicitation Procedures Order, all other applicable provisions of the Bankruptcy Code and all other applicable rules, laws, and regulations.    The Debtor and (a) James Calandra, as Chief Restructuring Officer, and CRS Capstone Partners, LLC; (b) the Committee; (c) the Committee Parties; and (d) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case, and their respective employees, agents, attorneys, accountants, consultants,

4

representatives, and other professionals, each in his/her capacity as such, have solicited votes on

the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code

and the Solicitation Procedures Order and are entitled to the protections afforded by section

1125(e) of the Bankruptcy Code, and the Exculpated Parties are entitled to the exculpation

provisions set forth in Article IX of the Plan.

G.      Burden of Proof.  The Debtor, as proponent of the Plan, has satisfied its burden of

proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a

preponderance of the evidence, which is the applicable evidentiary standard for Confirmation of

the Plan.

H.      The Plan complies with all requirements of section 1129 of the Bankruptcy Code

as follows:

1.      Proper Classification.  Pursuant to sections 1122(a) and 1123(a)(1) of the
Bankruptcy Code, Article IV of the Plan designates Classes of Claims and Interests,
other than Administrative Expense Claims, Professional Claims, and Priority Tax
Claims, which are not required to be classified.  As required by section 1122(a) of
the Bankruptcy Code, each Class of Claims and Interests contains only Claims or
Interests that are substantially similar to the other Claims or Interests within that
Class.

2.      Specification of Unimpaired Classes.  Pursuant to section 1123(a)(2) of the
Bankruptcy Code, Article III of the Plan specifies all Classes of Claims and
Interests that are not Impaired.

3.      Specification and Treatment of Impaired Classes.  Pursuant to section 1123(a)(3)
of the Bankruptcy Code, Article IV of the Plan specifies the treatment of all Classes
of Claims and Interests that are Impaired.

4.      No Unfair Discrimination.  Pursuant to section 1123(a)(4) of the Bankruptcy Code,
Article IV of the Plan provides the same treatment for each Claim or Interest within
a particular Class, as the case may be, unless the Holder of a particular Claim or
Interest has agreed to less favorable treatment with respect to such Claim or
Interest, as applicable.

5.      Plan Implementation.  Pursuant to section 1123(a)(5) of the Bankruptcy Code, the
Plan provides adequate and proper means for the Plan's implementation.
Immediately upon the Effective Date, sufficient Cash and other consideration

5

provided under the Plan will be available to make all payments required to be made on the Effective Date pursuant to the terms of the Plan. Moreover, Article V and various other provisions of the Plan specifically provide adequate means for the Plan's implementation.

6.      <u>Nonvoting Equity Securities</u>.   In accordance with section 1123(a)(6) of the Bankruptcy Code, there are no nonvoting equity securities.

7.      <u>Liquidating Trustee</u>. To the extent that section 1123(a)(7) of the Bankruptcy Code applies to the selection of the Liquidation Trustee, the selection of the Liquidation Trustee is consistent with the interests of Holders of Claims and Interests and public policy.

8.      <u>Impairment/Unimpairment of Classes of Claims and Interests</u>. Pursuant to section 1123(b)(1) of the Bankruptcy Code: (a) Class 1 (Other Priority Claims), Class 3 (Union Bank Claim), Class 4 (Comerica Bank Secured Claims), Class 5 (Signature Secured Claims), Class 6 (Northpoint Secured Claims), Class 7 (Caterpillar Secured Claims), Class 8 (John Deere Secured Claims), Class 9 (Santander Secured Claims), Class 10 (TBK Bank Secured Claims), Class 11 (TCF Secured Claims); Class 12 (VFSUS Secured Claims); Class 13 (Other Secured Claims); Class 14 (Fort Wayne Claims); Class 15 (Argonaut Claims); Class 16 (General Unsecured Claims); Class 18 (Val Verde County Claims); Class 19 (VFS Leasing Secured Claims); (Class 20 (BOW Secured Claim); Class 21 (Nashville Secured Claims); Class 22 (Sumitomo Secured Claims); Class 24 (Preferred Interests); and Class 25 (Common Interests) are Impaired under the Plan.

9.      <u>Assumption and Rejection of Executory Contracts and Unexpired Leases</u>. In accordance with section 1123(b)(2) of the Bankruptcy Code, pursuant to Article VI of the Plan, on the Effective Date, to the extent not previously assumed, assumed and assigned, or rejected, all Executory Contracts shall be deemed rejected by the Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code. The Debtor's rejection of such Executory Contracts pursuant to the Plan satisfies the requirements of section 365(b) of the Bankruptcy Code and, accordingly, the requirements of section 1123(b)(2) of the Bankruptcy Code. The Debtor has exercised reasonable business judgment in determining whether to reject each of the applicable Executory Contracts under the terms of the Plan. Each rejection of an Executory Contract pursuant to Article VI of the Plan will be legal, valid and binding upon the Debtor and all other parties to such Executory Contract, all to the same extent as if such rejection had been effectuated pursuant to an appropriate order of the Bankruptcy Court entered before the Effective Date under section 365 of the Bankruptcy Code. Notwithstanding the foregoing, the D&O Liability Insurance Policies are not rejected Executory Contracts.

10.  <u>Settlement of Claims and Causes of Action</u>.    All of the settlements and compromises pursuant to and in connection with the Plan or incorporated by reference into the Plan, including, but not limited to, the Fort Wayne Settlement, the Global Settlement, the Nashville Settlement, and the Comerica Settlement comply with the requirements of section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019.  Pursuant to Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided under the Plan, any and all compromise and settlement provisions of the Plan constitute good-faith compromises, are in the best interests of the Debtor, the Debtor's Estate, and all Holders of Claims and Interests, and are fair, equitable, and reasonable.

11.  <u>Other Appropriate Provisions</u>.  The Plan's other provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including without limitation, provisions for (a) Distributions to Holders of Claims and Interests, (b) objections to Claims, (c) procedures for resolving Disputed Claims, and (d) the settlement, release, injunction, and exculpation provision in Article IX of the Plan.

I.  <u>Section 1129(a)(2) – Compliance of the Debtor with Applicable Provisions of the Bankruptcy Code</u>.  The Debtor, as proponent of the Plan, has complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including, without limitation, sections 1123, 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018, and 3019.  In particular, the Debtor is a proper debtor under section 109 of the Bankruptcy Code and proper proponent of the Plan under section 1121(a) of the Bankruptcy Code.  Furthermore, the solicitation of acceptances or rejections of the Plan, including was (a) pursuant to the Solicitation Procedures Order; (b) in compliance with all applicable laws, rules, and regulations governing the adequacy of disclosure in connection with such solicitation; and (c) solicited after disclosure to Holders of Claims or Interests of adequate information as defined in section 1125(a) of the Bankruptcy Code.  Accordingly, the Debtor and (a) James Calandra, as Chief Restructuring Officer, and CRS Capstone Partners, LLC; (b) the Committee; (c) the Committee Parties; and (d) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case, and their respective employees, agents, attorneys, accountants, consultants, representatives, and other professionals, each in his/her capacity as such, have solicited votes on

7

the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and the Solicitation Procedures Order and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code, and the Exculpated Parties are entitled to the exculpation provisions set forth in Article IX of the Plan.

J.      <u>Section 1129(a)(3) – Proposal of Plan in Good Faith</u>.  The Debtor has proposed the Plan in good faith and not by any means forbidden by law.  In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of the Debtor's Chapter 11 Case, the Plan itself, and the process leading to its formulation.  The Debtor's Chapter 11 Case was filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtor to wind up its Estate.

K.      <u>Section 1129(a)(4) – Bankruptcy Court Approval of Certain Payments as Reasonable</u>.  Pursuant to section 1129(a)(4) of the Bankruptcy Code, the payments to be made for services or for costs in connection with the Debtor's Chapter 11 Case or the Plan are approved as set forth in the Plan and Global Settlement.  The fees and expenses incurred by Professionals retained by the Debtor or the Committee shall be payable according to the orders approving such Professionals' retentions, the Global Settlement, other applicable Bankruptcy Court orders, or as otherwise provided in the Plan.

L.      <u>Section 1129(a)(5) – Disclosure of Identity of Proposed Management, Compensation of Insiders, and Consistency of Management Proposals with the Interests of Creditors and Public Policy</u>.  Pursuant to section 1129(a)(5) of the Bankruptcy Code, (a) information concerning the Person proposed to serve as the Liquidating Trustee has been disclosed in the Plan Supplement, and (b) the Liquidating Trustee's proposed compensation has

8

been disclosed in the Plan Supplement, which satisfies the requirements of § 1129(a)(5) of the Bankruptcy Code.

M.      <u>Section 1129(a)(6) – No Approval of Rate Changes</u>.   Section 1129(a)(6) of the Bankruptcy Code is not applicable, because the Plan does not provide for rate changes by the Debtor.

N.      <u>Section 1129(a)(7) – Best Interests of Creditors and Interest Holders</u>.    The liquidation analysis included in the evidence related to the Plan that was proffered or adduced at or prior to, or in affidavits in connection with, the Confirmation Hearing, is reasonable.   The methodology used and assumptions made in such liquidation analysis, as supplemented by the evidence proffered or adduced at or prior to, or in affidavits filed in connection with, the Confirmation Hearing, are reasonable.   With respect to each Impaired Class, each Holder of an Allowed Claim or Interest in such Class has accepted the Plan or will receive under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount such Holder would receive if the Debtor was liquidated under chapter 7 of the Bankruptcy Code.

O.      <u>Section 1129(a)(8) – Conclusive Presumption of Rejection by Certain Impaired Classes; Acceptance of the Plan by Each Impaired Class</u>.   At least one Impaired Class that was entitled to vote has voted to accept the Plan.   Because the Plan provides that certain Classes of Claims and Interests will be Impaired and no distributions shall be made to Holders in such Classes, such Holders are deemed conclusively to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan. The Plan is confirmable nonetheless, because it satisfies sections 1129(a)(1) and 1129(b) of the Bankruptcy Code, as found below and on the record at the Confirmation Hearing.

9

P.    Section 1129(a)(9) – Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code.    The treatment of Administrative Expense Claims, Professional Claims, General Administrative Expense Claims, and Priority Tax Claims under Article III of the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

Q.    Section 1129(a)(10) – Acceptance by at Least One Impaired Class.    As set forth in the Voting Report, at least one of the Impaired Classes has voted to accept the Plan.    Accordingly, section 1129(a)(10) of the Bankruptcy Code is satisfied.

R.    Section 1129(a)(11) – Feasibility of the Plan.    The Plan satisfies section 1129(a)(11) of the Bankruptcy Code.    Based upon the evidence proffered or adduced at, or prior to, or in affidavits filed in connection with, the Confirmation Hearing, the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, except as such liquidation is proposed in the Plan.    Furthermore, the Debtor/Liquidation Trust will have adequate assets to satisfy obligations under the Plan and Global Settlement.

S.    Section 1129(a)(12) – Payment of Bankruptcy Fees.    Section XIII.C of the Plan provides for the payment of all fees payable under 28 U.S.C. § 1930(a) in accordance with section 1129(a)(12) of the Bankruptcy Code.

T.    Section 1129(a)(13) – No Retiree Benefits.    Section 1129(a)(13) of the Bankruptcy Code is not applicable, because the Debtor has no retiree benefit plans.

U.    Section 1129(a)(14) – Domestic Support Obligations.    The Debtor is not required by any judicial or administrative order, or by statute, to pay any domestic support obligations, and therefore, section 1129(a)(14) of the Bankruptcy Code is not applicable.

DM_US 190743286-8.114930.0011

V.       Section 1129(a)(15) – The Debtor Is Not an Individual.  The Debtor is not an individual, and therefore, section 1129(a)(15) of the Bankruptcy Code is not applicable.

W.       Section 1129(a)(16) – No Applicable Nonbankruptcy Law Regarding Transfers. The Debtor is a for-profit business and therefore section 1129(a)(16) of the Bankruptcy Code is not applicable.

X.       Section 1129(b) – Confirmation of Plan Over Rejection of Impaired Classes.  The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code with respect to the Classes presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and each Impaired Class that failed to vote to accept the Plan. The Plan does not discriminate unfairly with respect to Holders of Claims and Interests in such Classes because such Holders are receiving no worse treatment than the holders of any similarly situated Claims or Interests against the Debtor, as applicable.  The Plan also is fair and equitable with respect to each Class because (a) it provides for treatment consistent with statutory requirements in the case of Class 1, (b) provides for payment in full pursuant to the Sale Order in the case of Classes 8, 18 and 19, (c) provides for payment in full pursuant to the Ft. Wayne Settlement in the case of Class 15, and (d) in the case of Classes 18 and 19, (i) it does not provide a recovery on account of any Claim or Interest that is junior in priority to the Impaired, non-accepting Classes of Claims and Interests and (ii) no Holder of a Claim or Interest in any Class will receive or retain property under the Plan that has a value greater than 100% of such Holder's Allowed Claim or Interest.

Y.       Section 1129(c) – Confirmation of Only One Plan with Respect to the Debtor.  The Plan is the only plan that has been filed in this Chapter 11 Case with respect to the Debtor. Accordingly, the Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code.

Z.       Section 1129(d) – Principal Purpose Not Avoidance of Taxes or Securities Act of 1933.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.  Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

DM_US 190743286-8.114930.0011

AA.    <u>Section 1129(e) – Not a Small Business Case</u>.    Section 1129(e) is inapplicable because this Chapter 11 Case does not qualify as a small business case thereunder.

BB.    <u>Releases, Injunction, and Exculpation</u>.    The releases of Claims and Causes of Action described in the Global Settlement and in Article IX of the Plan, including (a) releases by the Debtor; (b) consensual releases of the Released Parties by the Releasing Parties; (c) releases of Union Bank, and the Debtor Releasing Parties, the Committee, and Equity; and (d) releases of Equity by Union Bank constitute good faith compromises and settlements of the matters covered thereby.  Such compromises and settlements are made in exchange for consideration and are in the best interests of Holders of Claims and Interests, are fair, equitable, reasonable, and are integral elements of the resolution of the Debtor's Chapter 11 Case in accordance with the Plan.  Each of the release, injunction, and exculpation provisions set forth in the Plan and Global Settlement: (1) is within the jurisdiction of the Bankruptcy Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); (2) is an essential means of implementing the Plan pursuant to section 1123(a)(6) of the Bankruptcy Code; (3) is an integral element of the transactions incorporated into the Plan; (4) confers material benefit on, and is in the best interests of, the Debtor, its Estate, and its creditors; (5) is important to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in the Debtor's Chapter 11 Case; (6) is consistent with sections 105, 1123, 1129, and all other applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and any other applicable bankruptcy or non-bankruptcy law; and (7) given and made after due notice and opportunity for hearing.

CC.    <u>Confirmation Hearing Exhibits</u>.    The exhibits presented at the Confirmation Hearing that were received into evidence are part of the record before the Bankruptcy Court.

DD.    <u>Objections to Confirmation of the Plan</u>.  Any and all objections to Confirmation have been withdrawn, settled, overruled, or otherwise resolved.

EE.    <u>Retention of Jurisdiction</u>.  The Bankruptcy Court may properly retain jurisdiction over the matters set forth in Article XII of the Plan and section 1142 of the Bankruptcy Code.

FF.    <u>Plan Supplement</u>.  The Debtor filed the Plan Supplement, which was subsequently supplemented on September 22, 2022, and September 27, 2022.  All documents included therein, including any supplementation or modifications thereto, comply with the terms of the Plan; and the filing and notice of such documents was adequate, proper and in accordance with the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

GG.    <u>Modifications to the Plan</u>.  Pursuant to section 1127 of the Bankruptcy Code, the Modifications addressed at the Confirmation Hearing and any other modifications to the Plan described or set forth in this Confirmation Order constitute technical changes, changes with respect to particular Claims by agreement with Holders of such Claims, or modifications that do not otherwise materially and adversely affect or change the treatment of any other Claim or Interest. Notice of these modifications was adequate and appropriate under the facts and circumstances of this Chapter 11 Case.  In accordance with Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code and do not require that Holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan. Accordingly, the Plan, as modified, is properly before the Bankruptcy Court, and all votes cast with respect to the Plan prior to such modifications shall be binding and shall apply to the Plan.

HH.    <u>Bankruptcy Rule 3020(e)</u>.  Considering, among other things, the amount and rate of accrual of Administrative Expense Claims, the length of time during which the Case has been

pending, the nature and state of the Debtor's business, and the impending September 30, 2022,

deadline for payment to Union Bank under the terms of the Global Settlement, the occurrence of

the Effective Date on or before September 30, 2022, is in the best interests of the Debtor, its Estate,

and its creditors.

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:

1. The Plan (including the Plan Supplement and all transactions contemplated in the

Plan, including the Global Settlement) is confirmed pursuant to section 1129 of the Bankruptcy

Code.

2. <u>Plan Supplement and Related Documents</u>. The documents contained in the Plan

Supplement, (as subsequently supplemented or amended) and the exhibits to the Plan are integral

to the Plan and are approved by the Bankruptcy Court, and the Debtor and the Liquidation Trustee

are authorized to take all actions required or appropriate under the Plan, the Plan Supplement

documents, and the Global Settlement to effectuate the Plan.

3. The terms of the Plan, the Global Settlement, the Plan Supplement, and any

Exhibits thereto are incorporated herein by reference, and are an integral part of this Confirmation

Order. The terms of the Plan, the Global Settlement, the Plan Supplement, all exhibits thereto, and

all other relevant and necessary documents shall be effective and binding as of the Effective Date

(unless different date(s) is/are specified in the applicable foregoing documents, in which case the

applicable terms shall be effective and binding on such date(s)). The failure to specifically include

or refer to any particular article, section, or provision of the Plan, the Global Settlement, the Plan

Supplement, the Exhibits thereto, or any related document in this Confirmation Order does not

diminish or impair the effectiveness or enforceability of such article, section, or provision.

4.      The compromises and settlements set forth in the Plan (including exhibits thereto), including the Global Settlement, are approved and will be effective immediately and binding on all parties in interest on the Effective Date (unless different date(s) is/are specified in the applicable foregoing documents, in which case the applicable terms shall be effective and binding on such date(s)).

5.      <u>Releases by the Debtor</u>.  The following releases by the Debtor in Article IX.A of the Plan are approved:

Except as provided for in the Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtor and its Estate (and any Entity seeking to exercise rights of the Estate) from any and all Causes of Action, including any derivative Claims, asserted on behalf of the Debtor, that the Debtor or its Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's in- or out-of-court restructuring efforts, the liquidation contemplated by the Plan, the Sale, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, or Filing of the Disclosure Statement, the Plan, the pursuit of Confirmation, the pursuit of Consummation, or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection thereto, including the issuance or Distribution of Securities pursuant to the Plan, or the Distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release obligations of any party or Entity under the Plan or the Global Settlement, or any document, instrument, or agreement executed to implement the Plan.

Notwithstanding anything to the contrary in the foregoing or any other provision of the Plan, the releases contained in the Plan do not (1) release any post-Effective Date obligations of any party or Entity under the Plan, the Sale, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (2) release Professional Claims, or (3) affect the rights of Holders of Allowed Claims and Interests to receive Distributions under the Plan. Further, notwithstanding anything to the contrary in the Plan, the release, injunction, exculpation, and other provisions with similar effect in the Plan shall exclude (and nothing herein shall release, waive or discharge): (A) any Claim, Cause of Action, or obligation under the Plan, (b) any document, agreement, or transaction entered into pursuant to the Plan; or (C) any Claims or Causes of Action of the Debtor that are expressly preserved as set forth in the Plan, the Disclosure Statement, and the global settlement, including, without limitation, the retained causes of action.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release set forth in this Article, which includes by reference each related provision and definition in the Plan, and further, shall constitute the Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the implementation of the Plan; (2) a good-faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtor and its Estate; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to the Debtor or the Estate (and any Entity seeking to exercise rights of the Estate) asserting any Claim or Cause of Action against any Released Party or released pursuant to the Debtor Release.

6.      <u>Consensual Releases by the Releasing Parties</u>.  The following releases by Holders of Claims and Interests in Article IX.B. of the Plan are approved:

Except as provided for in the Plan or the Confirmation Order, as of the Effective Date, for good and valuable consideration, including the obligations of the Debtor under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each Releasing Party is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each Released Party from any and all Causes of Action, whether known or unknown, including any derivative Claims, asserted on behalf of the Debtor, that such Person or Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's in- or out-of- court restructuring efforts, the reorganization contemplated by the Plan, the Sale, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, or Filing of the Disclosure Statement or the Plan, the pursuit of Confirmation, the pursuit of Consummation, or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection thereto, including the issuance or Distribution of Securities pursuant to the Plan, or the Distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release obligations of any Person or Entity under the Plan, the global settlement, or any document, instrument, or agreement executed to implement the Plan. The Ballot or an Opt-Out Form, as applicable, will contain an Opt-Out Election, and any Holder of a Claim or Interest that designates itself as "opting-out" shall not be a Releasing Party.

Notwithstanding anything to the contrary in the foregoing or any other provision in the plan, the releases contained in the plan do not (1) release any post-effective obligations of any party or Entity under the plan, the sale, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Global Settlement or (2) affect the rights of Holders of Allowed Claims and interests to receive distributions under the Plan. Further, notwithstanding anything to the contrary in the Plan, the release, injunction, exculpation, and other provisions with similar effect in the plan shall exclude (and nothing herein shall release,

16

waive, or discharge) (1) any claim, Cause of Action, or obligation under the plan; (2) any document, agreement, or transaction entered into pursuant to the Plan; or (3) any claims or causes of action that are expressly preserved as set forth in the plan, the disclosure statement, and the global settlement, including, without limitation, the retained causes of action.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release set forth in this Article IX.B, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Court's finding that the Third Party Release is: (1) consensual; (2) essential to the Confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise of the Claims released by the Third Party Release; (5) in the best interests of the Debtor and its Estate; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third Party Release.

7.  <u>Exculpation</u>.  The following exculpation of the Exculpated Parties in Article IX.C

of the Plan is approved:

Except as provided for in the Plan or the Confirmation Order, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Cause of Action for any Claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, or Filing of the Disclosure Statement, the Plan, or any restructuring transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the Filing of the Chapter 11 Case, the pursuit of Confirmation, or the administration and implementation of the Plan, including the Distribution of property under the Plan, or any other related agreement, except for Claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, gross negligence or willful misconduct, but in all respects such Persons or Entities shall be entitled to reasonably rely on the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

The Exculpated Parties and parties covered by section 1125(e) of the Bankruptcy Code have, and upon Consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and Distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such Distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such Distributions made pursuant to the Plan. Each of the Exculpated Parties and parties covered by section 1125(e) of the Bankruptcy Code shall be entitled to and granted the protections and benefits of section 1125(e) of the Bankruptcy Code.

8.  <u>Releases of Union Bank</u>.  The following release of Union Bank set forth in Article

IX.D of the Plan is approved:

17

Pursuant to Section 1123(B) of the Bankruptcy Code, and as further provided in the Global Settlement, as of the Effective Date, for good and valuable consideration, on and after the Effective Date, Union Bank is deemed conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged by the Debtor Releasing Parties, the Committee, and Equity from any and all claims or causes of action, known or unknown, including, without limitation, any derivative Claims, asserted on behalf of the Debtor Releasing Parties, the Committee, or Equity, that the Debtor Releasing Parties, the Committee, or Equity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, the Debtor Releasing Parties, the Committee, or Equity, based on or relating to, or in any manner arising from, in  whole or in part, Union Bank's prepetition or Postpetition transactions with the Debtor Releasing Parties, the Committee, or Equity, the Debtor's prepetition or Postpetition in- or -out-of-court restructuring efforts, the liquidation contemplated by the Plan, the Sale, the Chapter 11 Case, the Global Settlement, the formulation, preparation, dissemination, negotiation, or Filing of the Disclosure Statement, the Plan, the pursuit of Confirmation, the pursuit of Consummation, or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection thereto, including the Distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. For the avoidance of doubt, the foregoing shall include any Claims or Causes of Action for alleged lender-liability, equitable subordination, setoffs, and surcharges. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release obligations of Union Bank under the Plan or the Global Settlement, or any document, instrument, or agreement executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of (A) the release set forth in this Article IX.D, which includes by reference each of the related provisions and definitions contained in the Plan, and (B) the releases contained in the Global Settlement (together the "Union Bank Releases"), and further, shall constitute the Court's finding that Union Bank Releases are (1) in exchange for the good and valuable consideration provided by Union Bank, including, without limitation, Union Bank's contributions to facilitating the restructuring and implementation of the Plan; (2) a good-faith settlement and compromise of the Claims released by the Union Bank Releases; (3) in the best interests of the Debtor and its Estate: (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing, and (6) a bar to the Debtor Releasing Parties, the Committee, and Equity (and any Entity seeking to exercise rights of such parties) asserting any Claim or Cause of Action released pursuant to the Union Bank Releases.

9.    <u>Union Bank Release of Equity</u>.  The following Union Bank release of Equity set forth in Article IX.E of the Plan is approved:

As of the Effective Date, for good and valuable consideration, including (A) payment in the total amount of $5,000,000.00 to Union Bank, consisting of $3,850,000.00 that was paid on the Sale Closing Date and $1,150,000.00 to be paid on the earlier of (1) September 30, 2022, and (2) the Effective Date, and (B) the Court's Approval of the Union Bank Releases in Article IX.D above ((A) and (B) together, the "<u>Equity Release Conditions Precedent</u>"), and in accordance with the terms of the Global Settlement, Union Bank is deemed to have conclusively, absolutely,

18

unconditionally, irrevocably, and forever, released and discharged Equity from any and all Causes of Action, whether known or unknown, including any derivative Claims, asserted on behalf of the Debtor, that Union Bank would have been legally entitled to assert (whether individually or collectively), based on or relating to the Debtor, any Claim of Equity, or in any manner arising from, in whole or in part, the Debtor, the Debtor's in- or out-of-court restructuring efforts, the reorganization contemplated by the Plan, the Sale, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, or Filing of the Disclosure Statement or the Plan, the pursuit of Confirmation, the Union Bank Guaranty, or any restructuring or sale transaction, contract, instrument, release, or other agreement or document created or entered into in connection thereto, including the issuance or Distribution of Securities pursuant to the Plan, or the Distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence relating to the Union Bank guaranty taking place on or before the Effective Date; provided, however, no such release shall be granted by Union Bank to the extent the Equity Release Conditions Precedent are not satisfied pursuant to the terms of the Plan and the Global Settlement. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release obligations of Equity under the Plan or the Global Settlement, or any Document, instrument, or agreement executed to implement the Plan.

Notwithstanding anything to the contrary in the foregoing or any other provision in the Plan, the releases contained in the Plan do not (1) release any post-effective obligations of any party or Entity under the Plan, the Sale, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Global Settlement or (2) affect the rights of Holders of Allowed Claims and Interests to receive Distributions under the Plan. Further, notwithstanding anything to the contrary in the Plan, the Release, Injunction, Exculpation, and other provisions with similar effect in the Plan shall exclude (and nothing herein shall release, waive, or discharge) (1) any Claim, Cause of Action, or obligation under the Plan; (2) any document, agreement, or transaction entered into pursuant to the Plan; or (3) any Claims or Causes of Action that are expressly preserved as set forth in the Plan, the Disclosure Statement, and the Global Settlement, including, without limitation, the Retained Causes of Action.

10.    <u>Injunctions</u>.  The following injunctions set forth in Section IX.F. of the Plan are approved:

Except as otherwise expressly provided in the Plan, the Global Settlement, the Confirmation Order, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Persons or Entities who have held, hold, or may hold Causes of Action, Claims, or Interests that have been released, discharged, settled, or are subject to exculpation, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against the Protected Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Causes of Action, Claims, or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Persons or Entities or the property or the Estate of such Persons or Entities on account of or in connection with or with respect to any such

DM_US 190743286-8.114930.0011

Causes of Action, Claims, or Interests; (4) asserting any right of setoff, subrogation, or recoupment, or other similar legal or equitable right of any kind against any obligation due from such Persons or Entities or against the property of such Persons or Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action, unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Causes of Action, Claim, or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Causes of Action, Claims, or Interests released, discharged, or settled pursuant to the Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, Distributions on account of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article.

No Enjoined Party may commence or pursue a Claim or Cause of Action of any kind against any Protected Party that arose or arises from or is related to the Chapter 11 Case, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor, the administration of the Liquidation Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable claim of any kind, including, but not limited to, negligence, bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence against a Protected Party and (ii) specifically authorizing such Enjoined Party to bring such Claim or Cause of Action against any such Protected Party. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and, only to the extent legally permissible and as provided for in Article XII, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.

11. <u>Consent to Releases of Union Bank</u>. Each of (a) the voting parties who submitted

Ballots prior to September 21, 2022, who did not amend their previously submitted Ballots that

did not contain an opt-out election prior to the Voting Deadline of September 26, 2022, after

electronic notice from Stretto, (b) voting parties who submitted electronic ballots on or after

September 21, 2022, that did not contain an opt-out election, and (c) parties registered to receive

docket notifications through CM/ECF who did not vote or otherwise submit an opt-out election

are deemed to have consented to release Union Bank as a Released Party.  On or as soon as

reasonably practicable after the Effective Date, Stretto shall provide notice to (a) any party that

submitted a vote via paper ballot and (b) any party not registered to receive docket notifications through CM/ECF, containing language substantially similar to the language in Exhibit C to the Voting Report and provide the recipients the opportunity to opt-out of the Third Party Releases as they relate to Union Bank.  Any party that fails to submit an opt-out election within fourteen (14) days of service of such notices shall be deemed a Releasing Party as to Union Bank.

12.    Liquidation Trustee.  The appointment of the Liquidation Trustee, pursuant to the terms of the Plan Supplement, including the Liquidation Trust Agreement, is approved in all respects, and the Liquidation Trustee is authorized to carry out all rights and duties as set forth in the Plan.

13.    Vesting of Assets.  On the Effective Date, all Liquidation Trust Assets of the Estate and any Liquidation Trust Assets acquired by the Debtor pursuant to the Plan, and the Liquidation Trust Seed Funding shall vest in the Liquidation Trust, free and clear of all Liens, Claims, charges, or other encumbrances, on behalf of Liquidation Trust Beneficiaries; provided, however, that all Liquidation Trust Beneficiaries reserve their rights to Distributions from the Liquidation Trust Assets in accordance with the Plan, the Global Settlement, and this Confirmation Order.  For the avoidance of doubt, all Causes of Action not expressly released under the Plan or Global Settlement shall vest in the Liquidation Trust on the Effective Date.

14.    Executory Contracts and Unexpired Leases.  Entry of this Confirmation Order shall constitute approval of all assumptions and assumptions and assignments of Assumed/Assigned Contracts and Leases and rejections of Executory Contracts and Unexpired Leases provided for under the Plan pursuant to section 365 of the Bankruptcy Code.  Unless otherwise indicated in the Plan or this Confirmation Order, assumptions, assumptions and assignments of Assumed/Assigned

21

Contracts and Leases, or rejections of Executory Contracts and Unexpired Leases pursuant to the

Plan are effective as of the Effective Date and closing of the Sale Transaction without the need for

any further action or consents that may otherwise be required under applicable nonbankruptcy law.

Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date

shall be subject to approval by a Final Order of the Bankruptcy Court on or after the Effective

Date, the entry of which shall result in such assumptions or rejections becoming effective without

the need for any further action that may otherwise be required under applicable nonbankruptcy

law.   Notwithstanding the foregoing, the D&O Liability Insurance Policies are not rejected

Executory Contracts.

      15.    <u>Implementation of Other Necessary Documents and Agreements</u>.   The Debtor or

the Liquidation Trustee, as applicable, are authorized, without further notice, or action, order or

approval of the Bankruptcy Court or any other Person, to execute and deliver all agreements,

documents, instruments and certificates relating to such documents and agreements and to perform

their obligations thereunder, including, without limitation, to pay all fees, costs and expenses

thereunder in accordance with the Plan and Global Settlement.   The terms and conditions of such

documents and agreements are reaffirmed or approved, as applicable, and shall, upon completion

of documentation and execution, be valid, binding, and enforceable.

      16.    <u>No Action Required</u>.   Under section 1142(b) of the Bankruptcy Code and applicable

nonbankruptcy law, no action of the directors, managers, or members of the Debtor, and no action

of the equity holders of the Debtor, is required to authorize the Debtor to enter into, execute,

deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan and

any contract, instrument, or other document to be executed, delivered, adopted, or amended in

connection with the implementation of the Plan.

17.    <u>Enforceability of Plan Documents</u>.  Pursuant to Sections 1123(a) and 1142(a) of the Bankruptcy Code and the provisions of this Confirmation Order, the Plan, the Liquidation Trust Agreement, and all documents arising under or related to the Plan shall be enforceable notwithstanding any otherwise applicable nonbankruptcy law, and the Debtor and the Liquidation Trustee are entitled to enforce the terms of this Confirmation Order.

18.    <u>Released Parties</u>. The parties being released under the Plan are, collectively, and in each case in its capacity as such: (a) the Professionals, including Capstone, McDermott, and Committee Professionals; (b) Stretto; (c) Union Bank; and (d) with respect to each of the foregoing Entities in clauses (a) through (c), such Entity's current and former Affiliates and subsidiaries, and such Entities and their current and former Affiliates' and subsidiaries' current and former directors, managers, officers, principals, members, employees, agents, advisors, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, Professionals and other representatives, equity (regardless of whether such interests are held directly or indirectly), predecessors, and successors and assigns, each in its capacity as such; <u>provided</u>, <u>however</u>, Released Parties shall not include (a) current and former officers and directors of the Debtor; (b) current and former holders of Interests in the Debtor; (c) the Debtor's Former Investment Banker; (d) BDO USA, LLC; (e) Ironwood Mezzanine Funds III-A, LP; (f) Ironwood Mezzanine Funds III, LP; (g) Patriot Capital III SBIC, LP; (h) Patriot Capital III, LP; (i) Brown Gibbons Lang & Company; or (j) any agent, employee, owner, advisor, or other Person or Entity affiliated with any foregoing persons or entities, notwithstanding anything in the Plan or the Confirmation Order to the contrary.

19.    <u>Releasing Parties</u>. The parties giving releases under the Plan are, collectively, and in each case in its capacity as such: (a)  a Holder of a Claim and/or Interest that (i) votes to accept the Plan, (ii) is deemed to accept the Plan, <u>or</u> (iii) does not return the Opt-Out Election on the

23

applicable Ballot or form pursuant to the instructions set forth therein; (b) the Committee Parties;

(c) Equity;  and (d) with respect to each of the foregoing Entities in clauses (a) through (c), such

Entity's current and former Affiliates and subsidiaries, and such Entities and their current and

former Affiliates' and subsidiaries' current and former directors, managers, officers, principals,

members, employees, agents, advisors, advisory board members, financial advisors, attorneys,

accountants, investment bankers, consultants, Professionals and other representatives, equity

holders (regardless of whether such interests are held directly or indirectly), predecessors, and

successors and assigns, each in its capacity as such.

> 20.    <u>United States Not a Releasing Party</u>. For the avoidance of doubt, the United States
is not a Releasing Party under the Plan.

> 21.    <u>Texas Comptroller of Public Accounts</u>.  Notwithstanding anything to the contrary
in the Plan or this Order, as to the Texas Comptroller of Public Accounts (the "<u>Comptroller</u>"),

nothing in the Plan or this Order shall: (1) affect or impair any setoff or recoupment rights of the

Comptroller under applicable bankruptcy and nonbankruptcy law and all such rights are preserved;

(2) affect or impair any rights of the Comptroller to pursue any non-debtor third parties for tax

debts or claims; (3) be construed to preclude the payment of interest and/or penalties provided

under nonbankruptcy law, if any, on the Comptroller's Administrative Expense Claim(s) and

Priority Tax Claim(s); (4) modify, to the extent that interest is payable as to any claim of the

Comptroller, the statutory interest rate under applicable nonbankruptcy law, and which the Priority

Tax Claim(s) shall be determined as of the calendar month in which the Plan is confirmed pursuant

to 11 U.S.C. § 511(b); (5) impose, in relation to Administrative Expense Claim(s) of the

Comptroller, a requirement to file a request for payment as a condition of its allowance or to

receive payment for such claims and such claims are allowed upon filing, subject to an objection;

DM_US 190743286-8.114930.0011

(6) preclude the Comptroller from amending any of its Proof of Claim(s) and/or Administrative Expense Claim(s) absent prior authorization from the Court or the Liquidation Trustee after the filing of the following tax return(s): August 2022 sales tax, 2022 franchise tax, and 2022 final franchise tax, and (7) be construed as a compromise or settlement of any liability, claim, cause of action, suit, right, or interest of the Comptroller.  Notwithstanding anything to the contrary in the Plan or this Order, should the Liquidating Trustee not pay the Comptroller's Administrative Expense Claim(s) and/or Priority Tax Claim(s) on the initial Distribution Date, the Liquidating Trustee shall establish a reserve in an amount sufficient to pay the Comptroller's Administrative Expense Claim(s) and/or Priority Tax Claim(s) in full together with any interest that may be required.  The Debtor agrees that the Priority Tax Claim of the Comptroller was not paid upon the Sale Closing Date; provided, however, that such acknowledgment is not an admission that the Debtor owes the Comptroller, and the Debtor reserves all rights of the Debtor and the Liquidation Trustee to object to the Comptroller's Priority Tax Claim, subject to the Plan.

22.    Class 5 Claim.  Each Holder of a Class 5 Claim received the Collateral for such Class 5 Claim in satisfaction of the secured portion of such Holder's Class 5 Claim.  Each Holder of a Class 5 Claim may file an amended claim for Deficiency which will be treated in Class 16.  The reservation of rights under the Plan as to the Holder of a Class 5 Claim shall be limited to the right to object to any such Deficiency Claim.  The Liquidation Trustee may object to such Deficiency Claim on any grounds, including the value of the Collateral under Section 506 of the Bankruptcy Code, and the Holder of a Class 5 Claim may assert any setoff, subrogation, recoupment or other legal or equitable rights of any kind as a defense to any obligation alleged to be due from the Holder of a Class 5 Claim or against the Collateral on account of, in connection with, or with respect to any claims, interest or cause of action asserted by the Debtor or the

25

Liquidating Trust.  Notwithstanding any Ballot filed rejecting the Plan, Class 5 shall be deemed to vote in favor of the Plan.

      23.    <u>Class 9 Claim</u>.  Each Holder of a Class 9 Claim received the Collateral for such Class 9 Claim in satisfaction of the secured portion of such Holder's Class 9 Claim.  Each Holder of a Class 9 Claim may file an amended claim for Deficiency which will be treated in Class 16. The reservation of rights under the Plan as to the Holder of a Class 9 Claim shall be limited to the right to object to any such Deficiency Claim.  The Liquidation Trustee may object to such Deficiency Claim on any grounds, including the value of the Collateral under Section 506 of the Bankruptcy Code, and the Holder of a Class 9 Claim may assert any setoff, subrogation, recoupment or other legal or equitable rights of any kind as a defense to any obligation alleged to be due from the Holder of a Class 9 Claim or against the Collateral on account of, in connection with, or with respect to any claims, interest or cause of action asserted by the Debtor or the Liquidating Trust.  Notwithstanding any Ballot filed rejecting the Plan, Class 9 shall be deemed to vote in favor of the Plan.

      24.    <u>Class 10 Claim</u>.  Each Holder of a Class 10 Claim received the Collateral for such Class 10 Claim in satisfaction of the secured portion of such Holder's Class 10 Claim.  Each Holder of a Class 10 Claim may file an amended claim for Deficiency which will be treated in Class 16. The reservation of rights under the Plan as to the Holder of a Class 10 Claim shall be limited to the right to object to any such Deficiency Claim.  The Liquidation Trustee may object to such Deficiency Claim on any grounds, including the value of the Collateral under Section 506 of the Bankruptcy Code, and the Holder of a Class 10 Claim may assert any setoff, subrogation, recoupment or other legal or equitable rights of any kind as a defense to any obligation alleged to be due from the Holder of a Class 10 Claim or against the Collateral on account of, in connection

26

with, or with respect to any claims, interest or cause of action asserted by the Debtor or the Liquidating Trust.  Notwithstanding any Ballot filed rejecting the Plan, Class 10 shall be deemed to vote in favor of the Plan.

25.    Class 22 Claim.  Each Holder of a Class 22 Claim received the Collateral for such Class 22 Claim in satisfaction of the secured portion of such Holder's Class 22 Claim.  Each Holder of a Class 22 Claim may file an amended claim for Deficiency which will be treated in Class 16. The reservation of rights under the Plan as to the Holder of a Class 22 Claim shall be limited to the right to object to any such Deficiency Claim.  The Liquidation Trustee may object to such Deficiency Claim on any grounds, including the value of the Collateral under Section 506 of the Bankruptcy Code, and the Holder of a Class 22 Claim may assert any setoff, subrogation, recoupment or other legal or equitable rights of any kind as a defense to any obligation alleged to be due from the Holder of a Class 22 Claim or against the Collateral on account of, in connection with, or with respect to any claims, interest or cause of action asserted by the Debtor or the Liquidating Trust.  Notwithstanding any Ballot filed rejecting the Plan, Class 22 shall be deemed to vote in favor of the Plan.

26.    Platform Waste Solutions, LLC.   The Sale Order and the Asset Purchase Agreement, and the Debtor's obligations therein shall not be altered, impaired, amended, rejected, discharged, or otherwise affected by the Plan, this Confirmation Order confirming the Plan, any documents incident or related to the Plan, or any subsequent order of this Court without the prior written consent of the Buyer; provided, however that the Administrative Expense Claims Bar Date shall apply to Platform as to any payment obligations owed to Platform under the Sale Order and Asset Purchase Agreement as of the Administrative Expense Claims Bar Date, and any such payment obligations not requested and Allowed in a timely-filed Administrative Expense Claim

27

will be discharged pursuant to Article III.A of the Plan. To the extent the Plan or this Confirmation Order otherwise alters, impairs, amends, rejects, discharges, or otherwise affects the Debtor's obligations under the Sale Order and Asset Purchase Agreement, the Sale Order and Asset Purchase Agreement shall control. Furthermore, and notwithstanding the Administrative Expense Claim Bar Date or previous terms of this paragraph, Platform shall retain any and all claims for defensive purposes, including recoupment or setoff, in the event any claims are asserted against Platform by any entity, and all parties-in-interest, including the Liquidation Trustee, reserve the right to object to such claims for recoupment or setoff. These provisions shall be binding on the Debtor and any assignee or successor (including the Liquidation Trust and Liquidation Trustee) of the Debtor. Notwithstanding anything in this Confirmation Order or the Plan to the contrary, the Debtor and/or the Liquidation Trustee shall deliver to Platform any property constituting Purchased Assets (as defined in the Asset Purchase Agreement) collected or obtained by the Debtor and/or the Liquidation Trustee promptly and not later than required under the Sale Order and the Asset Purchase Agreement; and the Liquidation Trustee's rights to assert that it has not received any amounts constituting Purchased Assets are reserved, provided that Debtor and/or the Liquidation Trustee shall inform Platform of same in writing with an explanation as to the basis of the Debtor's and/or the Liquidation Trustee's position. The Debtor or Liquidation Trustee, as applicable, shall promptly, provide Platform with a list of all funds constituting Purchased Assets received between September 28, 2022 and September 30, 2022.

27.    <u>Priority Claims Reserve</u>.  Notwithstanding anything to the contrary in the Plan, on or before the Effective Date, the Liquidation Trustee shall reserve funds held by the Liquidation Trustee Cash in an amount equal to $209,422.53 (the "<u>Priority Claims Reserve</u>") to be held pending further order of the Court. Any Distributions to Holders of Priority Tax Claims or Other

28

Priority Claims pursuant to the Plan shall be made from the Priority Claims Reserve. For the avoidance of doubt, any Claims from Equity or any Insider, including, but not limited to, Proofs of Claim Nos. 134 and 135 filed by James A. Smith, will not be paid from the Priority Claims Reserve and Equity and Insiders will receive treatment pursuant to the Liquidation Trust Waterfall.

28.    <u>Debtor Professionals Reserve</u>.  Notwithstanding anything to the contrary in the Plan, on or before the Effective Date, the Liquidation Trustee shall reserve in an account to be held by the Liquidation Trustee (the "<u>Debtor Professionals Reserve</u>") all Cash held by the Debtor or Liquidation Trustee, as applicable, less payment or reserve of (i) Union Bank Effective Date Settlement Payment, (ii) $300,000 to Stretto, (iii) $445,000 to the Committee Professionals, (iv) $200,000 for the Liquidation Trust Seed Funding, (v) the Priority Claims Reserve, (vi) the General Allowed Administrative Expense Reserve, (vii) the Santek Reserve, (viii) the Peoplease Reserve and (ix) the Platform Reserve (such reserves in subsections (v)-(ix), the "<u>Non-Professional Reserves</u>" and each individually a "<u>Non-Professional Reserve</u>") to be held by the Liquidation Trustee pending further order of the Court, which may be approval of the Debtor Professionals' Allowed Professional Claims; *provided, however*, that no funds shall be distributed to the Debtor Professionals from the Debtor Professionals Reserve until after the occurrence of the Administrative Expense Claims Bar Date.  For the avoidance of doubt, the Debtor Professionals Reserve is estimated to be approximately $2,492,525.  After the Administrative Expense Claims Bar Date, to the extent the amount reserved in any Non-Professional Reserve exceeds the asserted Claims subject to such Non-Professional Reserve, any excess funds therein may be transferred to any other Non-Professional Reserve for which the funds reserved therein are less than the total asserted Claims subject to such Non-Professional Reserve, up to the total amount of Claims asserted against such Non-Professional Reserve. After the Administrative Expense Claims Bar

29

Date, to the extent the total of all Claims subject to the Non-Professional Reserves in the aggregate exceeds the total amount reserved in such Non-Professional Reserves, then any difference shall be transferred from the Debtor Professionals Reserve to cover any such shortfall. After the Administrative Expense Claims Bar Date, to the extent the total of all Claims subject to the Non-Professional Reserves is less than the total amount reserved in such Non-Professional Reserves, then excess funds shall be distributed (a) first, to the Debtor Professionals Reserve, and (b) second from the Debtor Professionals Reserve to the Debtor Professionals to pay the Debtor Professionals' Initial Payment up to the total Debtor Professionals' Initial Payment of $2,692,000.00. Furthermore, any funds remaining in the Non-Professional Reserves in the aggregate after the satisfaction of all Claims subject to the Non-Professional Reserves shall be distributed to the Debtor Professionals Reserve and from the Debtor Professionals Reserve to the Debtor Professionals to pay the Debtor Professionals' Initial Payment up to the total Debtor Professionals' Initial Payment of $2,692,000.00. Any funds released from the Non-Professional Reserves in excess of the Debtor Professionals' Initial Payment shall be distributed pursuant to the Liquidation Trust Waterfall.  Upon allowance of fees and expenses by the Court, the Liquidation Trustee shall distribute the funds in the Debtor Professionals Reserve to pay the Debtor Professionals for their Allowed Professional Claims.

29.    <u>General Administrative Expense Reserve</u>.    Notwithstanding anything to the contrary in the Plan, on or before the Effective Date, the Liquidation Trustee shall reserve Cash held by the Liquidation Trustee in the estimated amount of $767,853 with such amount decreased for Administrative Expense Claims that are satisfied prior to the Effective Date (the "<u>Allowed General Administrative Expense Reserve</u>").  Any Distributions to Holders of Allowed General Administrative Expense Claims pursuant to the Plan shall be made from the General Allowed

30

Administrative Expense Reserve; provided, however, that if the amount of Allowed General

Administrative Claims following the Administrative Expense Claims Bar Date exceeds the amount

in the Allowed General Administrative Expense Reserve, the difference shall be deposited into the

Allowed General Administrative Expense Reserve from the Debtor Professionals Reserve if it is

still held by the Liquidation Trustee.  For the avoidance of doubt, any Claims from Equity or

Insiders, including, but not limited to, Proofs of Claim Nos. 134 and 135 filed by James A. Smith,

will not be paid from the Allowed General Administrative Expense Reserve and will receive

treatment pursuant to the Liquidation Trust Waterfall.

30.    Santek Reserve.  Notwithstanding anything to the contrary in the Plan or this

Confirmation Order, on or before the Effective Date, the Liquidation Trustee shall reserve Cash in

the amount of $271,427.43, which is the amount earmarked pursuant to the Sale Order representing

a resolution of a dispute between the Debtor, Santek Environmental of Kentucky, LLC ("Santek"),

and Hardin County, Kentucky (the "Santek Reserve").  The Santek Reserve shall be held in trust

for payment to Santek pursuant to the Sale Order and any such amounts of the Santek Reserve

shall be paid to Santek pursuant to the Sale Order based upon the agreement between the Debtor,

Union Bank, Hardin County, and Santek.  Hardin County's Objection to Plan [Docket No. 1136]

shall be deemed withdrawn.

31.    Peoplease Reserve.  Notwithstanding anything to the contrary in the Plan, on or

before the Effective Date, the Liquidation Trustee shall reserve Cash in the amount of $117,865.04,

(the "Peoplease Reserve"), which represents the amount Peoplease asserts is owed for services,

provided, however, that such amount shall be reduced by payments Peoplease receives prior to the

Effective Date.  Any funds paid to Peoplease will be from the Peoplease Reserve.

31

32.    <u>Platform Reserve</u>. Notwithstanding anything to the contrary in the Plan, on or before the Effective Date, the Liquidation Trustee shall place into a segregated account held by the Liquidation Trustee Cash in the amount equal to $81,125.16 (the "<u>Platform Reserve</u>"), which is an amount equal to an asserted claim for insurance proceeds pursuant to the Sale Order. Any Distributions to Platform as a resolution of such claims shall be made from the Platform Reserve. Platform, the Debtor, and/or the Liquidating Trustee are authorized to settle any and all claims in accordance with the Plan, this Confirmation Order, and the Liquidating Trust Agreement.

33.    <u>The Solid Waste Disposal Authority of the City of Huntsville</u>.  The Solid Waste Disposal Authority of the City of Huntsville ("<u>SWDA</u>") is deemed to opt-out out of the Third Party Release provided for in Article IX.B of the Plan without regard for how or if it voted for the Plan.   Notwithstanding anything else contained or stated in the Plan or the confirmation order to the contrary, SWDA's rights to assert any timely filed unsecured claim it has against the Debtor defensively for set-off or offset purposes, if it is later sued by the Liquidation Trustee or otherwise based on any Claims, Causes of Action, or Retained Causes of Action conveyed to the Liquidating Trust under the Plan, are reserved; <u>provided</u>, <u>however</u>, that nothing contained in the foregoing shall be an admission that SWDA has any such claim and the Debtor, Liquidation Trustee, Committee, and Union Bank reserve all their rights if any to object to any such claim or set-off as invalid or unenforceable under applicable law, including, without limitation, that any SWDA claim has been fully satisfied under the Sale Order.

34.    <u>Debtor Professionals' and Committee Professionals' Standing to Object to Claims</u>. For the avoidance of doubt, the Debtor Professionals and Committee Professionals shall have standing to object to any General Administrative Expense Claim.

DM_US 190743286-8.114930.0011

35.     <u>JD Tractor and Two (2) Scrapers</u>.  This Order is without prejudice to the rights of Platform against Red River Service Corp. ("<u>RRSC</u>") and RRSC against Platform with respect to that certain August 3, 2022, letter from Platform to Debtor concerning the rejection of that certain equipment lease between Debtor and RRSC regarding one (1) JD Tractor and two (2) Scrapers, all such rights between Platform and RRSC are expressly reserved pending further order of the Court or agreement of the parties.

36.     <u>MUFG Union Bank, N.A.</u> Notwithstanding the absence of any Ballot accepting or rejecting the Plan, Union Bank has been granted leave, and shall be deemed, to vote in favor of the Plan.

37.     <u>Union Bank Effective Date Settlement Payment</u>. Notwithstanding any provision in the Plan or Global Settlement to the contrary, the Union Bank Effective Date Settlement Payment shall be paid on September 30, 2022, directly by either the Debtor or Equity; to the extent the Union Bank Effective Date Settlement Payment is paid by Equity, such payment shall be deemed a payment by Equity to the Debtor and the Debtor to Union Bank.

38.     <u>Retained Causes of Action</u>.  The Schedule of Retained Causes of Action filed on September 26, 2022 [Docket No. 1162] is amended as provided in <u>Exhibit C</u> attached hereto.

39.     <u>Notice of Confirmation, Effective Date, and Administrative Expense Claims Bar Date</u>.  The Debtor shall cause to be served a notice of the entry of this Confirmation Order, the Effective Date, and Administrative Expense Claims Bar Date, substantially in the form attached hereto as <u>Exhibit B</u> (the "<u>Confirmation Notice</u>"), upon (a) all parties listed in the creditor matrix maintained by the Notice and Claims Agent, (b) all taxing authorities, and (c) such additional persons and entities as deemed appropriate by the Debtor, no later than five business days after the Confirmation Date.

33

40.    <u>No Stay of Confirmation Order</u>.  Notwithstanding Bankruptcy Rule 3020(e), the terms and conditions of this Confirmation Order will be effective and enforceable immediately upon its entry.

### END OF ORDER ###

DM_US 190743286-8.114930.0011

# __EXHIBIT A__

Fourth Amended Plan for
Red River Waste Solutions, LP

DM_US 190743286-8.114930.0011

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **RED RIVER WASTE SOLUTIONS, LP,**[1] | ) | **Case No. 21-42423 (ELM)** |
| | ) | |
| **Debtor.** | ) | |
| | ) | |

**FOURTH AMENDED CHAPTER 11 PLAN FOR
RED RIVER WASTE SOLUTIONS, LP**

Marcus A. Helt (Texas Bar #24052187)
Jane A. Gerber (Texas Bar #24092416)
Jack G. Haake (Texas Bar #24127704)
McDERMOTT WILL & EMERY LLP
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201
Tel: (214) 210-2821 / Fax: (972) 528-5765
mhelt@mwe.com
jagerber@mwe.com
jhaake@mwe.com

***COUNSEL FOR THE DEBTOR
AND DEBTOR IN POSSESSION***

Dated: September 7, 2022

---

[1] The last four digits of the Debtor's taxpayer identification number are 8719. The Debtor's principal office is located at 4004 East Hwy, 290 West, Dripping Springs, Texas 78620.

## TABLE OF CONTENTS

**ARTICLE I** DEFINED TERMS AND RULES OF INTERPRETATION ................................ 9

    **A.**    Defined Terms ................................................................................. 9

    **B.**    Rules of Interpretation .................................................................... 28

    **C.**    Computation of Time ...................................................................... 29

    **D.**    Reference to Monetary Figures........................................................ 29

    **E.**    Controlling Document .................................................................... 29

**ARTICLE II** COMPROMISES AND SETTLEMENTS OF DISPUTES .............................. 30

    **A.**    Settlement Authority....................................................................... 30

    **B.**    Fort Wayne and Argonaut Settlement. ............................................ 30

    **C.**    Global Settlement. .......................................................................... 31

    **D.**    Nashville Settlement. ..................................................................... 34

    **E.**    Comerica Settlement Related to Debtor's Cash Management System and Corporate Card Program........................................................................ 36

**ARTICLE III** ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY CLAIMS ........... 37

    **A.**    General Administrative Expense Claims .......................................... 38

    **B.**    Professional Claims ........................................................................ 38

    **C.**    Priority Tax Claims ........................................................................ 39

    **D.**    Euclid DIP Financing Claims ......................................................... 39

    **E.**    Weldon DIP Financing Claims ....................................................... 40

**ARTICLE IV** CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS .... 40

    **A.**    Classification of Claims and Interests.............................................. 40

    **B.**    Treatment of Claims and Interests .................................................. 41

    **C.**    Special Provision Governing Unimpaired Claims ............................ 49

    **D.**    Elimination of Vacant Classes ........................................................ 49

    **E.**    Acceptance or Rejection of the Plan................................................. 49

    **F.**    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code ............................................................................. 50

**ARTICLE V** MEANS FOR IMPLEMENTATION OF THE PLAN ....................................... 50

    **A.**    Implementation Generally .............................................................. 50

    **B.**    Liquidation Trust Creation and Governance of the Liquidation Trust .... 50

    **C.**    Preservation of Causes of Action..................................................... 57

    **D.**    Resignation of Directors and Officers ............................................. 58

    **E.**    Corporate Existence........................................................................ 58

i

**F.**  Corporate Action ................................................................ 59

**G.**  Section 1146 Exemption ...................................................... 59

**H.**  Closing the Chapter 11 Case ............................................... 60

**ARTICLE VI** TREATMENT OF EXECUTORY CONTRACTS AND/OR UNEXPIRED LEASES .......................................................................................... 60

**A.**  Executory Contracts and Unexpired Leases. ....................... 60

**B.**  Rejection Damages Bar Date. ............................................. 60

**C.**  Effect of Post-Confirmation Rejection. ............................... 60

**ARTICLE VII** PROVISIONS GOVERNING DISTRIBUTIONS ............. 60

**A.**  Timing and Calculation of Amounts to Be Distributed .......... 60

**B.**  All Distributions by Liquidation Trustee .............................. 61

**C.**  Expenses Incurred on or After the Effective Date ................ 61

**D.**  Delivery of Distributions and Undeliverable or Unclaimed Distributions ............. 61

**E.**  Manner of Payment ............................................................ 62

**F.**  Compliance with Tax Requirements ..................................... 62

**G.**  Allocations ........................................................................ 63

**H.**  No Post-Petition Date Interest on Claims ............................ 63

**I.**  Setoffs, Offsets, and Recoupments ...................................... 63

**J.**  Claims Paid or Payable by Third Parties .............................. 63

**ARTICLE VIII** PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS ......................................... 64

**A.**  Allowance of Claims .......................................................... 64

**B.**  Claims Administration Responsibilities ................................ 65

**C.**  Adjustment to Claims Without Objection ............................. 65

**D.**  Time to File Objections to Claims ....................................... 65

**E.**  Disallowance of Claims or Interests .................................... 65

**F.**  Estimation of Claims .......................................................... 66

**G.**  No Recourse ...................................................................... 66

**H.**  Amendments to Proofs of Claim ......................................... 66

**I.**  No Transfers of Claims After Effective Date ........................ 66

**J.**  No Distributions Pending Allowance ................................... 67

**K.**  Distributions After Allowance ............................................. 67

**ARTICLE IX** SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS 67

**A.**  Releases by the Debtor ....................................................... 67

**B.**  Consensual Releases by the Releasing Parties ...................... 68

**C.**    Exculpation ........................................................................................ 70

**D.**    Releases of Union Bank ..................................................................... 71

**E.**    Union Bank Release of Equity .......................................................... 72

**F.**    Injunction ........................................................................................... 73

**G.**    Reimbursement, Contribution, and Indemnification Claims ................... 74

**ARTICLE X** CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION
OF THE PLAN ................................................................................................. 75

**A.**    Conditions to Confirmation ................................................................ 75

**B.**    Conditions Precedent to the Effective Date ....................................... 75

**C.**    Effect of Failure of Conditions ......................................................... 76

**D.**    Substantial Consummation ................................................................. 76

**ARTICLE XI** MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ..... 76

**A.**    Modification and Amendments ........................................................... 76

**B.**    Effect of Confirmation on Modifications ........................................... 77

**C.**    Revocation or Withdrawal of Plan ..................................................... 77

**ARTICLE XII** RETENTION OF JURISDICTION ....................................................... 77

**ARTICLE XIII** MISCELLANEOUS PROVISIONS ..................................................... 79

**A.**    Immediate Binding Effect .................................................................. 79

**B.**    Additional Documents ........................................................................ 80

**C.**    Payment of Statutory Fees ................................................................. 80

**D.**    Reservation of Rights ......................................................................... 80

**E.**    Successors and Assigns ...................................................................... 80

**F.**    Notice of Effective Date ..................................................................... 80

**G.**    Notices ................................................................................................ 80

**H.**    Term of Injunctions or Stays .............................................................. 81

**I.**    Entire Agreement ............................................................................... 81

**J.**    Exhibits and Annexes ......................................................................... 81

**K.**    Nonseverability of Plan Provisions .................................................... 82

**L.**    Votes Solicited in Good Faith ............................................................ 82

**M.**    Governing Law ................................................................................... 82

**N.**    Dissolution of Statutory Committees ................................................. 83

**O.**    Waiver or Estoppel ............................................................................. 83

**P.**    Closing of the Chapter 11 Case ......................................................... 83

The Liquidation Trustee shall, promptly after full administration of the Chapter 11 Case,
File with the Court all documents required by Bankruptcy Rule 3022 and any

applicable order of the Court or close the Chapter 11 Case. ................................... 83

## <u>INTRODUCTION</u>

Red River Waste Solutions, LP, as debtor and debtor in possession in this Chapter 11 Case (defined below), respectfully proposes the following Fourth Amended Chapter 11 Plan (as amended, modified, or supplemented from time to time) (the "<u>Plan</u>") pursuant to section 1121(a) of the Bankruptcy Code. Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in Article I.A of the Plan.

The Plan contemplates the Debtor's wind down and liquidation after the Sale of substantially all the Debtor's tangible assets, the creation of the Liquidation Trust, and implementation of the Global Settlement.

Subject to the restrictions on modifications set forth in the Bankruptcy Code section 1127 and Bankruptcy Rule 3019, the Debtor reserves its rights to alter, amend, or modify the Plan before its substantial Consummation.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## <u>SUMMARY OF THE PLAN</u>

1.  **Summary Only.** The following is a brief summary of the Plan's general terms and does not form a part of the Plan. This summary is qualified in its entirety by reference to the provisions of the Plan. Capitalized terms used in this summary are defined in the Plan.

2.  **General Description of the Business.** The Debtor is a third-generation family-run waste-management services company based in Dripping Springs, Texas. The Debtor provides this waste-management services to more than 310,000 households and commercial locations across the Southern and Midwestern United States. The Company serves customers in (a) Huntsville, Alabama; (b) Fort Wayne, Indiana; (c) Elizabethtown and Hardin County, Kentucky, (d) Nashville, Newbern, Union City, Dyer County, Gibson County, and Obion County, Tennessee, and (e) Del Rio, Texas. The Debtor also offers industrial services (such as roll-off containers, self-contained compactors, and stationary compactors, and landfill management. The Debtor's Assets include most forms of property, tangible and intangible, such as contracts, leases, accounts receivable, equipment used in the operation of a waste-haul business and Claims and Causes of Action.

Like most businesses, the Debtor experienced financial and operational stress over the last almost two (2) years during and due to the COVID-19 pandemic. Government-imposed "stay-at-home" orders substantially increased waste volume in areas serviced by the Debtor, resulting in higher costs and unexpected wear and tear on trucks, employees, and supply-chain shortages in parts and repair-and-maintenance labor impacted the Debtor's operations. This, combined with (a) liquidity shortages and (b) a refusal by certain municipalities to increase prices paid for rising costs associated with this unexpected pandemic, even though they received substantial federal funding from the American Recovery Act of 2020, contributed to the Debtor's decision to commence this Chapter 11 Case.

3.  **Platform Sale.** With the Bankruptcy Court's permission, the Debtor completed its sale of substantially all its assets to Platform Waste Solutions, LLC (or its designee) on or around August 10, 2022.

4.  **Plan Summary.** The purpose of the Plan is to distribute the remaining sale proceeds, maximize the value of and liquidate for the benefit of the administrative-expense holders and other creditors assets of the bankruptcy estate – including causes of action – remaining after the sale to Platform. The Plan establishes a liquidating trust and appoints a liquidating trustee to oversee and administer that trust for the benefit of the liquidation-trust beneficiaries – that is, the administrative-expense holders and other creditors of the bankruptcy estate. The Plan's goal is to (a) implement the Global Settlement and pursue certain litigation, (b) distribute the Sale Proceeds following the Sale of substantially all the Debtor's tangible Assets, and (c) wind down the Estate.

5.  **Global Settlement.** During the Chapter 11 Case, Union Bank, the Estate, the Committee, and Equity have been involved in existing and potential litigation related to their various disputes. In an attempt to avoid the expense, inconvenience, delay, and uncertainty of continuing this litigation, the Estate, the Debtor, Union Bank, the Committee, and Equity mediated

2

their disputes and then agreed to a resolution. This resolution must be modified, given the results of the Platform sale. This modified resolution is the "Global Settlement" outlined in the Plan.

6.    **Treatment of Claims.** All General Administrative Expense Claims will be paid in full in Cash on the later of (a) the Effective Date, (b) the date such Claim becomes an Allowed Administrative Expense Claim, (c) the date such Claim would be owed and due by the Debtor in the ordinary course of business, consistent with past practice, and in accordance with the terms and conditions of any agreement or regulation governing, instrument evidencing, or other document relating to such transactions, (d) the date Cash is available to pay such Claims, even if that date is after entry of the Confirmation Order and the occurrence of the Effective Date, and (e) such other date ordered by the Bankruptcy Court or agreed by the Holder of such Claim and the Liquidation Trustee, as applicable.

All Professional Claims will be paid pursuant to the terms of the Plan and the Global Settlement. Under the Global Settlement, the Professional Claims will be paid as follows:

- Debtor Professionals will be paid the Debtor Professionals' Initial Payment on the later of (x) the Effective Date and (y) approval by the Bankruptcy Court, in either case, to the extent Cash is available for Distribution on the Effective Date. The remaining Debtor Professionals' Unpaid Administrative Claims, including any shortfall to the extent available Cash for Distribution on the Effective Date is not sufficient to pay Debtor Professionals' Initial Payment, will be paid pursuant to the Liquidation Trust Waterfall.

- Committee Professionals will be paid the Committee Professionals' Initial Payment on the later of (x) the Effective Date and (y) approval by the Bankruptcy Court. The remaining Committee Professionals' Unpaid Administrative Claims will be paid pursuant to the Liquidation Trust Waterfall.

Additionally, Stretto will receive the following treatment:

- Stretto will be paid $300,000 on the later of (a) the Effective Date and (b) approval by the Bankruptcy Court, in either case, to the extent Cash is available for Distribution on the Effective Date or as soon as practical thereafter in full and final satisfaction of all Stretto's outstanding Administrative Expense Claims.

The Euclid DIP Financing Claims were paid in full on the Sale Closing Date. The Weldon DIP Financing Claims were not paid pursuant to the Sale Order. The Allowed Weldon DIP Financing Claims and any Claims owed to Equity, including, without limitation, RRSC, will be paid out of funds, if any, distributed to Equity pursuant to the Global Settlement and priority set forth in the Liquidation Trust Waterfall in full and final satisfaction, settlement, and release of, and in exchange for such Claims. Unless otherwise provided in the Plan, upon payment or satisfaction of such DIP Financing Claims, all Liens granted to secure the Allowed DIP Financing

Claims shall be terminated and of no further force and effect.

All Priority Tax Claims were paid on the Sale Closing Date in accordance with the Sale Order; thus, no such Claim is owed.  However, if the Bankruptcy Court enters an order finding that a Priority Tax Claim was not paid in full on the Sale Closing Date or the Debtor or Liquidation Trustee, as applicable, determine that such Priority Tax Claim was not paid on the Sale Closing Date, then, except to the extent that a Holder of an Allowed Priority Tax Claim and the Debtor or Liquidation Trustee, as applicable, agree to less favorable treatment, in full and final satisfaction, settlement, and release of, and in exchange for, each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall receive, at the sole and absolute option of the Liquidation Trustee, either (a) the full unpaid amount of such Allowed Priority Tax Claim in Cash on the later of (i) the Effective Date, (ii) the date on which such Priority Tax Claim becomes an Allowed Claim or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Priority Tax Claim is due or as soon as reasonably practicable thereafter), and (iii) when sufficient Cash exists to pay such Claims in full in Cash, even if that date is after entry of the Confirmation Order and the occurrence of the Effective Date, or (b) pursuant to sections 511 and 1129(a)(9)(C) of the Bankruptcy Code, equal annual installment payments in Cash, of a total value equal to the Allowed amount of such Priority Tax Claim, over a period ending not later than five (5) years after the Petition Date.

Further, if there are any Allowed Other Priority Claims filed against the Estate, such Claims will be paid (a) after all Allowed Administrative Expense Claims and Claims higher in priority under the Bankruptcy Code are paid in full, and (b) on the later of (i) the Effective Date, (ii) the date on which such Priority Claim becomes an Allowed Claim or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Priority Tax Claim is due or as soon as reasonably practicable thereafter), and (iii) when sufficient Cash exists to pay such Claims in full in Cash, even if that date is after entry of the Confirmation Order and the occurrence of the Effective Date, unless the Holder of such Allowed Priority Claim agrees to less favorable treatment of its Allowed Priority Claim.

A brief summary of the treatment of the classified Classes of Claims is set forth below:

| Class | Claims and Interests | Status | Treatment: |
|-------|----------------------|--------|------------|
| 1 | Other Priority Claims | Impaired | Except to the extent that a Holder of a Class 1 Claim agrees to less favorable treatment of its Allowed Class 1 Claim, each such Holder shall receive payment in full in Cash (a) after all Allowed Administrative Expense Claims and Claims higher in priority under the Bankruptcy Code are paid in full and (b) on the later of (i) the Effective Date, (ii) the date on which such Priority Claim becomes an Allowed Claim or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Other Priority Claim is due or as soon as reasonably practicable |

| Class | Claims and Interests | Status | Treatment: |
|---|---|---|---|
| | | | thereafter), and (iii) when sufficient Cash exists to pay such Claims in full in Cash, even if that date is after entry of the Confirmation Order and the occurrence of the Effective Date. |
| 2 | Intentionally Omitted | Intentionally Omitted | Intentionally Omitted |
| 3 | Union Bank Claim | Impaired | Class 3 Claims will be paid in full and final satisfaction, settlement, release, and discharge of and in exchange for each such Class 3 Claim pursuant to the terms of the Global Settlement and the Liquidation Trust Waterfall.<br><br>According to the Global Settlement, among other things, The Class 3 Claim is Allowed in the amount of $31,105,474.10. On account of its Class 3 Claim, Union Bank shall receive (a) an initial Distribution of $5,000,000.00, consisting of (i) $3,850,000.00, which was paid on the Sale Closing Date and (ii) $1,150,000.00 on the earlier of (y) September 30, 2022, and (z) the Effective Date; (b) Distributions pursuant to the Liquidation Trust Waterfall; and (c) the Union Bank Releases described in Article IX.D and the Global Settlement. |
| 4 | Comerica Bank Secured Claims | Impaired | Class 4 Claims will be paid in full pursuant to the Comerica Settlement. |
| 5 | Signature Secured Claims | Impaired | Each Holder of a Class 5 Claim received the Collateral for such Class 5 Claims in full and final satisfaction, settlement, release, and discharge of and in exchange for each Holder's Class 5 Claim. The amount, validity, extent, value, and priority of the Allowed Class 5 Claims under section 506 of the Bankruptcy Code will be determined by the Bankruptcy Court after the Effective Date. Any Deficiency Claim or other Unsecured Claim of a Holder of Class 5 Claim shall be treated in Class 16. |

5

| Class | Claims and Interests | Status | Treatment: |
|-------|---------------------|--------|------------|
| 6 | Northpoint Secured Claims | Impaired | Each Holder of a Class 6 Claim was paid pursuant to the terms of the Sale Order in full and final satisfaction, settlement, release, and discharge of and in exchange for each Holder's Class 6 Claim. |
| 7 | Caterpillar Secured Claims | Impaired | Each Holder of a Class 7 Claim was paid pursuant to the terms of the Sale Order in full and final satisfaction, settlement, release, and discharge of and in exchange for each Holder's Class 7 Claim. The amount, validity, extent, value, and priority of the Allowed Class 7 Claims under section 506 of the Bankruptcy Code will be determined by the Bankruptcy Court after the Effective Date. Any Deficiency Claim or other Unsecured Claim of a Holder of a Class 7 Claim shall be treated in Class 16. |
| 8 | John Deere Secured Claims | Impaired | Each Holder of a Class 8 Claim was paid pursuant to the terms of the Sale Order in full and final satisfaction, settlement, release, and discharge of and in exchange for each Holder's Class 8 Claim. The amount, validity, extent, value, and priority of the Allowed Class 8 Claims under section 506 of the Bankruptcy Code will be determined by the Bankruptcy Court after the Effective Date. Any Deficiency Claim or other Unsecured Claim of a Holder of Class 8 Claim shall be treated in Class 16. |
| 9 | Santander Secured Claims | Impaired | Each Holder of a Class 9 Claim received the Collateral for such Class 9 Claims in full and final satisfaction, settlement, release, and discharge of and in exchange for each Holder's Class 9 Claim. The amount, validity, extent, value, and priority of the Allowed Class 9 Claims under section 506 of the Bankruptcy Code will be determined by the Bankruptcy Court after the Effective Date. Any Deficiency Claim or other Unsecured Claim of a Holder of Class 9 Claim shall be treated in Class 16. |

| Class | Claims and Interests | Status | Treatment: |
|---|---|---|---|
| 10 | TBK Bank Secured Claims | Impaired | Each Holder of a Class 10 Claim received the Collateral for such Class 10 Claims in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Class 10 Claim. The amount, validity, extent, value, and priority of the Allowed Class 10 Claim under section 506 of the Bankruptcy Code will be determined by the Bankruptcy Court after the Effective Date. Any Deficiency Claim or other Unsecured Claim of a Holder of Class 10 Claim shall be treated in Class 16. |
| 11 | TCF Secured Claims | Impaired | Each Holder of a Class 11 Claim was paid pursuant to the terms of the Sale Order in full and final satisfaction, settlement, release, and discharge of and in exchange for each Holder's Class 11 Claim. |
| 12 | VFSUS Secured Claims | Impaired | Each Holder of a Class 12 Claim was paid pursuant to the terms of the Sale Order in full and final satisfaction, settlement, release, and discharge of and in exchange for each Holder's Class 12 Claim. |
| 13 | Intentionally Omitted | Intentionally Omitted | Intentionally Omitted |
| 14 | Fort Wayne Claims | Impaired | Class 14 Claims were paid pursuant to the Ft. Wayne Settlement. |
| 15 | Argonaut Claims | Impaired | Class 15 Claims were paid pursuant to the Ft. Wayne Settlement. |
| 16 | General Unsecured Claims | Impaired | On the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, its Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim against the Debtor shall receive its Pro Rata share of Liquidation Trust Interests. |
| 17 | Intentionally Omitted | Intentionally Omitted | Intentionally Omitted |

| Class | Claims and Interests | Status | Treatment: |
|-------|----------------------|--------|------------|
| 18 | Val Verde County Claim | Impaired | Each Holder of a Class 18 Claim was paid pursuant to the terms of the Sale Order in full and final satisfaction, settlement, release, and discharge of and in exchange for each Holder's Class 18 Claim. |
| 19 | VFS Leasing Claims | Impaired | Each Holder of a Class 19 Claim was paid pursuant to the terms of the Sale Order in full and final satisfaction, settlement, release, and discharge of and in exchange for each Holder's Class 19 Claim. |
| 20 | BOW Secured Claim | Impaired | Each Holder of a Class 20 Claim received the Collateral for such Class 20 Claims in full and final satisfaction, settlement, release, and discharge of and in exchange for each Holder's Class 20 Claim.  The amount, validity, extent, value, and priority of the Allowed Class 20 Claim under section 506 of the Bankruptcy Code will be determined by the Bankruptcy Court after the Effective Date. Any Deficiency Claim or other Unsecured Claim of a Holder of Class 20 Claim shall be treated in Class 16. |
| 21 | Nashville Secured Claims | Impaired | Class 21 Claims will be paid in full pursuant to the Nashville Settlement. |
| 22 | Sumitomo Secured Claims | Impaired | Each Holder of a Class 22 Claim received the Collateral for such Class 22 Claims in full and final satisfaction, settlement, release, and discharge of and in exchange for each Holder's Class 22 Claim. The amount, validity, extent, value, and priority of the Allowed Class 22 Claims under section 506 of the Bankruptcy Code will be determined by the Bankruptcy Court after the Effective Date. Any Deficiency Claim or other Unsecured Claim of a Holder of Class 22 Claim shall be treated in Class 16. |
| 23 | Intentionally Omitted | Intentionally Omitted | Intentionally Omitted |

| Class | Claims and Interests | Status | Treatment: |
|-------|---------------------|--------|------------|
| 24 | Preferred Interests | Impaired Deemed to Reject | On the Effective Date, all Preferred Interests shall be deemed cancelled, discharged, released, and extinguished in full, and of no further effect, and each Holder shall receive no Distribution on account of its Class 24 Claim. |
| 25 | Common Interests | Impaired Deemed to Reject | On the Effective Date, all Common Interests shall be deemed cancelled, discharged, released, and extinguished in full, and of no further effect, and each Holder shall receive no Distribution on account of its Class 25 Claim. |

In sum, the Plan is designed to represent a series of compromises between the Debtor and its creditors to resolve the Debtor's financial distress in a way and at a speed to maximize value for all stakeholders. The Plan also provides the mechanism by which that value will be distributed to the stakeholders.

## ARTICLE I
## DEFINED TERMS AND RULES OF INTERPRETATION

### A.   Defined Terms

As used in the Plan, capitalized terms have the meanings set forth below.

1.     "Administrative Expense Claim(s)" means a Claim for costs and expenses of administration of the Chapter 11 Case arising on or after the Petition Date and until and including the Effective Date that is allowable under section 503(b) of the Bankruptcy Code and entitled to priority under sections 507(a)(2) or 507(b) of the Bankruptcy Code that has not already been paid, including: (a) the actual and necessary costs and expenses of preserving the Estate and operating the Debtor's business; (b) the Professional Claims; and (c) all fees and charges assessed against the Estate pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

2.     "Administrative Expense Claims Bar Date" means the deadline for Filing requests for payment of Administrative Expense Claims, which: (a) with respect to General Administrative Expense Claims shall be thirty (30) days after the Confirmation Date; and (b) with respect to Professional Claims, shall be sixty (60) days after the Confirmation Date. Any such Administrative Expense Claim not filed by the applicable Administrative Expense Claims Bar Date shall be deemed disallowed and expunged in its entirety, without further Order of the Bankruptcy Court or any action required by the Debtor or the Liquidation Trustee. For the avoidance of doubt, the Administrative Expense Claims Bar Date applies to all General Administrative Expense Claims, including such Claims filed or sought under section 503(b)(9) of the Bankruptcy Code.

3.      "Affiliate(s)" has the meaning set forth in section 101(2) of the Bankruptcy Code. With respect to any Person or Entity that is not a Debtor, the term "Affiliate" shall apply to such Persons as if the Person or Entity were a Debtor.

4.      "Allowed" means a Claim or Interest (or portion thereof) that either (a) is listed in the Schedules as neither Disputed, contingent, nor unliquidated and with respect to which no contrary or superseding Proof of Claim has been Filed, and that has not been paid pursuant to an order of this Court or otherwise satisfied prior to the Effective Date; (b) is evidenced by a Proof of Claim Filed on or before the applicable Bar Date for which no objection has been Filed on or before the Claims Objection Deadline; (c) is not the subject of an objection to allowance that was Filed on or before the Claims Objection Deadline that has not been settled, waived, withdrawn, or denied pursuant to a Final Order; or (d) is expressly allowed (i) pursuant to a Final Order, (ii) pursuant to an agreement between the Holder of such Claim or Interest and the Debtor or the Liquidation Trustee, as applicable, or (iii) pursuant to the terms of the Plan; provided however that proofs of interest need not be Filed with respect to any Interest. A Claim evidenced by a Proofof Claim Filed after the applicable Bar Date shall not be Allowed for any purpose whatsoever absent entry of a Final Order allowing such late-Filed Claim.

5.      "Argonaut" means Argonaut Insurance Company.

6.      "Argonaut Claim" means that any Claim of Argonaut.

7.      "Asset Purchase Agreement" means the Amended and Restated Asset Purchase Agreement by and between the Debtor and Platform that was approved by the Court at Docket No. 953, as amended, modified, supplemented, or revised.

8.      "Assets" means all right, title, and interest of the Debtor in and to property of the Estate, whether tangible or intangible, wherever located.

9.      "Assumption Order" means the *Order (I) Authorizing Assumption of the XL Policies and (II) Granting Related Relief* [Docket No. 460].

10.     "Avoidance Actions" means all avoidance, recovery, subordination, or other claims, actions or remedies that may be brought by or on behalf of the Debtor or Liquidation Trustee, the Estate, or other authorized parties-in-interest under the Bankruptcy Code or applicable non-bankruptcy Law, including claims, actions, or remedies under sections 502, 510, 542, 544, 545, and 547 through and including 553 and 724(a) of the Bankruptcy Code or under similar local, state, federal or foreign statutes and common law, including fraudulent-transfer Laws.

11.     "Ballot" means the ballot applicable to the relevant Holder of a Claim or Interest, substantially in the form approved by the Court.

12.     "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. sections 101– 1532 *et seq*., as in effect on the Petition Date, together with all amendments, modifications, and replacements of the foregoing that are made retroactive to the Petition Date, as the same may existon any relevant date to the extent applicable to the Chapter 11 Case.

13.    "Bankruptcy Rule(s)" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of title 28 of the United States Code and the general, local, and chambers rules of the Court, each as amended from time to time.

14.    "Bar Date" means, (a) with respect to any Entity that is not a Governmental Unit, March 1, 2022, and (b) with respect to a Governmental Unit, May 30, 2022, each of which was the date set by the Court in docket entry at Docket No. 54 and noticed at Docket No. 324 and listed in the *Notice of Commencement* as the date by which Proofs of Claim must be Filed with respect to Claims other than Administrative Expense Claims or other Claims for which the Court enters an order excluding the Holders of such Claims from the requirement of Filing Proofs of Claim by such date.

15.    "Bid Procedures Order" means the *Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially all of the Debtor's Assets; (II) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases; (III) Approving the Debtor's Designation of a Stalking Horse Bidder and Granting Bid Protections; (IV) Scheduling (A) A Bid Deadline, (B) An Auction (if Necessary), and (C) a Sale Hearing; and (V) Granting Related Relief* [Docket No. 697], as amended or modified.

16.    "Bid Procedures" means the bid procedures approved by the Court in the Bid Procedures Order.

17.    "BOW" means Bank of the West.

18.    "BOW Secured Claim" means the Secured Claims of BOW or its assigns, including such Claims related to or arising from an alleged purchase-money security interest asserted in that certain vehicle with the VIN 1M2AU04C0GM010278.

19.    "Business Day" means any day other than a Saturday, Sunday, or other day on which the New York Stock Exchange or NASDAQ is closed for trading.

20.    "Cash" means cash in legal tender of the United States of America and cash equivalents, including bank deposits, checks, and other similar items.

21.    "Cash Collateral Budget" means those budgets that were or will be provided to and approved by Union Bank during the pendency of the Chapter 11 Case.

22.    "Cash Collateral Order" means the cash collateral orders entered in the Chapter 11 Case, including those order entered at Docket No. 75 and Docket No. 115 and any final cash collateral order entered by the Court.

23.    "Cash Management Order" has the meaning set forth in Article V.H herein.

24.    "Cash Management System" has the meaning set forth in Article V.H herein.

25.     "Caterpillar" means Caterpillar Financial Services Corporation.

26.     "Caterpillar Secured Claim" means the Secured Claims of Caterpillar or its assigns, including such Claims related to or arising from an alleged purchase-money security interest in that certain backhoe loader with the serial no. SKR04119.

27.     "Causes of Action" means any Claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment; (b) Claims under contracts or for breaches of duties imposed by law; (c) the right to object to or otherwise contest Claims or Interests; (d) Avoidance Actions; (e) such Claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (f) any Claim under any state or foreign law, including, without limitation, any fraudulent transfer or similar Claim; and (g) all Causes of Action listed on the Schedule of Retained Causes of Action.

28.     "Chapter 11 Case" means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor on the Petition Date in the case styled *In re Red River Waste Solutions, LP*, Case No. 21-42423-ELM.

29.     "Claim(s)" means any claim, as defined in section 101(5) of the Bankruptcy Code, against the Debtor.

30.     "Claims Objection Deadline" means the deadline for Filing an objection to any Claim, including any Claim for damages arising from the Debtor's rejection of any Executory Contract, which deadline shall be two-hundred-and-seventy (270) days after the Effective Date, subject to any extensions approved by an order of the Court; provided, however, that the Claims Objection Deadline shall not apply to any Claims Filed after the applicable Bar Date.

31.     "Claims and Balloting Agent" means Stretto, the noticing, balloting, and administrative agent employed by the Debtor by the Order entered December 20, 2021 (Docket No. 248).

32.     "Claims Register" means the official register of Claims maintained by the Claims and Balloting Agent.

33.     "Class" means a category of Holders of Claims or Interests pursuant to sections 1122(a) and 1123(a) of the Bankruptcy Code.

34.     "CM/ECF" means the Court's Case Management and Electronic Case Filing system.

35.    "Collateral" means any property of the Debtor or interest in property of the Debtor that serves as security for the repayment of a debt or performance of an obligation owed by the Debtor on an Allowed Secured Claim.

36.    "Comerica Bank" means Comerica Bank & Trust N.A.

37.    "Comerica Bank Collateral" has the meaning set forth in Article V.H herein.

38.    "Comerica Security Agreement" has the meaning set forth in Article V.H herein.

39.    "Comerica Settlement" has the meaning set forth in V.H herein.

40.    "Committee" means the official committee of unsecured creditors appointed in the Chapter 11 Case pursuant to the Third Amended Appointment of Official Unsecured Creditors' Committee [Docket No. 89], as may be reconstituted from time to time.

41.    "Committee Parties" means, solely in their capacities as such, (a) the Committee, (b) the members of the Committee, and (c) the Committee Professionals.

42.    "Committee Professionals" means Womble and Rock Creek, which are the Professionals who have been approved by the Court on the Committee's behalf.

43.    "Committee Professionals' Initial Payment" means $445,000, which is a portion of the Committee Professionals' Unpaid Administrative Claims. The Committee Professionals' Initial Payment will be paid on the later of (a) the Effective Date and (b) approval by the Bankruptcy Court.

44.    "Committee Professionals' Initial Payment Shortfall" means the difference between (a) the Committee Professionals' Unpaid Administrative Claims and (b) the Committee Professionals' Initial Payment.

45.    "Committee Professionals' Unpaid Administrative Claims" means all unpaid Allowed Professional Claims of the Committee Professionals.

46.    "Common Interest" means the Interests other than the Preferred Interests.

47.    "Confirmation" means the entry of the Confirmation Order on the docket of this Chapter 11 Case.

48.    "Confirmation Hearing" means the hearing(s) before the Court under section 1128 of the Bankruptcy Code at which the Debtor seeks entry of the Confirmation Order.

49.    "Confirmation Date" means the date on which the Court enters the Confirmation Order.

50.    "Confirmation Order" means the order of the Court confirming the Plan under section 1129 of the Bankruptcy Code.

51.    "Consummation" means the occurrence of the Effective Date.

52.    "Contingent" means, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which, or the obligation to make payment on which, is dependent on a future event that may or may not occur.

53.    "Corporate Card Program" has the meaning set forth in Article V.H herein.

54.    "Court" or "Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division.

55.    "Capstone" means CRS Capstone Partners LLC.

56.    "Cure" means payment of all amounts, including an amount of $0.00, required to cure any monetary defaults under any Executory Contracts and/or Unexpired Leases (or such lesser amount as may be agreed upon by the parties to the Executory Contract or Unexpired Lease) that is to be assumed by the Debtor pursuant to section 365 or 1123 of the Bankruptcy Code.

57.    "Cure Notice" means any Filed notice of a proposed Cure, as such may be amended, modified, or supplemented from time to time.

58.    "D&O Liability Insurance Policies" means the insurance policies issued at any time to the Debtor for directors', managers', and officers' liability existing prior to the Effective Date (including any "tail policy" or run-off coverage) and all agreements, documents, or instruments relating thereto.

59.    "Debtor's Former Investment Banker" means Brown Gibbons Lang & Company.

60.    "Debtor Professional(s)" means the Debtor's bankruptcy counsel, McDermott, the Debtor's litigation counsel, and the Debtor's financial advisor, Capstone, which are the Professionals who have been approved by the Court on the Debtor's behalf.

61.    "Debtor Professionals' Initial Payment" means payment in an amount (a) not to exceed $2,692,000.00 and (b) equal to the difference between (x) the Professional Claims of the Debtor Professionals on the Effective Date and (y) the Voluntary Deferral by the Debtor Professionals. The Debtor Professionals' Initial Payment will be paid on the later of (x) the Effective Date and (y) approval by the Bankruptcy Court, in either case as Cash is available for Distribution.

62.    "Debtor Professionals' Initial Payment Shortfall" means the difference between (a) $2,692,000.00 and (b) the Debtor Professionals' Initial Payment. The Debtor Professionals' Initial Payment Shortfall will be paid pursuant to the Liquidation Trust Waterfall.

63.    "Debtor Professionals' Unpaid Administrative Claims" means all unpaid Allowed Professional Claims of the Debtor Professionals.

64.    "<u>Debtor Releasing Parties</u>" means (a) the Debtor, and (b) each of the Debtor's agents, employees, directors, officers, attorneys, subsidiaries, successors, and assigns.

65.    "<u>Debtor Release</u>" means the release of the Debtor as provided for in Article IX A.

66.    "<u>Deficiency Claim</u>" means that portion of a Claim secured by a Lien on property that exceeds the value of the property.

67.    "<u>DIP Financing Claims</u>" means the Euclid DIP Financing Claims and the Weldon DIP Financing Claims.

68.    "<u>Disallowed</u>" means a Claim or an Interest (or portion thereof) that has been disallowed, denied, dismissed, or overruled pursuant to the Plan or a Final Order of the Court or of any other court of competent jurisdiction.

69.    "<u>Disclosure Statement</u>" means the disclosure statement [Docket No. 1096] for the Plan, Filed with the Court and incorporated herein by reference (as such may be amended, modified, or supplemented from time-to-time hereafter), including all exhibits and schedules thereto.

70.    "<u>Disputed</u>" means a Claim or an Interest (or portion thereof), (a) that is neither an Allowed Claim nor a Disallowed Claim; (b) that is listed on the Schedules as "disputed," "unliquidated," or "contingent;" or (c) for which a timely objection to such Claim has been Filed, which objection has not been withdrawn or determined pursuant to a Final Order.

71.    "<u>Distribution</u>" means payment(s) or distribution(s) to Holders of Allowed Claims, Allowed Interests, or other eligible Entities under the Plan.

72.    "<u>Distribution Date</u>" means the date or dates determined by the Liquidation Trustee, on or after the Effective Date and with the first such date occurring on or assoon as is reasonably practicable after the Effective Date, upon which the Liquidation Trustee shall make Distributions in accordance with the terms of the Plan.

73.    "<u>Distribution Record Date</u>" means the record date for purposes of making Distributions under the Plan, which date shall be the Effective Date.

74.    "<u>Effective Date</u>" means the date that is the first Business Day after Confirmation on which all Conditions Precedent have been satisfied or waived in accordance with the Plan and the Confirmation Order. The Effective Date shall occur on or before September 30, 2022.

75.    "<u>Enjoined Parties</u>" means (a) all Entities who have held, hold, or may hold Claims against or Equity Interests in the Debtor (whether or not proof of such Claims or Equity Interests has been filed and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan), and (b) any Entity that has appeared and/or filed any motion, objection, or other pleading in this Chapter 11 Case regardless of the capacity in which such Entity appeared and any other party-in-interest.

76.    "<u>Entity</u>" has the meaning set forth in section 101(15) of the Bankruptcy Code.

77.    "Equity" means (a) RRSC; (b) Red River Waste Solutions, GP, LLC; (c) the Weldon James Smith 2012 Trust; (d) the Kylie A. Clayborne 2012 Trust; (e) the Jamie Shiloh Jones 2012 Trust; (f) James A. Smith, an individual, (g) Weldon J. Smith, an individual; and (h) Michel Lavoie, an individual.

78.    "Equity Release Conditions Precedent" has the meaning set forth in Article IX.E of the Plan.

79.    "Estate" means the estate of the Debtor created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

80.    "Euclid DIP Financing Claims" means a Claim held by the Euclid DIP Lender for the Euclid DIP Loan and all other debts, indebtedness, obligations, covenants, and duties of payment and performance arising under or relating to the Euclid DIP Loan Documents or the Euclid DIP Order, including any and all accrued but unpaid interest and any unpaid fees or charges arising under the Euclid DIP Loan Documents or the Euclid DIP Order.

81.    "Euclid DIP Lender" means Euclid Investments Funding I LLC.

82.    "Euclid DIP Loan" means those certain loans outlined in the Euclid DIP Order.

83.    "Euclid DIP Loan Documents" means the DIP Loan Documents as defined in the Euclid DIP Order.

84.    "Euclid DIP Order" means the *Final Order (I) Authorizing the Debtor to (A) Obtain Postpetition Senior Secured Superpriority Financing and (B) Use Cash Collateral, (II) Modifying the Automatic Stay, and (III) Granting Related Relief* [Docket No. 392] including or as the context requires, any amendments, modifications, or supplements thereto.

85.    "Exculpated Parties" means, collectively, and in each case in its capacity as such the Committee Parties for conduct within the scope of their duties.

86.    "Executory Contract" means a contract or lease to which the Debtor is a party that is subject to assumption, assumption and assignment, or rejection under section 365 of the Bankruptcy Code.

87.    "Existing Nashville Contract" has the meaning set forth in Article II.E.

88.    "Federal Judgment Rate" means the interest rate applicable to a judgment entered on the Petition Date that is subject to 28 U.S.C. section 1961, as determined in accordance with that statute.

89.    "File," "Filed," or "Filing" means file, filed, or filing with the Court or its authorized designee in the Chapter 11 Case.

90.    "Final Cash Collateral Order" means the *Final Order (I) Authorizing the Debtor to Use Cash Collateral; And (II) Granting Adequate Protection to the Prepetition Secured Party Pursuant to Sections 105, 361, 362, and 507 of the Bankruptcy Code* [Docket No. 981].

91.    "Final Order" means an order or judgment of the Court or other court of competent jurisdiction that: (a) is conclusive of all matters; (b) has not been reversed, stayed, or revoked; and (c) is effective. An order or judgment shall be deemed a Final Order, notwithstanding the possibility that a motion may be Filed relating to such order or judgment pursuant to section 502(j) of the Bankruptcy Code, Bankruptcy Rule 3008, Bankruptcy Rules 9023 and 9024, Federal Rule of Civil Procedure 59 and 60, or any analogous statute or rule.

92.    "Fort Wayne" means the City of Fort Wayne, Indiana.

93.    "Fort Wayne Claim" means the Claim of Fort Wayne.

94.    "Fort Wayne Settlement" has the meaning set forth in Article II.B.

95.    "Fort Wayne Settlement Agreement" shall have the meaning set forth in Article II.B.

96.    "General Administrative Expense Claim(s)" means an Administrative Expense Claim other than a Professional Claim, the Stretto Claims that are satisfied by the Stretto Administrative Payment, and the DIP Financing Claims.

97.    "General Unsecured Claim(s)" means any Claim other than an Administrative Expense Claim, a Priority Claim, Union Bank Claim, Comerica Bank Secured Claims, Signature Secured Claims, Northpoint Secured Claims, Caterpillar Secured Claims, John Deere Secured Claims, Santander Secured Claims, TCF Secured Claims, VFSUS Secured Claims, VFS Leasing Claims, Fort Wayne Claims, Argonaut Claims, Nashville Secured Claims, BOW Secured Claim, Sumitomo Secured Claims, Preferred Interests in the Debtor, and Interests in the Debtor.

98.    "Global Settlement" shall have the meaning set forth in Article II.C.

99.    "Governmental Unit" has the meaning set forth in section 101(27) of the Bankruptcy Code.

100.    "Holder(s)" or "holder(s)" means an Entity holding a Claim or Interest, as applicable.

101.    "Impaired" means a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

102.    "Insider" shall have the meaning provided in section 101(31) of the Bankruptcy Code.

103.    "Insurance Contracts" means all insurance policies, including the D&O Liability Insurance Policies, that have been issued (or provide coverage) at any time to the Debtor (or any of its predecessors) and all agreements, documents, or instruments relating thereto.

104.    "Insurer" means any company or Entity that issued an Insurance Contract and includes any third-party administrator of or for any Insurance Contract, along with any predecessors, successors, and/or Affiliates.

17

105.   "Interest(s)" means (a) any equity security (as defined in section 101(16) of the Bankruptcy Code) in any Debtor that existed immediately prior to the Petition Date, including all units, shares, common stock, preferred stock, membership interests, and other instruments evidencing any fixed or contingent ownership in any Debtor or any rights to purchase or demand the issuance of any of the foregoing (including options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, or convertible, exercisable, or exchangeable Securities) or (b) any other agreement, arrangement, or commitment of any character relating to, or whose value is related to, any of the foregoing.

106.   "John Deere" means John Deere Construction & Forestry Company.

107.   "John Deere Secured Claim" means the Secured Claims of John Deere or its assigns, including such Claims related to or arising from an alleged purchase-money security interest in the John Deere Vehicle.

108.   "John Deere Vehicle" means that certain vehicle with the VIN No. 1T0755KXCGE304712.

109.   "Lien" has the meaning set forth in section 101(37) of the Bankruptcy Code.

110.   "Liquidation Trust" means the trust established pursuant to the Plan and the Global Settlement.

111.   "Liquidation Trustee" means the entity identified in the Plan Supplement, which such entity will be selected by the Committee, the Equity, and Union Bank.

112.   "Liquidation Trust Agreement" means the trust agreement to be entered into on or before the Effective Date consistent with the terms of the Plan and Global Settlement, to be included in the Plan Supplement, which shall be reasonably acceptable to the Debtor, the Committee, and Union Bank.

113.   "Liquidation Trust Assets" means all Assets of the Estate, including, without limitation, the Liquidation Trust Seed Funding and Retained Causes of Action. For the avoidance of doubt, the Liquidation Trust Assets includes all Causes of Action listed on Exhibit D to the Disclosure Statement, including Causes of Action against (a) the Debtor's Mezzanine Lenders, (b) the Debtor's Former Investment Banker, (c) the Municipalities, (d) BDO USA LLC, (e) Avoidance Actions, and (f) Claims and Causes of Action against all other Persons and Entities other than the Released Parties.

114.   "Liquidation Trust Beneficiaries" means, collectively, (a) Liquidation Trust General Unsecured Beneficiaries; (b) Liquidation Trust Union Bank Beneficiaries; (c) Liquidation Trust Debtor Professionals Beneficiaries; (d) Liquidation Trust Committee Professionals Beneficiaries; and (e) Liquidation Trust Equity Beneficiaries.

115.   "Liquidation Trust Committee Professionals Beneficiaries" means Committee Professionals who are owed the Committee Professionals' Unpaid Administrative Claims as addressed in the Global Settlement.

116.    "<u>Liquidation Trust Debtor Professionals Beneficiaries</u>" means Debtor Professionals who are owed the Debtor Professionals' Unpaid Administrative Claims as addressed in the Global Settlement.

117.    "<u>Liquidation Trust Equity Beneficiaries</u>" means Equity pursuant to the terms of the Global Settlement.

118.    "<u>Liquidation Trust Expenses</u>" means the reasonable expenses (including any taxes imposed on or payable by the Liquidation Trust or in respect of the Liquidation Trust Assets and Professional fees) incurred by the Liquidation Trust and any Professional Persons retained by the Liquidation Trust and any additional amount determined necessary by the Liquidation Trustee, in consultation with Union Bank, to adequately reserve for the administrative expenses of the Liquidation Trust, which shall be satisfied from the Liquidation Trust Assets.  Liquidation Trust Expenses, including administrative-related costs and Professional Persons fees, shall first be paid out of the proceeds from the Sale of the Debtor's Assets allocated to General Unsecured Claims, if any, before payment out of proceeds pursuant to the Liquidation Trust Waterfall.

119.    "<u>Liquidation Trust General Unsecured Beneficiaries</u>" means Holders of Allowed General Unsecured Claims.

120.    "<u>Liquidation Trust Indemnified Party</u>" has the meaning set forth in Article V.B.9.

121.    "<u>Liquidation Trust Interests</u>" means a non-certificated beneficial interest in the Liquidation Trust that may (a) be granted to each Liquidation Trust Beneficiary and (b) entitle such Holder Distributions from the Liquidation Trust Assets pursuant to the terms of the Global Settlement.

122.    "<u>Liquidation Trust Seed Funding</u>" means $200,000 funded by the Debtor on the Effective Date pursuant to the Global Settlement.

123.    "<u>Liquidation Trust Union Bank Beneficiaries</u>" means Union Bank pursuant to the terms of the Global Settlement.

124.    "<u>Liquidation Trust Waterfall</u>" means the order of payments under Global Settlement as set forth herein. Following the payment of the Union Bank Effective Date Settlement Payment, the Debtor Professionals' Initial Payment, Committee Professionals' Initial Payment, and the Allowed General Administrative Expense Claims, proceeds of the Liquidation Trust Assets, as they become available for Distribution, shall be distributed to the Liquidation Trust Beneficiaries as follows:

A.      First, provided the Debtor receives the Nashville Additional Payment, $100,000 to pay $100,000.00 of the Committee Professionals' Initial Payment Shortfall.

B.      Second, provided the Debtor receives the Nashville Additional Payment, $250,000 to pay the Debtor Professionals.

C. Third, $500,000.00 will be distributed by the Liquidation Trustee to the Liquidation Trust General Unsecured Beneficiaries;[2]

D. Fourth, the next $5,000,000.00 will be paid to the following parties based on the following pro rata amounts:

    i. Liquidation Trust Union Bank Beneficiaries will receive sixty-seven percent (67%) (representing up to $3,350,000.00);

    ii. Liquidation Trust Debtor Professionals Beneficiaries will receive thirteen percent (13%) (representing up to $650,000.00); and

    iii. Liquidation Trust General Unsecured Beneficiaries will receive twenty percent (20%) (representing up to $1,000,000.00).

E. Fifth, if the Debtor Professionals' Initial Payment is less than $2,692,000.00, then the resulting shortfall will be paid with next available funds until the Debtor Professionals have received the full $2,692,000.00; and

F. Sixth, all proceeds recovered by the Liquidation Trust over $5,850,000.00 (and the amount in subsection E above) will be paid according to the following amounts:

    i. Liquidation Trust Union Bank Beneficiaries will receive 33.3% of such proceeds;

    ii. Liquidation Trust Equity Beneficiaries will receive 33.3% of such proceeds; and

    iii. Liquidation Trust General Unsecured Beneficiaries will receive 33.4% of such proceeds.

125. "McDermott" means McDermott Will & Emery LLP.

126. "Mediation Settlement" shall have the meaning set forth in Article II.C.

127. "Mezzanine Lenders" means Ironwood Mezzanine Funds III-A, LP; Ironwood Mezzanine Funds III, LP; Patriot Capital III SBIC, LP; Patriot Capital III, LP.

128. "Municipalities" means those municipalities served by the Debtor, including, without limitation, (a) Fort Wayne, Indiana; (b) Nashville, Tennessee; (c) Huntsville, Alabama; (d) Hardin County, Kentucky; (e) Union City, Tennessee; and (f) Del Rio, Texas.

---

[2] Equity shall have an Allowed General Unsecured Claim in the amount of $266,000.00.

129.    "Nashville" means The Metropolitan Government of Nashville and Davidson County, Tennessee.

130.    "Nashville Additional Payment" has the meaning set forth in Article II.E.

131.    "Nashville Initial Payment" means $1,018,675.91.

132.    "Nashville Secured Claim" means the Secured Claims of Nashville or its assigns, including such Claims related to or arising from Nashville's rights, if any, to assert setoff, offset, or recoupment rights against amounts owed by Nashville to the Debtor.

133.    "Nashville Settlement Agreement" has the meaning set forth in Article II.E. The Nashville Settlement Agreement will be filed in the Plan Supplement.

134.    "Nashville Settlement" has the meaning set forth in Article II.E.

135.    "Northpoint" means Northpoint Commercial Finance, LLC.

136.    "Northpoint Secured Claims" means the Secured Claims of Northpoint or its assigns, including such Claims related to or arising from an alleged purchase-money security interest asserted in the Northpoint Vehicles.

137.    "Northpoint Vehicles" means those certain vehicles with the VIN Nos. 1M2AU04C1FM009719 and 1M2AU04C8FM009720.

138.    "Opt-Out Election" means the election of a Holder of a Claim or Interest properly and timely made on a form approved by the Bankruptcy Court (including as set forth in a Ballot or an Opt-Out Form, as applicable), to opt-out of the Third-Party Release.

139.    "Opt-Out Form" means a form, substantially in the form approved by the Court, by which a Holder of a Claim or Interest who is not entitled to vote on a Ballot to accept or reject the Plan may indicate its intent to opt-out of the Third-Party Release contained in Article IX of the Plan by submitting such form in accordance with the procedures approved by the Bankruptcy Court.

140.    "Other Priority Claim(s)" means any Claim other than an Administrative Expense Claim, Val Verde Claim, or Priority Tax Claim that is entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

141.    "Partnership Agreement" means that certain Agreement of Limited Partnership of Red River Waste Solutions, LP, a Texas Limited Partnership, as amended, restated, or modified.

142.    "Payment Plan" has the meaning ascribed to it in the *Debtor's Motion for Entry of an Order (I) Authorizing Assumption of the XL Policies, and (II) Granting Related Relief* entered at Docket No. 299.

143.    "Person(s)" has the meaning set forth in section 101(41) of the Bankruptcy Code.

144.    "Petition Date" means October 14, 2021, the date on which the Debtor commenced the Chapter 11 Case.

145.    "Plan" has the meaning ascribed to it in the recitals.

146.    "Plan Objection Deadline" means the date set by the Bankruptcy Court as the deadline for anyPerson(s) to File an objection to Confirmation of the Plan.

147.    "Plan Supplement" means those documents and forms of documents, agreements, schedules, and exhibits to the Plan, which shall be Filed by the Debtor no later than seven (7) days before the Plan Objection Deadline, or such later date as may be approved by the Bankruptcy Court, including, as applicable: (a) the Nashville Settlement Agreement; (b) the Liquidation Trust Agreement; (c) Schedule of Retained Causes of Action; and (d) any additional documents Filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement, each in a form reasonably acceptable to the Committee and Union Bank.

148.    "Platform" mean Platform Waste Solutions, LLC or its designee.

149.    "Preferred Interest" means the Interests issued to Ironwood Mezzanine Fund ID, LP and its Affiliate Partners (as defined in the Partnership Agreement) and Patriot Capital ID, LP and its Affiliate Partners (as defined in the Partnership Agreement).

150.    "Priority Claim(s)" means a Priority Tax Claim or Other Priority Claim.

151.    "Priority Tax Claim(s)" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

152.    "Pro Rata" means, unless indicated otherwise, (a) the proportion that the amount of an Allowed Claim or Allowed Interest bears (i) to the aggregate amount of the Allowed Claims or Allowed Interests in that Class or (ii) to the aggregate amount of the Allowed Claims or Allowed Interests otherwise specified, as the context requires, or (b) the proportion of the Allowed Claims or Allowed Interests in a particular Class and other Classes, respectively, entitled to share in the same recovery as such Claim or Interest under the Plan.

153.    "Professional(s)" means an Entity either (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 328, 363, or 1103 of the Bankruptcy Code to be compensated for services rendered prior to or on the Effective Date in accordance with sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code, as applicable; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

154.    "Professional Claim(s)" means a Claim by a Professional seeking an award by the Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code. Professional Claims includes the Claims of the Debtor Professionals and Committee Professionals.

155.    "Professional Person" means an Entity employed by the Estate or the Liquidation Trust to provide professional services to the Liquidation Trust following the Effective Date. Such professional services shall include, but not be limited to, those of an attorney, accountant, consultant, and agent.

156.    "Proof of Claim" means a Proof of Claim Filed against the Debtor in the Chapter 11 Case on or before the applicable Bar Date.

157.    "Protected Parties" means, as applicable, the Debtor, the Liquidation Trustee, the Exculpated Parties, Union Bank, the Released Parties, and the Debtor Professionals; provided, however, the Debtor's officers and directors shall not be Protected Parties to the extent Claims or Causes of Action are asserted against the D&O Liability Insurance Policies.

158.    "Released Parties" means, collectively, and in each case in its capacity as such: (a) the Professionals, including Capstone, McDermott, and Committee Professionals; (b) Stretto, (c) Union Bank, and (d) with respect to each of the foregoing Entities in clauses (a) through (c), such Entity's current and former Affiliates and subsidiaries, and such Entities and their current and former Affiliates' and subsidiaries' current and former directors, managers, officers, principals, members, employees, agents, advisors, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, Professionals and other representatives, equity (regardless of whether such interests are held directly or indirectly), predecessors, and successors and assigns, each in its capacity as such; provided, however, Released Parties shall not include (a) current and former officers and directors of the Debtor, and (b) current and former holders of Interests in the Debtor, (c) the Debtor's Former Investment Banker, (d) BDO USA, LLC, (e) Ironwood Mezzanine Funds III-A, LP, (f) Ironwood Mezzanine Funds III, LP, (g) Patriot Capital III SBIC, LP, (h) Patriot Capital III, LP, (i) Brown Gibbons Lang & Company, or (j) any agent, employee, owner, advisor, or other person or entity affiliated with any foregoing persons or entities, notwithstanding anything in the Plan or the Confirmation Order to the contrary.

159.    "Releasing Parties" means, collectively, and in each case in its capacity as such: (a) each Holder of a Claim and/or Interest that (i) votes to accept the Plan, (ii) is deemed to accept the Plan, or (iii) does not return the Opt-Out Election on the applicable Ballot or form pursuant to the instructions set forth therein; (b) the Committee Parties, (c) Equity, and (d) with respect to each of the foregoing Entities in clauses (a) through (c), such Entity's current and former Affiliates and subsidiaries, and such Entities and their current and former Affiliates' and subsidiaries' current and former directors, managers, officers, principals, members, employees, agents, advisors, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, Professionals and other representatives, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, and successors and assigns, each in its capacity as such.

160.    "Replacement Liens" means those certain replacement liens granted to Union Bank in the Cash Collateral Order.

161.    "Retained Causes of Action" means all Claims and Causes of Action not expressly waived or released pursuant to the Plan or Global Settlement, including, without limitation, the Claims and Causes of Action listed in the Global Settlement and the Schedule of Retained Causes

of Action, which will be in the Plan Supplement. No person or entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtor or the Liquidation Trust will not pursue any and all available Causes of Action against it. To the contrary, both the Debtor and the Liquidation Trust expressly reserve all rights to prosecute any and all Causes of Action against any Person or Entity, except as otherwise expressly provided in the Plan. Unless any Causes of Action against a Person or an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order of this Court, the Debtor and the Liquidation Trust, as applicable, expressly reserve all Causes of Action, for later adjudication; therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or Consummation. The Debtor or the Liquidation Trustee reserves and retains such Causes of Action, notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Case or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Person or Entity shall vest in the Liquidation Trust.

162.    "Rock Creek" means Rock Creek Advisors, LLC.

163.    "RRSC" means Red River Service Corporation.

164.    "Sale" means the sale of the Debtor's Assets to Platform pursuant to the Bid Procedures Order.

165.    "Sale Order" means the *Order (I) Authorizing (A) the Sale of all or Substantially all of the Debtor's Assets Free and Clear of all Claims, Liens, Liabilities, Rights, Interests, and Encumbrances, (B) the Debtor's Entry into and Performance of its Obligations under the Asset Purchase Agreement and Ancillary Agreements, and (C) the Debtor's Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (II) Granting Related Relief* entered at Docket No. 953.

166.    "Sale Proceeds" means the Cash and non-Cash consideration provided by Platform in connection with the Sale, net of expenses (including transaction costs and other costs and expenses arising from the Sale, if any) and allocated in accordance with paragraph 25 of the Bid Procedures Order, the Global Settlement, or as otherwise approved by the Court.

167.    "Sale Closing Date" means the date of the closing of the Sale.

168.    "Santander" means Santander Consumer USA, Inc. d/b/a Chrysler Capital.

169.    "Santander Secured Claim" means the Secured Claims of Santander or its assigns, including such Claims related to or arising from an alleged purchase-money security interest asserted in the Santander Vehicles.

170.    "Santander Vehicles" means those certain vehicles with the VIN No. 3C6UR5FL1KG516671 and VIN No 3C6UR5FL5KG5516673.

24

171.    "Schedule(s)" means the schedule of assets and liabilities and statements of financial affairs Filed by the Debtor with the Bankruptcy Court pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules and statements have been or may be amended, modified, or supplemented from time to time by the Debtor at any point prior to the Effective Date.

172.    "Schedule of Retained Causes of Action" means the schedule of certain Causes of Action of the Debtor that are not released or waived pursuant to the Plan, as such schedule may be amended, modified, or supplemented from time to time, in consultation with Union Bank.

173.    "Secured Claim(s)" means a Claim: (a) secured by a valid, perfected, and enforceable Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code; (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code; and (c) for any diminution in value of the Collateral from the Petition Date to the Effective Date.

174.    "Secured Tax Claim(s)" means any Secured Claim that, absent its Secured Claim status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

175.    "Securities" means any security, as defined in section 2(a)(1) of the Securities Act.

176.    "Securities Act" means the Securities Act of 1933, as amended, 15 U.S.C. sections 77a-77aa, or any similar federal, state, or local law.

177.    "Signature" means Signature Financial LLC.

178.    "Signature Secured Claims" means the Secured Claims of Signature or its assigns, including such Claims related to or arising from an alleged purchase-money security interest asserted in the Signature Vehicles.

179.    "Signature Vehicles" means those certain vehicles with the VIN Nos. 3ALHCYFEXLDLL2510 and 3ALHCYFE8LDLZ4035.

180.    "Stretto" means Bankruptcy Management Solutions, Inc., and its subsidiaries, which are known by the trade name of Stretto.

181.    "Stretto Administrative Payment" means the payment of $300,000 to Stretto on the later of (a) the Effective Date and (b) approval by the Bankruptcy Court, in either case, as Cash is available for Distribution, in full and final satisfaction of all Stretto's outstanding Administrative Expense Claims for services rendered to the Debtor prior to the Effective Date.

182.    "Sumitomo" means Sumitomo Mitsui Finance and Leasing Co., Ltd.

183.    "Sumitomo Secured Claims" means the Secured Claims of Sumitomo or its assigns, including such Claims related to or arising from an alleged purchase-money security interest asserted in that the Sumitomo Vehicles.

184.   "<u>Sumitomo Vehicles</u>" means a 2020 Freightliner M2106, VIN No. 1FVHCYFE6JHJY1365 and a 2020 Ram 550, VIN 3C7WRNCLXLG206349.

185.   "<u>TBK Bank</u>" means TBK Bank, SSB.

186.   "<u>TBK Bank Carts</u>" means the 20,584 Otto Residential Trash Carts that TBK Bank asserts are its Collateral.

187.   "<u>TBK Bank Secured Claims</u>" means the Secured Claims of TBK Bank or its assigns related to or arising from an alleged purchase money security interest related to the TBK Bank Carts and TBK Bank Vehicles.

188.   "<u>TBK Vehicles</u>" means those two (2) Mack trucks with the VIN Nos. 3ALHCYFE2LDLZ4029 and 3ALHCYFE0LDLZ4031 and two (2) Freightliner trucks with the VIN Nos. 1M2LR2GC4MM004223 and 1M2LR2GC6MM004224.

189.   "<u>TCF</u>" means The Huntington National Bank f/k/a TCF National Bank.

190.   "<u>TCF Secured Claim</u>" means the Secured Claims of TCF or its assigns, including such Claims related to or arising from an alleged purchase-money security interest in the TCF Vehicle.

191.   "<u>TCF Vehicle</u>" means that certain vehicle with the VIN No. 3C7WRNC6LG206347.

192.   "<u>Third Party Release</u>" means the consensual releases of the Released Parties by the Releasing Parties provided for in Article IX.B.

193.   "<u>Treasury Rate</u>" means the current ten-year interest rate that investors earn on debt Securities issued by the U.S. Treasury.

194.   "<u>Unexpired Lease</u>" means a lease to which the Debtor is a party that is subject to assumption, assumption and assignment, or rejection under section 365 of the Bankruptcy Code.

195.   "<u>Unimpaired</u>" means a Class of Claims or Interests that is not Impaired.

196.   "<u>Union Bank</u>" means MUFG Union Bank, N.A., as administrative and collateral agent, among others.

197.   "<u>Union Bank Claim</u>" means the Claim asserted by Union Bank, which shall be deemed Allowed in the amount of $31,105,474.10 arising from various agreements, including: (a) that certain Term Note dated as of April 1, 2020, in the original principal amount of $29,600,000.00, executed by the Debtor in favor of Union Bank, and all modifications and amendments thereto; (b) that certain Revolving Note dated as of April 1, 2020 in the original principal amount of $5,000,000.00, executed by Debtor in favor of Union Bank, and all modifications and amendments thereto; (c) that certain Security Agreement dated as of April 1, 2020, executed by Debtor and Red River Waste Solutions GP, LLC in favor of Union Bank, and all modifications and amendments thereto; (d) Uniform Commercial Code filings relating to the

26

Union Bank security agreement and the Union Bank pre-petition collateral; (e) that certain "Pledge Agreement" dated as of April 1, 2020, executed by RRSC in favor of Union Bank, and all modifications and amendments thereto; (f) that certain "Trademark Security Agreement" dated as of April 1, 2020, executed by Debtor in favor of Union Bank, and all modifications and amendments thereto; and (g) that certain Credit Agreement dated as of April 1, 2020, executed by Debtor in favor of Union Bank, and all modifications and amendments thereto. Under the terms of the Global Settlement, the Union Bank Claim shall be deemed Allowed in the amount of $31,105,474.10 and will be paid pursuant to the terms of the Global Settlement and the Liquidation Trust Waterfall set forth on Exhibit A of the Plan.

198.    "Union Bank Closing Date Payment" means $3,850,000.00, which was paid to Union Bank on the Sale Closing Date.

199.    "Union Bank Distribution" means the Distribution to Union Bank under the Global Settlement in the total amount of $5,000,000, consisting of: (a) the Union Bank Closing Date Payment; and (b) the Union Bank Effective Date Settlement Payment, excluding or prior to any amounts distributed by the Liquidation Trust pursuant to the Liquidation Trust Waterfall.

200.    "Union Bank Effective Date Settlement Payment" means the $1,150,000 to be paid to Union Bank pursuant to the Global Settlement on the earlier of (i) September 30, 2022, and (ii) the Effective Date.

201.    "Union Bank Guaranty" means any and all guaranties of any kind entered into by (a) RRSC, (b) Red River Waste Solutions GP, LLC, and (c) any other affiliate of the Debtor with Union Bank related to the Union Bank Claim.

202.    "Union Bank Releases" has the meaning set forth in Article X.D of the Plan.

203.    "U.S. Trustee" means the Office of the United States Trustee for Region 6.

204.    "Val Verde County" means the collecting agent for all ad valorem tax entities located within the jurisdictional limits of Val Verde County.

205.    "Val Verde County Claim" means the ad valorem property taxes assessed against the Debtor's property.

206.    "VFS Leasing" Means VFS Leasing, Co.

207.    "VFS Leasing Claims" means all Claims asserted, could have been, or could be asserted by VFS Leasing or its assigns.

208.    "VFSUS" means VFS US, LLC and its agents and representatives.

209.    "VFSUS Secured Claim" means Secured Claims of VFSUS or its assigns, including such Claims related to or arising from an alleged purchase-money security interest in the VFSUS Vehicles.

210. "VFSUS Vehicles" means those certain vehicles with the VIN Nos. 1M2AU04C9GM010280,         1M2AU04C6GM061168,       1M2AU04C2GM010279,         1M2TE2GCXLM003488,         1M2TE2GC9LM003496,       1M2LR2GCOLM002712, and     1M2LR2GC3M002719.

211. "Voluntary Deferral" means the difference between (a) the unpaid Professional Claims incurred by the Debtor Professionals or Committee Professionals, as applicable, on the Effective Date and (b) the Professional Claims that remain unpaid after the Debtor Professionals' Initial Payment or the Committee Professionals' Initial Payment, as applicable.

212. "XL Policies" means (i) a Commercial Automobile Policy, Policy No. AEC001618506, having a policy period August 1, 2021, through August 1, 2022; (ii) a Commercial Automobile Policy, Policy No. AEC001618606, having a policy period August 1, 2021 through August 1, 2022; (iii) a Commercial Automobile Policy, Policy No. AEC001618706, having a policy period August 1, 2021 through August 1, 2022; (iv) a General Liability Policy, Policy No. GEC300087206, having a policy period August 1, 2021 through August 1, 2022; and (v) a Pollution Policy, Policy No. PEC004619906, having a policy period August 1, 2021 through August 1, 2022, and the previous policies that they replaced.

213. "Weldon DIP Order" means the *Final Order (I) Authorizing Debtor to Obtain Post-Petition Financing Pursuant to Section 364 of the Bankruptcy Code; and (II) Granting Weldon Smith Super-Priority Claims* [Docket No. 113], including or as the context requires, any amendments, modifications, or supplements thereto.

214. "Weldon DIP Financing Claims" means a Claim held by the Weldon DIP Lender for the Weldon DIP Loan and all other debts, indebtedness, obligations, covenants, and duties of payment and performance arising under or relating to the Weldon DIP Financing Documents or the Weldon DIP Order, including any and all accrued but unpaid interest and any unpaid fees or charges arising under the Weldon DIP Financing Documents or the Weldon DIP Order.

215. Weldon DIP Financing Documents" means the DIP Financing Documents as defined in the Weldon DIP Order.

216. "Weldon DIP Lender" means Weldon Smith.

217. "Weldon DIP Loan" means those certain loans outlined in the Weldon DIP Order.

218. "Womble" means Womble Bond Dickinson (US) LLP.

## B.    Rules of Interpretation

For purposes of the Plan and unless otherwise provided herein: (1) each term, whether stated in the singular or the plural, will include both the singular and the plural; (2) any reference to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (3) any reference herein to an existing document, schedule, exhibit, or annex, shall mean that document, schedule, exhibit, or annex, as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a Holder of a

Claim or Interest includes that Entity's successors and assigns; (5) all references in the Plan to Section(s) are references to Articles of the Plan, as the same may be amended, waived, or modified from time to time in accordance with the terms hereof; (6) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular Section, paragraph, or clause contained in the Plan; (7) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation and shall be deemed to be followed by the words "without limitation"; (8) subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (9) any term used in capitalized form hereinthat is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shallhave the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (10) all references to docket numbers of documents Filed in this Chapter 11 Case are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (11) any immaterial effectuating provisions may be interpreted by the Debtor or Liquidation Trustee, as applicable, in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; (12) captions and headings to sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; and (13) any reference to an Entity's "subsidiaries" means its direct and indirect subsidiaries.

### C.      Computation of Time

In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply. In the event that any payment, Distribution, act, or deadline under the Plan is required to be made or performed or occurs on a day that is not a Business Day, then such payment, Distribution, act, or deadline shall be deemed to occur on the next succeeding Business Day, but if so made, performed or completed by such next succeeding Business Day, shall be deemed to have been completed or to have occurred as of the required date. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

### D.      Reference to Monetary Figures

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

### E.      Controlling Document

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order referenced in the Plan (other than the Confirmation Order) conflicts with or is in any way inconsistent with any provision of the Plan, the Plan shall govern and control. In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

## ARTICLE II
## COMPROMISES AND SETTLEMENTS OF DISPUTES

**A.    Settlement Authority.**

Pursuant to Bankruptcy Rule 9019(b), the Debtor may compromise and settle various Claims against the Debtor and Claims that the Debtor may have against any Entity. The Confirmation Order shall authorize, and constitute Bankruptcy Court approval of, the compromises and settlements set forth in the Plan pursuant to Bankruptcy Rule 9019(b) and section 1123(b)(3) of the Bankruptcy Code. The Debtor is continuing to negotiate with various parties and may include settlements in the Plan Supplement, which will be incorporated as if set forth herein; provided, however, that any such settlements must be consistent with the terms of the Global Settlement.

**B.    Fort Wayne and Argonaut Settlement.**

Fort Wayne asserts Claims against the Debtor related to, among other things, (i) a contract for recycling collection on June 1, 2017, with a service initiation date of January 1, 2018 (the "Recycling Contract"), and (ii) a contract for solid waste collection on June 1, 2017, with a service initiation date of January 1, 2018 (the "Solid Waste Contract," and, collectively, with the Recycling Contract, the "Fort Wayne Contracts"). Fort Wayne asserts that the Debtor has defaulted under the Fort Wayne Contracts.

Argonaut executed Performance Bond No. SUR0053425 in which the Debtor was named as principal, Argonaut was named as surety, and Fort Wayne was named as obligee with an initial bond period of December 12, 2018, through December 31, 2019, in the penal sum of $2,400,000 as it relates to the Recycling Contract (the "Recycling Performance Bond"). The Recycling Performance Bond was continued through December 31, 2021. Argonaut also executed Performance Bond No. SUR53424 in which the Debtor was named as principal, Argonaut was named as surety, and Fort Wayne was named as obligee with an initial bond period of December 12, 2018, through December 31, 2019, in the penal sum of $4,900,000 as it relates to the Solid Waste Contract (the "Solid Waste Performance Bond," and, with the Recycling Performance Bond, the "Performance Bonds"). At the request of the Debtor, Argonaut extended the Solid Waste Performance Bond through December 31, 2021. On May 13, 2021, Argonaut initiated litigation in the United States District Court for the Western District of Texas (Austin Division) (the "Argonaut Lawsuit"), alleging substantial risk of loss arising from and related to the Performance Bonds and Claims against the Debtor. On December 14, 2021, Argonaut Filed the *Argonaut Insurance Company's Emergency Motion to Compel Immediate Assumption or Rejection of Fort Wayne Bonded Contract* [Docket No. 228] in the Chapter 11 Case. Argonaut asserts Claims against the Estate related to, among other things, the Performance Bonds.

The Debtor disputed the Claims asserted by Fort Wayne and by Argonaut, and the Debtor believed that it had Claims against Fort Wayne and Argonaut, including, without limitation, Causes of Action arising under sections 510, 544, and 548 of the Bankruptcy Code, and the Texas Uniform Fraudulent Transfer Act. The Debtor also denied the allegations in the Argonaut Lawsuit.

The Debtor, Fort Wayne, and Argonaut each disputed, challenged, and contested all

30

allegations made against each by the other, and neither admitted to any violation of law, wrongdoing, or liability. The Debtor, Fort Wayne, and Argonaut have been involved in litigation and potential litigation related to their respective positions on their respective Claims. The Debtor is confident in the Estate's position against Fort Wayne and Argonaut, and Fort Wayne and Argonaut were confident in their respective positions. However, after good-faith, arms-length negotiations, to avoid the expense, inconvenience, delay, and uncertainty of prosecuting, disputing, or pursuing the Claims by and against Fort Wayne, Argonaut, and the Debtor, the parties agreed to fully and completely resolve their respective disputes and Claims by entering into a mutual release and settlement agreement (the "Fort Wayne Settlement") resolving this dispute. The Fort Wayne Settlement was memorialized in the "Fort Wayne Settlement Agreement," which was Filed with the Bankruptcy Court and approved by an order entered at Docket No. 617, and the terms of the Fort Wayne Settlement Agreement are incorporated herein as if set forth in their entirety. A brief summary of the Fort Wayne Settlement Agreement is set forth as follows:

1.    On the Effective Date (defined in the Fort Wayne Settlement Agreement), the Fort Wayne Contracts were deemed rejected effective as of December 30, 2021.

2.    The Debtor collected solid waste and recycling for Fort Wayne pursuant to the terms of a post-Petition Date Transition Agreements, as defined in the Fort Wayne Settlement Agreement, which includes the same provisions as the Fort Wayne Contracts, subject to certain modifications, as set forth in the Fort Wayne Settlement Agreement.

3.    Argonaut paid $1.6 million to Fort Wayne, and Fort Wayne paid $1.9 million to the Debtor as set forth in the Fort Wayne Settlement Agreement.

4.    The Debtor, Fort Wayne, and Argonaut granted each other mutual releases and waivers of liability, as set forth in the Fort Wayne Settlement Agreement.

5.    Argonaut dismissed the Argonaut Lawsuit with prejudice.

The Debtor believed that the terms of the Fort Wayne Settlement were fair and equitable and in the best interests of the Estate. The Bankruptcy Court approved the Fort Wayne Settlement Agreement pursuant to Bankruptcy Rule 9019(b). The Claim of Fort Wayne is a Class 14 Claim, and the Claim of Argonaut is a Class 15 Claim. Both Claims were released as part of the Fort Wayne Settlement, and Fort Wayne and Argonaut agreed to vote in favor of the Plan.

## C.    Global Settlement.

Union Bank filed a Proof of Claim against the Estate in the amount of $31,105,474.10. Union Bank asserts first-priority security interests and liens in substantially all the Estate's Assets, including accounts, Cash, inventory, and general intangibles, to secure repayment of its Claim against the Estate.

During the Chapter 11 Case, Union Bank and the Estate have been involved in existing and potential litigation related to their various disputes. After good-faith, arms-length negotiations, to

avoid the expense, inconvenience, delay, and uncertainty of further prosecuting, disputing, or pursuing the claims by and against Union Bank the Estate, the Debtor Professionals, Union Bank, the Committee, and Equity agreed to fully and completely resolve their respective disputes and claims. A settlement agreement was executed by the Debtor, Union Bank, Equity, and the Committee to memorialize the settlement between these parties (the "Mediation Settlement").

After entering into the Mediation Settlement, the Debtor determined that one of the conditions precedent to the effectiveness and enforceability of the Mediation Settlement against the Debtor was not satisfied. Union Bank disagrees with the Debtor's determination.

However, in an attempt to avoid protracted (and continued) litigation and the concomitant costs and erosion of net recovery to Holders of Claims, the Debtor (after consultation with and agreement of the Committee and Equity) proposes a resolution between the Debtor, the Committee, Equity, and Union Bank on terms that are substantially similar to the terms in the Mediation Settlement, which accounts for the net result of the Sale.

If approved, the Global Settlement resolves the outstanding disputes between the Debtor, Union Bank, the Committee, and Equity. The terms of the Global Settlement are as follows:

1. Equity will pay $3,400,000.00 to the Estate, (a) $1,700,000.00 before the Sale Closing Date and (b) $1,700,000.00 on the earlier of (i) September 30, 2022, and (ii) the Effective Date.

2. $550,000.00 of the $1,700,000.00 paid by Equity under (1)(b) is conditioned on the Debtor's receipt of the Nashville Additional Payment.

3. Union Bank received $3,850,000.00 on the Sale Closing Date.

4. Union Bank will receive another $1,150,000.00 on the earlier of (i) September 30, 2022, and (ii) the Effective Date.

5. All Liquidation Trust Assets will be distributed pursuant to the Liquidation Trust Waterfall.

6. The Estate will pay the Debtor Professionals' Initial Payment on the later of (x) the Effective Date and (y) approval by the Bankruptcy Court, in either case as Cash is available for Distribution.

7. Neither Union Bank, the Committee, nor Equity will oppose the approval or award of the Debtor Professionals' Initial Payment or the Debtor Professionals' Unpaid Administrative Claims incurred from the Petition Date through July 3, 2022; provided, however, Union Bank, the Committee, and Equity reserve the right to oppose and object to approval/award of Professional fees and expenses of the Debtor Professionals incurred after July 3, 2022.

8.  The Debtor Professionals' Initial Payment Shortfall and the Debtor Professionals' Unpaid Administrative Claims will be paid pursuant to the Liquidation Trust Waterfall.

9.  The Estate will pay the Committee Professionals' Initial Payment on the later of (a) the Effective Date and (b) approval by the Bankruptcy Court.

10.  Neither Union Bank, the Debtor, nor Equity will oppose the approval or award of the Committee Professionals' Administrative Expense Claims incurred from the Petition Date through July 3, 2022; provided, however, Union Bank, the Debtor, and Equity reserve the right to oppose and object to approval/award of Professional fees and expenses of the Committee Professionals incurred after July 3, 2022.

11.  The Committee Professionals' Unpaid Administrative Claims will be paid pursuant to the Liquidation Trust Waterfall.

12.  Upon the Effective Date, the Debtor Releasing Parties, the Committee Parties, and Equity shall release any and all Claims and Causes of Action against Union Bank, including, without limitation, Claims and Causes of Action for alleged breach of contract, lender liability, equitable subordination, setoffs, and surcharges.

13.  There shall be a standstill and tolling of all deadlines and statutes of limitations and statutes of repose in and related to all litigation between Equity and Union Bank; provided, however, such stand still and tolling shall expire if Union Bank does not receive the Union Bank Distribution on or before September 30, 2022. Upon Union Bank's receipt of the $5,000,000.00 pursuant to this Global Settlement, all Union Bank's Claims and Causes of Action against Equity relating to (a) the Debtor, (b) the Chapter 11 Case, and (c) the Union Bank Guaranty shall be released; provided, however, nothing herein shall be interpreted to constitute a waiver or release by any party of any Retained Cause of Action.

14.  Union Bank shall have an Allowed Claim against the Estate in the amount of $31,105,474.10.

15.  Repayment of the Weldon DIP Financing Claims and any Cure costs owed to Equity, including, without limitation, to RRSC, will be paid out of funds, if any, distributed to Equity pursuant to the Liquidation Trust Waterfall in full and final satisfaction of all such Claims of Equity against the Estate except for Equity's Allowed General Unsecured Claim for $266,000.00 pursuant to the Global Settlement.

16.  The Liquidation Trust will receive the Liquidation Trust Seed Funding.

17.  All proceeds of the Liquidation Trust Assets will be distributed pursuant to the Liquidation Trust Waterfall.

18.     Any recovery on Causes of Action against Equity will be limited to proceeds of the D&O Liability Insurance Policies.

19.     Equity shall have an Allowed General Unsecured Claim in the amount of $266,000.00.

20.     The Debtor Professionals, Committee Professionals, Committee, Equity, and Union Bank will support the Plan and, if allowed under the Bankruptcy Code, vote in favor of the Plan.

The Debtor believes that the terms of the Global Settlement are fair and equitable and in the best interests of the Estate. As a result, the Global Settlement should be approved by the Bankruptcy Court in the Confirmation Order pursuant to Bankruptcy Rule 9019(b).

**D.      Nashville Settlement.**

Nashville asserts that it has sustained damages totaling in excess of $3 million related to allegations that the Debtor breached its post-petition obligations under the contract between the Debtor and Nashville originally entered in 2004 and last amended in December 2020 (the "Existing Nashville Contract"), which such assertions are disputed by the Debtor.  Nashville also asserts that it is entitled to recover a portion of these damages by recoupment, setoff or offset against amounts due to Red River for services provided since April 1, 2022, which such assertions are disputed by the Debtor.

The Debtor is analyzing whether it owns Claims and Causes of Action against Nashville, including commercial torts related to Nashville's receipt of Cares Act funding, for services rendered after the Petition Date, and Avoidance Actions; Nashville disputes any such claim or cause of action exists.

The Debtor and Nashville agree that, unless Nashville pays most of the amounts billed by the Debtor for the months of April, May, June, and July 2022, and waives its rights of offset, setoff and recoupment with respect to most of such amounts that would be due for services rendered (both billed and unbilled), the Debtor will likely be unable to fund this proposed Plan.

The Debtor and Nashville each dispute, challenge, and contest all allegations made against each by the other, and neither admit to any violation of law, wrongdoing, or liability. The Debtor and Nashville have been involved in litigation and potential litigation related to their respective positions on their respective Claims. The Debtor is confident in the Estate's position against Nashville, and Nashville is confident in its position. However, after good-faith, arms-length negotiations, to avoid the expense, inconvenience, delay, and uncertainty of prosecuting, disputing, or pursuing the Claims by and against Nashville and the Debtor, and to compromise the disputes described above, and in the objection filed by Nashville at Docket No. 827, the parties agreed to fully and completely resolve their respective disputes and Claims by entering into a mutual release and settlement agreement (the "Nashville Settlement Agreement") resolving this dispute (the "Nashville Settlement"). The Nashville Settlement Agreement will be filed in the Plan Supplement and is incorporated herein by reference. A brief summary of the Nashville Settlement is set forth as follows:

34

1.      Nashville agrees to pay the Debtor $1,018,675.91 (the "Nashville Initial Payment"), representing the full amounts billed by the Debtor for services rendered in April, May, and June 2022. Payment of this amount is in lieu of Nashville's recoupment, offset, or setoff of such funds, shall be made promptly after entry of the Confirmation Order, and earmarked for the payment of Allowed Administrative Expense Claims. If the conditions set forth in paragraph 4 hereof are satisfied, Nashville agrees to pay the Debtor an additional $250,000 (the "Nashville Additional Payment") for services rendered in July and August through the Sale Closing Date. The Nashville Additional Payment shall be due on the first business day after satisfaction of conditions (a) through (d) set forth in paragraph 4 below and there have been no modifications made to the Debtor's Sale Order as described in condition (d) of paragraph 4 as of that date.   No "Nashville A/R," including the $1,268,675.91 shall be owed, paid, or transferred to Platform pursuant to the Sale Order, the Nashville Agreement, or any other agreement or Bankruptcy Court order.

2.      The Debtor agreed to perform its obligations under the Existing Nashville Contract from July 1, 2022, through the Sale Closing Date, and the Debtor has so performed.

3.      Excluding the payments from Nashville to the Debtor described in paragraph 1, the Parties further agree that, as of the Sale Closing Date, (a) no existing billed or unbilled accounts receivable will be due and (b) there will be no accounts related to the Existing Nashville Contract transferred to Platform in connection with the Sale.

4       Nashville's obligation to make the Nashville Additional Payment is subject to the satisfaction of all the following conditions:

(a)      Equity has contributed at least $3,100,000 to the Estate;

(b)      The Debtor Professionals must defer for future payment by the Liquidation Trustee after the Effective Date and pursuant to the Liquidation Trust Waterfall all fees in excess of $3,042,000;

(c)      Court approval of the Nashville Settlement; and

(d)      With the exception of Nashville waiving its rights to offset and recoupment pursuant to the Nashville Settlement, there shall be no modification of any provision relating to Nashville or the Existing Nashville Contract in the Sale Order, including, without limitation, the provision that

35

Platform is entitled to no payment for any services rendered by the Debtor prior to closing of the Sale.

5.      Except for the obligations to perform as set forth in the Nashville Settlement, the Debtor and its Estate generally releases, discharges, and covenants not to sue Nashville, its employees, agents, representatives, attorneys, successors and assignors as to any and all Claims of any nature or form whatsoever, whether now known or unknown, anticipated or unanticipated, including, without limitation, any claim that was asserted, could have been asserted, or is related to the Existing Nashville Contract or to the dealings between Nashville and the Debtor.

6.      Except for the obligations to perform as set forth in the Nashville Settlement, Nashville generally releases, discharges, and covenants not to sue the Debtor, its Estate, employees, agents, representatives, attorneys, successors and assignors as to any and all Administrative Expense Claims, including, without limitation, any Administrative Expense Claim that was asserted, could have been asserted, or is related to the Existing Nashville Contract or to the dealings between Nashville and the Debtor after the Petition Date.

7.      Nashville has agreed to the Nashville Settlement to avoid further legal costs and expenses and any additional distraction to Nashville's waste-services department caused by this Chapter 11 Case; thus, as requested by Nashville and agreed by the Debtor, Nashville has the right to withdraw from the Nashville Settlement if any party objecting to the Nashville Settlement seeks discovery from Nashville by giving written notice to the Debtor and the objecting party.

The Debtor believes that the terms of the Nashville Settlement are fair and equitable and in the best interests of the Estate. As a result, the Nashville Settlement should be approved by the Bankruptcy Court in the Confirmation Order pursuant to Bankruptcy Rule 9019(b). The Nashville Secured Claim is a Class 21 Claim.

### E.      Comerica Settlement Related to Debtor's Cash Management System and Corporate Card Program

In the ordinary course of its business, the Debtor maintained at Comerica Bank an integrated, centralized cash management system used to collect, transfer, and distribute funds generated from its operations (the "Cash Management System"). The Debtor was authorized to maintain its Cash Management System at Comerica Bank pursuant to the Final Order Granting Debtor's Emergency Motion for an Order (I) Authorizing the Debtor to Continue (A) to Operate Its Cash Management System, and (B) Use Existing Business Forms and Records, and (II) Granting Related Relief [Docket No. 390] (the "Cash Management Order"). Among other things, the Cash Management Order authorized the Debtor to close any bank account in its Cash

36

Management System.

In addition to its Cash Management System, the Debtor also maintained with Comerica Bank a corporate credit-card program (the "Corporate Card Program"). Through the Corporate Card Program, approximately 25 of the Debtor's employees used corporate credit cards to purchase essential items required in the regular course of the Debtor's business operations. In connection with the opening of the Corporate Card Program, the Debtor executed a security agreement dated April 1, 2020, to secure the Debtor's obligations owing to Comerica Bank (the "Comerica Security Agreement"), including the obligation to pay all costs and expenses of Comerica Bank, including reasonable attorneys' fees. Contemporaneously with the execution of the Security Agreement, the Debtor pledged $105,000 of cash collateral to secure the obligations owing to Comerica Bank (the "Comerica Bank Collateral"). The Debtor was authorized to continue using the Corporate Card Program pursuant to the Final Cash Collateral Order. The Final Cash Collateral Order further provided that the Comerica Bank Collateral was not available for the Debtor's use of cash collateral other than for the purpose of satisfying the Debtor's obligations to Comerica Bank.

Following the closing of the Sale, the Debtor no longer requires the use of its Cash Management System or the Corporate Card Program. Accordingly, the Debtor is in the process of closing its bank accounts and terminating the Corporate Card Program.

To settle potential disputes, the Debtor and Comerica desire to enter into a settlement (the "Comerica Settlement"). Pursuant to the Comerica Settlement, a portion of the Comerica Bank Collateral will be used to reimburse Comerica Bank its reasonable attorneys' fees and costs incurred in connection with the Corporate Card Program and the Debtor's Chapter 11 cases. After application of the Comerica Bank Collateral to the reimbursement of such attorneys' fees and costs, which are $75,000, the balance of the Comerica Bank Collateral will be returned to the Debtor for satisfaction of Allowed Administrative Expense Claims. The estimated amount of Comerica Cash Collateral to be returned to the Estate is $30,000 (the "Comerica Returned Amount").

On the Effective Date, all Claims of Comerica Bank will be fully satisfied, compromised, settled, released, and discharged, and the Comerica Returned Amount will be transferred to the Liquidation Trust for Distribution in accordance with the Plan.

The Debtor believes that the terms of the Comerica Settlement are fair and equitable and in the best interests of the Estate. As a result, the Comerica Settlement should be approved by the Bankruptcy Court in the Confirmation Order pursuant to Bankruptcy Rule 9019(b). The Comerica Secured Claim is a Class 4 Claim.

## ARTICLE III
## ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, General Administrative Expense Claims, Professional Claims, and Priority Claims have not been classified and thus, are excluded from the Classes of Claims and Interests set forth in Article IV hereof.

### A.    General Administrative Expense Claims

Unless otherwise agreed to by the Holder of an Allowed General Administrative Expense Claim and the Debtor or the Liquidation Trustee, as applicable, in consultation with Union Bank, each Holder of an Allowed General Administrative Expense Claim that is unpaid as of the Effective Date shall receive, on account and in full satisfaction of such Allowed General Administrative Expense Claim, Cash in an amount equal to the Allowed amount of such General Administrative Expense Claim, to be paid in full in Cash on the later of (a) the Effective Date, (b) the date such Claim becomes an Allowed Administrative Expense Claim, (c) the date such Claim would be owed and due by the Debtor in the ordinary course of business, consistent with past practice, and in accordance with the terms and conditions of any agreement or regulation governing, instrument evidencing, or other document relating to such transactions, (d) the date Cash is available to pay such Claims, even if that date is after entry of the Confirmation Order and the occurrence of the Effective Date, and (e) such other date ordered by the Bankruptcy Court or agreed by the Holder of such Claim and the Liquidation Trustee, as applicable.

Each Holder of a General Administrative Expense Claim must File and serve a request for payment of such General Administrative Expense Claim on the Debtor or the Liquidation Trustee, as applicable, no later than the Administrative Expense Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of the Effective Date. Holders of General Administrative Expense Claims that are required to File and serve a request for payment of such General Administrative Expense Claims by the Administrative Expense Claims Bar Date that DO NOT File and serve such a request by the Administrative Expense Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such General Administrative Expense Claims against the Debtor or the Liquidation Trustee, as applicable, or its property, and such General Administrative Expense Claims shall be deemed forever discharged and released as of the Effective Date. Any requests for payment of General Administrative Expense Claims that are not properly Filed and served by the Administrative Expense Claims Bar Date shall not appear on the Claims Register and shall be Disallowed automatically without the need for further action by the Debtor or the Liquidation Trustee, as applicable, or further order of the Court.

As applicable, the Debtor or the Liquidation Trustee may settle, both after consultation with Union Bank, a General Administrative Expense Claims without further Court approval. As applicable, the Debtor or the Liquidation Trustee may choose to object to any General Administrative Expense Claim no later than one hundred and eight days (180) days from the Administrative Expense Claims Bar Date, subject to extensions by the Court, agreement in writing of the parties, or on motion of a party-in-interest approved by the Court. Unless the Debtor, the Liquidation Trustee, or other party with standing objects to a timely Filed and properly served General Administrative Expense Claim, such General Administrative Expense Claim will be deemed Allowed in the amount requested. If the Debtor or the Liquidation Trustee, as applicable, objects to a General Administrative Expense Claim, the parties may confer to try to reach a settlement. If no settlement is reached, the Court will determine whether such General Administrative Expense Claim is Allowed and, if so Allowed, in what amount.

### B.    Professional Claims

### 1.    Final Fee Applications and Payment of Professional Claims

All requests for payment of Professional Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be Filed no later than the Administrative Expense Claims Bar Date. The Court shall determine the Allowed amounts of such Professional Claims after notice and a hearing in accordance with the procedures established by the Court. Professional Claims will be paid in accordance with the Plan. Professional Claims will be paid pursuant to the Global Settlement.

      2.      **Post-Effective Date Fees and Expenses**

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Liquidation Trustee shall, without any further notice to or action, order, or approval of the Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation and Consummation of the Plan incurred by the Liquidation Trustee, as applicable. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Liquidation Trustee may employ and pay any Professional Person in the ordinary course of business without any further notice to or action, order, or approval of the Court.

      **C.**      **Priority Tax Claims**

All Priority Tax Claims were paid on the Sale Closing Date in accordance with the Sale Order; thus, no such Claim is owed.  However, if the Bankruptcy Court enters an order finding that a Priority Tax Claim was not paid in full on the Sale Closing Date or the Debtor or Liquidation Trustee, as applicable, determine that such Priority Tax Claim was not paid on the Sale Closing Date, then, except to the extent that a Holder of an Allowed Priority Tax Claim and the Debtor or Liquidation Trustee, as applicable, agree to less favorable treatment, in full and final satisfaction, settlement, and release of, and in exchange for, each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall receive, at the sole and absolute option of the Liquidation Trustee, either (a) the full unpaid amount of such Allowed Priority Tax Claim in Cash on the later of (i) the Effective Date, (ii) the date on which such Priority Tax Claim becomes an Allowed Claim or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Priority Tax Claim is due or as soon as reasonably practicable thereafter), and (iii) when sufficient Cash exists to pay such Claims in full in Cash, even if that date is after entry of the Confirmation Order and the occurrence of the Effective Date, or (b) pursuant to sections 511 and 1129(a)(9)(C) of the Bankruptcy Code, equal annual installment payments in Cash, of a total value equal to the Allowed amount of such Priority Tax Claim, over a period ending not later than five (5) years after the Petition Date.

      **D.**      **Euclid DIP Financing Claims**

The Euclid DIP Financing Claims were paid in full on the Sale Closing Date in full and final satisfaction, settlement, and release of, and in exchange for such Euclid DIP Financing Claims, subject to applicable carve outs.

### E.       Weldon DIP Financing Claims

The Weldon DIP Financing Claims were not paid pursuant to the Sale Order. The Allowed Weldon DIP Financing Claims and any Claims of Equity, including, without limitation, RRSC, except for Equity's Allowed General Unsecured Claim for $266,000.00 pursuant to the Global Settlement will be paid in full and final satisfaction, settlement, and release of, and in exchange for such Claims, out of funds, if any, distributed to Equity pursuant to the Liquidation Trust Waterfall. Unless otherwise provided in the Plan, upon payment or satisfaction of such DIP Financing Claims, and subject to applicable carve outs, all Liens granted to secure the Allowed DIP Financing Claims shall be terminated and of no further force and effect.

## ARTICLE IV
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A.       Classification of Claims and Interests

The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, Confirmation, and Distribution pursuant to sections 1122 and 1123(a) of the Bankruptcy Code. The Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or Interest is in a particular Class for purposes of Distribution only to the extent that any such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date. In accordance with section 1123(a)(1) of the Bankruptcy Code and as described in Article III hereof, the Debtor has not classified General Administrative Expense Claims, Professional Claims, and Priority Tax Claims.

The classification of Claims and Interests against the Debtor pursuant to the Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| Class 1 | Other Priority Claims | Impaired | Entitled to Vote |
| Class 2 | Intentionally Omitted | Intentionally Omitted | Intentionally Omitted |
| Class 3 | Union Bank Claim | Impaired | Entitled to Vote |
| Class 4 | Comerica Bank Secured Claims | Impaired | Entitled to Vote |
| Class 5 | Signature Secured Claims | Impaired | Entitled to Vote |
| Class 6 | Northpoint Secured Claims | Impaired | Entitled to Vote |
| Class 7 | Caterpillar Secured Claims | Impaired | Entitled to Vote |
| Class 8 | John Deere Secured Claims | Impaired | Entitled to Vote |
| Class 9 | Santander Secured Claims | Impaired | Entitled to Vote |

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| Class 10 | TBK Bank Secured Claims | Impaired | Entitled to Vote |
| Class 11 | TCF Secured Claims | Impaired | Entitled to Vote |
| Class 12 | VFSUS Secured Claims | Impaired | Entitled to Vote |
| Class 13 | Intentionally Omitted | Intentionally Omitted | Intentionally Omitted |
| Class 14 | Fort Wayne Claims | Impaired | Entitled to Vote |
| Class 15 | Argonaut Claims | Impaired | Entitled to Vote |
| Class 16 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 17 | Intentionally Omitted | Intentionally Omitted | Intentionally Omitted |
| Class 18 | Val Verde County Claims | Impaired | Entitled to Vote |
| Class 19 | VFS Leasing Claims | Impaired | Entitled to Vote |
| Class 20 | BOW Secured Claim | Impaired | Entitled to Vote |
| Class 21 | Nashville Secured Claims | Impaired | Entitled to Vote |
| Class 22 | Sumitomo Secured Claims | Impaired | Entitled to Vote |
| Class 23 | Intentionally Omitted | Intentionally Omitted | Intentionally Omitted |
| Class 24 | Preferred Interests | Impaired | Not Entitled to Vote Deemed to Reject |
| Class 25 | Common Interests | Impaired | Not Entitled to Vote Deemed to Reject |

### B.    Treatment of Claims and Interests

Each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Liquidation Trustee, in consultation with Union Bank, and the Holder of such Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

**Class 1 - Other Priority Claims.**

(e)    *Classification:* Class 1 consists of Other Priority Claims. For purposes of classification and treatment under the Plan, all

41

Other Priority Claims of the Debtor are being treated as one Class.

(f)    *Treatment:* Except to the extent that a Holder of a Class 1 Claim agrees to less favorable treatment of its Allowed Class 1 Claim, each such Holder shall receive payment in full in Cash (a) after all Allowed Administrative Expense Claims and Claims higher in priority under the Bankruptcy Code are paid in full and (b) on the later of (i) the Effective Date, (ii) the date on which such Other Priority Claim becomes an Allowed Other Priority Claim or as soon as reasonably practicable thereafter (or, if not then due, when such Other Priority Claim is due or as soon as reasonably practicable thereafter), and (iii) when sufficient Cash exists to pay such Claims in full in Cash, even if that date is after entry of the Confirmation Order and the occurrence of the Effective Date.

(g)    *Voting:* Class 1 is Impaired under the Plan. Holders of Claims in Class 1 are entitled to vote to accept or reject the Plan.

**Class 2 – Intentionally Omitted.**

**Class 3 – Union Bank Claim.**

(a)    *Classification:* Class 3 consists of the Union Bank Claim.

(b)    *Treatment:*  Class 3 Claims will be paid in full and final satisfaction, settlement, release, and discharge of and in exchange for each such Class 3 Claim pursuant to the terms of the Global Settlement and the Liquidation Trust Waterfall set forth on Exhibit A.

According to the Global Settlement, among other things, The Class 3 Claim is Allowed in the amount of $31,105,474.10. On account of its Class 3 Claim, Union Bank shall receive (a) an initial Distribution of $5,000,000.00, consisting of (i) $3,850,000.00, which was paid on the Sale Closing Date and (ii) $1,150,000.00 on the earlier of (y) September 30, 2022, and (z) the Effective Date; (b) Distributions pursuant to the Liquidation Trust Waterfall; and (c) the Union Bank Releases described in Article IX.D and the Global Settlement.

(c)    *Voting:* Class 3 is Impaired under the Plan. Holders of Claims in Class 3 are entitled to vote to accept or reject the Plan.

**Class 4 – Comerica Bank Secured Claims.**

(a)     *Classification:* Class 4 consists of Comerica Bank Secured Claims.

(b)     *Treatment:* Except to the extent that a Holder of an Allowed Class 4 Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, its Class 4 Claim, Class 4 Claims will be paid in full pursuant to the Comerica Settlement.

(c)     *Voting:* Class 4 is Impaired under the Plan. Holders of Claims in Class 4 are entitled to vote to accept or reject the Plan.

**Class 5 – Signature Secured Claims.**

(a)     *Classification:* Class 5 consists of Signature's Secured Claims.

(b)     *Treatment:* Each Holder of a Class 5 Claim received the Collateral for such Class 5 Claims in full and final satisfaction, settlement, release, and discharge of and in exchange for each Holder's Class 5 Claim. The amount, validity, extent, value, and priority of the Allowed Class 5 Claims under section 506 of the Bankruptcy Code will be determined by the Bankruptcy Court after the Effective Date. Any Deficiency Claim or other Unsecured Claim of a Holder of Class 5 Claim shall be treated in Class 16

(c)     *Voting:* Class 5 is Impaired under the Plan. Holders of Claims in Class 5 are entitled to vote to accept or reject the Plan.

**Class 6 – Northpoint Secured Claims.**

(a)     *Classification:* Class 6 consists of Northpoint Secured Claims.

(b)     *Treatment:* Each Holder of a Class 6 Claim was paid pursuant to the terms of the Sale Order in full and final satisfaction, settlement, release, and discharge of and in exchange for each Holder's Class 6 Claim.

(c)     *Voting:* Class 6 is Impaired under the Plan. Holders of Claims in Class 6 are entitled to vote to accept or reject the Plan.

43

**Class 7 – Caterpillar Secured Claims.**

(a)    *Classification:* Class 7 consists of Caterpillar's Secured Claims.

(b)    *Treatment:* Each Holder of a Class 7 Claim was paid pursuant to the terms of the Sale Order in full and final satisfaction, settlement, release, and discharge of and in exchange for each Holder's Class 7 Claim.  The amount, validity, extent, value, and priority of the Allowed Class 7 Claims under section 506 of the Bankruptcy Code will be determined by the Bankruptcy Court after the Effective Date. Any Deficiency Claim or other Unsecured Claim of a Holder of a Class 7 Claim shall be treated in Class 16.

(c)    *Voting:* Class 7 is Impaired under the Plan. Holders of Claims in Class 7 are entitled to vote to accept or reject the Plan.

**Class 8 – John Deere Secured Claims.**

(a)    *Classification:* Class 8 consists of John Deere's Secured Claim.

(b)    *Treatment:* Each Holder of a Class 8 Claim was paid pursuant to the terms of the Sale Order in full and final satisfaction, settlement, release, and discharge of and in exchange for each Holder's Class 8 Claim. The amount, validity, extent, value, and priority of the Allowed Class 8 Claims under section 506 of the Bankruptcy Code will be determined by the Bankruptcy Court after the Effective Date. Any Deficiency Claim or other Unsecured Claim of a Holder of Class 8 Claim shall be treated in Class 16.

(c)    *Voting:* Class 8 is Impaired under the Plan. Holders of Claims in Class 8 are entitled to vote to accept or reject the Plan.

**Class 9 – Santander Secured Claims.**

(a)    *Classification:* Class 9 consists of Santander's Secured Claims.

(b)    *Treatment:* Each Holder of a Class 9 Claim received the Collateral for such Class 9 Claims in full and final satisfaction, settlement, release, and discharge of and in exchange for each Holder's Class 9 Claim. The amount, validity, extent, value, and priority of the Allowed Class 9

44

Claims under section 506 of the Bankruptcy Code will be determined by the Bankruptcy Court after the Effective Date. Any Deficiency Claim or other Unsecured Claim of a Holder of Class 9 Claim shall be treated in Class 16.

(c)     *Voting:* Class 9 is Impaired under the Plan. Holders of Claims in Class 9 are entitled to vote to accept or reject the Plan.

**Class 10 – TBK Bank Secured Claims.**

(a)     *Classification:* Class 10 consists of TBK Bank's Secured Claim.

(b)     *Treatment*: Each Holder of a Class 10 Claim received the Collateral for such Class 10 Claim in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Class 10 Claim. The amount, validity, extent, value, and priority of the Allowed Class 10 Claim under section 506 of the Bankruptcy Code will be determined by the Bankruptcy Court after the Effective Date. Any Deficiency Claim or other Unsecured Claim of a Holder of Class 10 Claim shall be treated in Class 16.

(c)     *Voting:* Class 10 is Impaired under the Plan. Holders of Claims in Class 10 are entitled to vote to accept or reject the Plan.

**Class 11 – TCF Secured Claims.**

(a)     *Classification:* Class 11 consists of TCF's Secured Claim.

(b)     *Treatment:* Each Holder of a Class 11 Claim was paid pursuant to the terms of the Sale Order in full and final satisfaction, settlement, release, and discharge of and in exchange for each Holder's Class 11 Claim.

(c)     *Voting:* Class 11 is Impaired under the Plan. Holders of Claims in Class 11 are entitled to vote to accept or reject the Plan.

**Class 12 – VFSUS Secured Claims.**

(a)     *Classification:* Class 12 consists of VFSUS's Secured Claims.

(b)     *Treatment:* Each Holder of a Class 12 Claim was paid pursuant to the terms of the Sale Order in full and final

45

satisfaction, settlement, release, and discharge of and in exchange for each Holder's Class 12 Claim.

(c)     *Voting:* Class 12 is Impaired under the Plan. Holders of Claims in Class 12 are entitled to vote to accept or reject the Plan.

**Class 13 – Intentionally Omitted.**

**Class 14 – Fort Wayne Claims.**

(a)     *Classification:* Class 14 consists of Fort Wayne Claims.

(b)     *Treatment:* Class 14 Claims were paid pursuant to the Ft. Wayne Settlement.

(c)     *Voting:* Class 14 is Impaired under the Plan. Holders of Claims in Class 14 are entitled to vote to accept or reject the Plan.

**Class 15 – Argonaut Claims.**

(a)     *Classification:* Class 15 consists of Argonaut Claims.

(b)     *Treatment:* Class 15 Claims were paid pursuant to the Ft. Wayne Settlement.

(c)     *Voting:* Class 15 is Impaired under the Plan. Holders of Claims in Class 15 are entitled to vote to accept or reject the Plan.

**Class 16 – General Unsecured Claims.**

(a)     *Classification:* Class 16 consists of General Unsecured Claims.

(b)     *Treatment:* On the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, its Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim against the Debtor shall receive its Pro Rata share of Liquidation Trust Interests.

(c)     *Voting:* Class 16 is Impaired under the Plan. Holders of Claims in Class 16 are entitled to vote to accept or reject the Plan.

**Class 17 – Intentionally Omitted.**

**Class 18 – Val Verde County Claims.**

(a)    *Classification:* Class 18 consists of Val Verde County Claims.

(b)    *Treatment:* Each Holder of a Class 18 Claim was paid pursuant to the terms of the Sale Order in full and final satisfaction, settlement, release, and discharge of and in exchange for each Holder's Class 18 Claim.

(c)    *Voting:* Class 18 is Impaired under the Plan. Holders of Claims in Class 18 are entitled to vote to accept or reject the Plan.

**Class 19 – VFS Leasing Claims.**

(a)    *Classification:* Class 19 consists of VFS Leasing's Claims.

(b)    *Treatment:* Each Holder of a Class 19 Claim was paid pursuant to the terms of the Sale Order in full and final satisfaction, settlement, release, and discharge of and in exchange for each Holder's Class 19 Claim.

(c)    *Voting:* Class 19 is Impaired under the Plan. Holders of Claims in Class 19 are entitled to vote to accept or reject the Plan.

**Class 20 – BOW Secured Claims.**

(a)    *Classification:* Class 20 consists of BOW's Secured Claims.

(b)    *Treatment:* Each Holder of a Class 20 Claim received the Collateral for such Class 20 Claims in full and final satisfaction, settlement, release, and discharge of and in exchange for each Holder's Class 20 Claim. The amount, validity, extent, value, and priority of the Allowed Class 20 Claim under section 506 of the Bankruptcy Code will be determined by the Bankruptcy Court after the Effective Date. Any Deficiency Claim or other Unsecured Claim of a Holder of Class 20 Claim shall be treated in Class 16.

(c)    *Voting:* Class 20 is Impaired under the Plan. Holders of Claims in Class 20 are entitled to vote to accept or reject the Plan.

**Class 21 – Nashville Secured Claims.**

(a)     *Classification:* Class 21 consists of Nashville's Secured Claims.

(b)     *Treatment:* Except to the extent that a Holder of an Allowed Class 21 Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, its Class 21 Claim, Class 21 Claims will be paid in full pursuant to the Nashville Settlement.

(c)     *Voting:* Class 21 is Impaired under the Plan. Holders of Claims in Class 21 are entitled to vote to accept or reject the Plan.

**Class 22 – Sumitomo Secured Claims.**

(a)     *Classification:* Class 22 consists of Sumitomo's Secured Claims.

(b)     *Treatment:* Each Holder of a Class 22 Claim received the Collateral for such Class 22 Claims in full and final satisfaction, settlement, release, and discharge of and in exchange for each Holder's Class 22 Claim. The amount, validity, extent, value, and priority of the Allowed Class 22 Claims under section 506 of the Bankruptcy Code will be determined by the Bankruptcy Court after the Effective Date. Any Deficiency Claim or other Unsecured Claim of a Holder of Class 22 Claim shall be treated in Class 16.

(c)     *Voting:* Class 22 is Impaired under the Plan. Holders of Claims in Class 22 are entitled to vote to accept or reject the Plan.

**Class 23 – Intentionally Omitted.**

**Class 24 – Preferred Interests.**

(a)     *Classification:* Class 24 consists of Preferred Interests.

(b)     *Treatment:* On the Effective Date, all Preferred Interests shall be deemed cancelled, discharged, released, and extinguished in full, and of no further effect, and each Holder shall receive no Distribution on account of its Class 24 Claim.

48

(c)     *Voting:* Class 24 is Impaired under the Plan. Holders of Claims in Class 24 are not entitled to vote to accept or reject the Plan.

**Class 25 – Common Interests.**

(a)     *Classification:* Class 25 consists of Common Interests.

(b)     *Treatment:* On the Effective Date, all Common Interests shall be deemed cancelled, discharged, released, and extinguished in full, and of no further effect, and each Holder shall receive no Distribution on account of its Class 25 Claim.

(c)     *Voting:* Class 25 is Impaired under the Plan. Holders of Claims in Class 25 are not entitled to vote to accept or reject the Plan.

**C.     Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtor's rights regarding any Unimpaired Claim, including, all rights regarding legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claim.

**D.     Elimination of Vacant Classes**

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**E.     Acceptance or Rejection of the Plan**

1.     **Voting Classes**

Claims in Classes 1 – 23 are Impaired and entitled to vote to accept or reject the Plan. If such a Class contains Claims eligible to vote and no Holders of Claims eligible to vote in such Class vote to accept or reject the Plan, such Class shall be deemed to have accepted the Plan under section 1129(a)(8).

2.    **Deemed Rejection of the Plan**

Claims in Classes 24 and 25 are Impaired under the Plan. Holders of Claims and Interests in Classes 24 and 25 are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

**F.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code**

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by any of the following Classes: 1 through 22. The Debtor reserves the right to modify the Plan in accordance with Article XI.A hereof to the extent that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules; provided, however, that any modification shall be consistent with the Global Settlement. If a controversy arises about whether any Claim or Interest, or any Class of Claims or Interests, are Impaired, the Court shall, after notice and a hearing, determine such controversy on or before Confirmation.

## ARTICLE V
## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.    Implementation Generally**

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan, including, for the avoidance of doubt, the Global Settlement. The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Court's approval of such compromise and settlement, including, without limitation, the Fort Wayne Settlement, the Global Settlement, the Nashville Settlement, and the Comerica Settlement, under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtor and the Estate. Subject to Article VII.J hereof, all Distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

The Plan shall be funded from the Sale Proceeds, the Liquidation Trust Assets, including recoveries from any Causes of Action, and the proceeds from any other Assets available to fund the Plan.

**B.    Liquidation Trust Creation and Governance of the Liquidation Trust**

The Liquidation Trust shall be established for the (i) administration of the Liquidation Trust Assets in accordance with the terms of the Plan and the Global Settlement, (ii) Distribution of the Liquidation Trust Assets net of any Liquidation Trust Expenses, to Liquidation Trust

Beneficiaries, in accordance with the terms of the Plan and the Global Settlement, and (iii) reconciliation by the Liquidation Trustee of Claims, and Interests, all as set forth in the Plan.

On the Effective Date, the Debtor and the Liquidation Trustee, as applicable, shall be authorized to take all actions necessary to establish the Liquidation Trust in accordance with the Plan and the Global Settlement. Additionally, on the Effective Date, the Debtor shall transfer and shall be deemed to transfer to the Liquidation Trust all of its rights, title, and interest in and to all of the Liquidation Trust Assets, and in accordance with section 1141(c) of the Bankruptcy Code, the Liquidation Trust Assets shall automatically vest in the Liquidation Trust free and clear of all Claims and Liens, and such transfer shall be exempt from any stamp, real-estate-transfer, mortgage-reporting, sales, use or other similar tax pursuant to section 1146(a) of the Bankruptcy Code. The Liquidation Trustee shall be the exclusive administrator of the Liquidation Trust Assets for purposes of 31 U.S.C. section 3713(b) and 26 U.S.C. section 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, solely with respect to the Liquidation Trust Assets and for purposes of carrying out the Liquidation Trustee's duties.

The Liquidation Trust shall be administered by the Liquidation Trustee. The powers, rights, and responsibilities of the Liquidation Trustee shall include the authority and responsibility to, among other things, take the actions set forth in the Plan. The Liquidation Trustee shall hold and distribute the proceeds of the Liquidation Trust Assets in accordance with the provisions of the Plan and the Global Settlement. After the Effective Date the Debtor shall have no interest in the Liquidation Trust Assets.

**1. Rights, Powers, and Duties of the Liquidation Trustee**

The Liquidation Trustee will act for the benefit of Liquidation Trust Beneficiaries in a fiduciary capacity and shall have comparable authority as a bankruptcy trustee of the Debtor, as the exclusive representative of the Estate under section 1123(a)(5)(B) of the Bankruptcy Code or any corresponding federal or state laws with respect to the Liquidation Trust Assets and shall succeed to all of the Debtor's and the Estate's rights with respect thereto, subject to the provisions of the Plan and the Liquidation Trust Agreement. The powers, rights, and duties of the Liquidation Trustee shall arise on the Effective Date and shall include, without limitation:

> a.     investing Cash in accordance with section 345 of the Bankruptcy Code, and withdrawing and making Distributions of Cash to Liquidation Trust Beneficiaries and Holders of Liquidation Trust Interests holding Allowed Claims or Interests in accordance with the terms of the Plan and the Global Settlement, and paying taxes and other obligations incurred by the Liquidation Trustee in connection with winding down the Liquidation Trust in accordance with the Plan and the Liquidation Trust Agreement;

> b.     the duties and powers related to objecting to, compromising, and settling all Claims without notice or Bankruptcy Court

approval;

c.      having the power and authority to collect, liquidate, and distribute the proceeds of the Liquidation Trust Assets for the benefit of Liquidation Trust Beneficiaries and Holders of Liquidation Trust Interests holding Allowed Claims pursuant to the terms of the Plan and under the jurisdiction of the Bankruptcy Court;

d.      engaging attorneys, consultants, agents, employees, and any other Professional Persons to assist the Liquidation Trustee with respect to its responsibilities;

e.      paying the fees and expenses of the attorneys, consultants, agents, employees, and other Professional Persons engaged by the Liquidation Trust and paying all other expenses of the Liquidation Trust, subject to the terms of the Plan;

f.      having the power and authority to collect, liquidate, and distribute the Liquidation Trust Assets;

g.      overseeing compliance with accounting, finance, and reporting obligations related to the Liquidation Trust;

h.      acting on behalf of the Liquidation Trust or the Estate, as applicable, in all adversary proceedings and contested matters (including, without limitation, any Cause of Action), then pending or that can be commenced in the Bankruptcy Court and in all actions and proceedings pending or commenced elsewhere, and to settle, retain, enforce, dispute, or adjust any Claim and otherwise pursue actions involving the Liquidation Trust Assets that could arise or be asserted at any time under the Bankruptcy Code, unless otherwise waived or relinquished in the Plan;

i.      implementing and/or enforcing all provisions of the Plan and Global Settlement pertaining to the Liquidation Trust and Debtor;

j.      paying taxes and other obligations incurred by the Liquidation Trustee;

k.      executing and delivering all documents and taking all actions necessary to consummate the Plan;

l.      coordinating the turnover of property, if any, subject to rejected Executory Contracts or abandonment;

m.    coordinating the collection of outstanding accounts receivable not sold to Platform under the Sale, if any;

n.    coordinating the storage, maintenance, and disposition of the Debtor's books and records;

o.    preparing required financial statements, if any, and Filing such reports on the docket of the Chapter 11 Case until such time as a final decree has been entered;

p.    overseeing the filing of final tax returns, refund requests, audits, and other corporate dissolution documents, as required;

q.    objecting to, compromising, and settling Claims and Interests without notice or Bankruptcy Court approval; and

r.    such other powers as may be vested in or assumed by the Liquidation Trustee pursuant to the Plan, Liquidation Trust Agreement, or other Order of the Bankruptcy Court, or as may be needed or appropriate to carry out the provisions of the Plan.

## 2.    Vesting of Assets in the Liquidation Trust

On the Effective Date, all Liquidation Trust Assets of the Estate and any Liquidation Trust Assets acquired by the Debtor pursuant to the Plan, and the Liquidation Trust Seed Funding, shall vest in the Liquidation Trust, free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, the Liquidation Trustee may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. The Liquidation Trust Assets will be used to pay Claims pursuant to the Plan and the Liquidation Trust Waterfall.

## 3.    Cancellation of Liens

Except as otherwise specifically provided herein, upon the payment of a Secured Claim in accordance with the Plan, any Lien securing such Secured Claim shall be deemed released, and the Holder of such Secured Claim shall be authorized and directed to release any Collateral or other property of the Debtor held by such Holder and to take such actions as may be requested by the Liquidation Trustee, to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases as may be requested by the Liquidation Trustee.

## 4.    Cancellation of Existing Securities and Agreements

Except for the purpose of evidencing a right to payment under the Plan and except as otherwise set forth in the Plan, on the Effective Date, all agreements, instruments, and other documents evidencing any Claim or Interest and any rights of any Holder in respect thereof shall

be deemed cancelled, discharged, and of no force or effect and the obligations of the Debtor thereunder shall be deemed fully satisfied, released, and discharged.

### 5.    Tax Treatment

In furtherance of the Liquidation Trust, (a) the Liquidation Trust is intended to qualify as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) and in compliance with Revenue Procedure 94-45, 1994-2 C.B. 684, and, thus, as a "grantor trust" within the meaning of sections 671 through 679 of the Internal Revenue Code to the applicable Holders of Claims, consistent with the terms of the Plan; (b) the sole purpose of the Liquidation Trust shall be the liquidation and Distribution of the Liquidation Trust Assets in accordance with Treasury Regulation section 301.7701-4(d), including the resolution of applicable Claims in accordance with the Plan, with no objective to continue or engage in the conduct of a trade or business; (c) all parties (including, without limitation, the Debtor, applicable Holders of Allowed Claims and Interests receiving Liquidation Trust Interests, and the Liquidation Trustee) shall report consistently with such treatment; (d) all parties (including the Debtor, applicable Holders of Allowed Claims and Interests receiving Liquidation Trust Interests, and the Liquidation Trustee) shall report consistently with the valuation of the Liquidation Trust Assets transferred to the Liquidation Trust as determined by the Liquidation Trustee (or their designee); (e) the Liquidation Trustee shall be responsible for filing all applicable tax returns for the Liquidation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a); and (f) the Liquidation Trustee shall annually send to each Holder of a Liquidation Trust Interest a separate statement regarding the receipts and expenditures of the Liquidation Trust as relevant for U.S. federal income tax purposes. In conformity with Revenue Procedure 94-45, all parties (including, without limitation, the Debtor, the Liquidation Trustee and Liquidation Trust Beneficiaries) will be required to treat the transfer of the Liquidation Trust Assets to the Liquidation Trust, for all purposes of the Internal Revenue Code, as (a) a transfer of the Liquidation Trust Assets (subject to any obligations relating to those Assets) directly to the Liquidation Trust Beneficiaries (other than to the extent any Liquidation Trust Assets are allocable to Disputed Claims), followed by (b) the transfer by such beneficiaries to the Liquidation Trust of Liquidation Trust Assets in exchange for Liquidation Trust Interests. For all U.S. federal income tax purposes, all parties must treat the Liquidation Trust as a grantor trust of which Holders of Allowed Claims and Interests who become Liquidation Trust Beneficiaries (as determined for U.S. federal income tax purposes) are the owners and grantors. Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by the Liquidation Trustee of a private letter ruling if the Liquidation Trustee so request one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Liquidation Trustee), the Liquidation Trustee may timely elect to (a) treat any portion of the Liquidation Trust allocable to Disputed Claims as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 (and make any appropriate elections), which "disputed-ownership fund" will be taxable as a "qualified-settlement fund" if such portion of the Liquidation Trust allocable to Disputed Claims consists of passive assets for tax purposes, and (b) to the extent permitted by applicable law, report consistently with the foregoing for state and local income-tax purposes. If a "disputed-ownership-fund" election is made, all parties (including the Debtor, applicable Holders of Allowed Claims and Interests receiving Liquidation Trust Interests, and the Liquidation Trustee) shall report for United States federal, state, and local income-tax purposes consistently with the foregoing. The Liquidation Trustee may request an expedited determination of taxes of the Liquidation Trust,

including any reserve for Disputed Claims, under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Liquidation Trust for all taxable periods through the dissolution of the Liquidation Trust.

### 6.    Liquidation Trust Interests

On the Effective Date, each Liquidation Trust Beneficiary shall, by operation of the Plan and the Global Settlement, receive its Pro Rata share of the Liquidation Trust Interests. Liquidation Trust Interests shall be reserved for Holders of Disputed Claims held by potential Liquidation Trust Beneficiaries and held by the Liquidation Trustee pending allowance or disallowance of such Claims. No other Person or Entity shall have any interest, legal, beneficial, or otherwise, in the Liquidation Trust Assets upon the assignment and transfer of such Liquidation Trust Assets to the Liquidation Trust. As set forth in the Liquidation Trust Agreement, Distributions from the Liquidation Trust on account of Liquidation Trust Interests shall be made from the Liquidation Trust Assets after paying, reserving against or satisfying, among other things, the operating and administrative expenses of the Liquidation Trust, including but not limited to all costs, expenses, and obligations incurred by the Liquidation Trustee (or Professional Persons who may be employed by the Liquidation Trustee in administering the Liquidation Trust) in carrying out their responsibilities under the Liquidation Trust Agreement, or in any manner connected, incidental or related thereto. Holders of Liquidation Trust Interests shall have no voting rights with respect to such interests.

### 7.    Uncertificated Liquidation Trust Interests

Any and all Liquidation Trust Interests shall be uncertificated. In addition, any and all Liquidation Trust Interests will not constitute "Securities" and will not be registered pursuant to the Securities Act or any applicable state or local Securities law. However, if it should be determined that any such Liquidation Trust Interests constitute "Securities," the exemption provisions of section 1145 of the Bankruptcy Code will be satisfied and the offer, issuance and Distribution under the Plan of the Liquidation Trust Interests will be exempt from registration under the Securities Act and all applicable state and local Securities laws and regulations.

### 8.    Dissolution of the Liquidation Trust

The Liquidation Trustee and Liquidation Trust shall be discharged or dissolved, as the case may be, when all Distributions required to be made by the Liquidation Trust under the Plan have been made.

### 9.    Indemnification and Limitation of Liability

The Liquidation Trustee and each of their respective accountants, agents, assigns, attorneys, bankers, consultants, directors, employees, executors, financial advisors, investment bankers, real estate brokers, transfer agents, independent contractors, managers, members, officers, partners, predecessors, principals, Professional Persons, representatives, affiliate, employer and successors (each solely in its capacity as such, a "Liquidation Trust Indemnified Party") shall be indemnified for, and defended and held harmless against, by the Liquidation Trust and solely from the Liquidation Trust Assets, any loss, liability, damage, judgment, fine, penalty, Claim, demand, settlement, cost, or expense (including the reasonable fees and expenses of their respective

Professionals) actually incurred other than with respect to gross negligence, willful misconduct, or fraud on the part of the applicable Liquidation Trust Indemnified Party (which gross negligence, willful misconduct, or fraud, if any, must be determined by a Final Order of a court of competent jurisdiction) for any action taken, suffered, or omitted to be taken by the Liquidation Trust Indemnified Parties in connection with the acceptance, administration, exercise, and performance of their duties under the Plan or the Liquidation Trust Agreement, as applicable if the applicable Liquidation Trust Indemnified Party acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interest of the Liquidation Trust or its beneficiaries. The amounts necessary for the indemnification provided in this section (including, but not limited to, any costs and expenses incurred in enforcing the right of indemnification in this section) shall be paid out of the Liquidation Trust Assets. The Liquidation Trustee shall not be personally liable for the payment of any Liquidation Trust expense or Claim or other liability of the Liquidation Trust, and no Person shall look to the Liquidation Trustee personally for the payment of any such expense or liability. The indemnification provided in this section shall survive the death, dissolution, incapacity, resignation, or removal of the Liquidation Trustee, Liquidation Trust Indemnified Party, or the termination of the Liquidation Trust, and shall inure to the benefit of each Liquidation Trust Indemnified Party's heirs and assigns.

## 10.    Preservation of Privilege

As applicable, the Debtor and the Liquidation Trustee shall be deemed to be working in common interest whereby the Debtor will be able to share documents, information, or communications (whether written or oral) relating to any Claim or Interest, subject to a common-interest privilege. The Liquidation Trust shall seek to preserve and protect all applicable privileges attaching to any such documents, information, or communications. The Liquidation Trustee receipt of such documents, information, or communications shall not constitute a waiver of any privilege. All privileges shall remain in the control of the Debtor or the Liquidation Trustee, as applicable, and the Debtor or the Liquidation Trustee, as applicable, each retaining the exclusive right to waive its own privileges.

## 11.    Administration of the Liquidation Trust

On and after the Effective Date the Liquidation Trustee shall resolve all Disputed Claims, as applicable, as expeditiously as possible, and, at the same time, the Liquidation Trustee shall (a) make Distributions on account of Liquidation Trust Interests as provided hereunder and in the Global Settlement, (b) file appropriate tax returns, and (c) administer the Liquidation Trust in an efficacious manner. The Liquidation Trust shall be deemed to be substituted as the party-in-lieu of the Debtor in all matters pertaining to Claims, including (i) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court and (ii) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Liquidation Trustee to File motions or substitutions of parties or counsel in each such matter.

## 12.    Liquidation Trust Fees and Expenses

All costs and fees of the Liquidation Trust and the Liquidation Trustee, including administrative-related costs and professional fees, shall be paid from (a) the Liquidation Trust Seed

Funding, and (b) the proceeds of the Liquidation Trust Assets. From and after the Effective Date, the Liquidation Trustee, on behalf of the Liquidation Trust, shall, in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay using the Liquidation Trust Assets the reasonable expenses (including any taxes imposed on or payable by the Liquidation Trust or in respect of the Liquidation Trust Assets and professional fees) incurred by the Liquidation Trust and any Professional Persons retained by the Liquidation Trust or the Liquidation Trustee and any additional amounts determined necessary by the Liquidation Trustee to adequately reserve for the operating expenses of the Liquidation Trust from the Liquidation Trust Assets. Liquidation Trustee is authorized to allocate such expenses to, and pay them from, the Liquidation Trust Assets, as the Liquidation Trustee may determine in good faith is fair (such as based on the Liquidation Trustee's good-faith determination of the nature or purpose of the fee or expense, the relative amount of Claims, or such other matters as the Liquidation Trustee deems relevant) and in accordance with the terms of the Plan and Liquidation Trust Agreement.

### 13.    Liquidation Trust Distributions

The Distribution provisions set forth in Article VII shall apply to the Liquidation Trust.

### C.    Preservation of Causes of Action

Notwithstanding confirmation of the Plan, entry of the Confirmation Order, or the occurrence of the Effective Date, and notwithstanding any principle of *res judicata*, claim preclusion, or otherwise, and unless specifically and explicitly released, waived, compromised, or otherwise treated in the Plan, the Global Settlement, the Debtor, and the Estate retain any and all rights, property, and interests, whether arising before or after the Petition Date, all of which are transferred under the Plan to the Liquidation Trust regardless of whether they are scheduled, filed, or asserted prior to the Confirmation Hearing, including, without limitation, all: (i) defenses to Claims; (ii) affirmative defenses to Claims; (iii) setoffs, offsets, and recoupments against any Claim, Creditor, or other person; (iv) rights to turnover, accounting contribution, indemnification, or reimbursement against any Creditor or other person; (v) rights under any loan document; (vi) rights to any refund; (vii) Avoidance Actions; and (viii) Claims and Causes of Action, including Retained Causes of Action,  against any Creditor, holder of an Interest, or person whatsoever, including for affirmative relief and to reduce any liability. Further, <u>NO PERSON OR ENTITY MAY RELY ON THE ABSENCE OF A SPECIFIC REFERENCE IN THE PLAN OR THE DISCLOSURE STATEMENT TO ANY CAUSE OF ACTION AGAINST THEM AS ANY INDICATION THAT THE DEBTOR OR THE LIQUIDATION TRUSTEE WILL NOT PURSUE ANY AND ALL AVAILABLE CAUSES OF ACTION AGAINST IT. THE DEBTOR AND THE LIQUIDATION TRUSTEE EXPRESSLY RESERVE ALL RIGHTS TO PROSECUTE ANY AND ALL CAUSES OF ACTION AGAINST ANY PERSON OR ENTITY, EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN</u>. Unless any Cause of Action against a Person or Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Debtor and the Liquidation Trustee expressly reserve all Causes of Action for later adjudication; therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, Claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action on, after, or as a consequence of the Confirmation, the Effective Date, or Consummation. The Liquidation Trustee shall have the exclusive right, authority, and discretion to determine and to

initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to, or action, order, or approval of, the Court. The Cause-of-Action preservation shall include all Claims and Causes of Action mentioned in the Disclosure Statement or any attachment to the Disclosure Statement and all Claims and Causes of Action under section 506(c) of the Bankruptcy Code. For the avoidance of doubt, the Claims and Causes of Action released pursuant to the Union Bank Releases shall not be preserved under this Section and shall be released as provided in the Union Bank Releases.

### D.    Resignation of Directors and Officers

Upon the Effective Date, the Debtor's board of directors and officers shall be deemed to have resigned without the necessity of any further action or writing, and they shall be released from responsibilities, duties, and obligations arising after the Effective Date to the Debtor or its creditors under the Plan and applicable law; provided, however, that pursuant to section 1142(b) of the Bankruptcy Code, after the Effective Date the officers and directors of the Debtor shall be authorized to file the Debtor's tax returns and take any other actions related to or required for the dissolution of the Debtor and shall provide reasonable cooperation and assistance as may be requested by the Liquidation Trustee. Upon resignation, the Debtor's board of directors and officers shall receive no further payment, including, but not limited to, severance, bonus and salary, and shall not be entitled to any further employee benefits, including retirement benefits, healthcare benefits, or other employee benefits either paid for by the Debtor or any other third party.

Nothing in the Plan or the Confirmation Order shall affect the obligations of the Estate, the Liquidation Trustee and/or any replacement officers and directors, as applicable, to maintain all books and records that relate to the Liquidation Trust Assets. Until entry of a Final Order or settlement with respect to all Liquidation Trust Assets, the Estate, the Liquidation Trustee and/or any replacement officers and directors, as applicable, shall preserve and maintain all of the Debtors' books, records, documents, files, electronic data (in whatever format, including native format), or any tangible object or other item of evidence potentially relevant to the Liquidation Trust Assets, wherever stored, as though they were the subject of a continuing request for production of documents and/or a subpoena, shall not destroy, abandon, transfer, or otherwise render unavailable such documents, and shall turn over any such materials to the Liquidation Trustee promptly upon the request of the Liquidation Trustee. The books and records maintained by the Liquidating Trustee and any records of the Debtor transferred to the Liquidation Trust may be disposed of by the Liquidation Trustee at the earlier of (i) such time as the Liquidating Trustee determines, in consultation with Union Bank, that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Liquidation Trust or its Liquidation Trust Beneficiaries , after a notice of the destruction or abandonment of such books and records, and (ii) upon the termination and completion of the winding down of the Liquidation Trust.

### E.    Corporate Existence

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, the Debtor shall continue to exist after the Effective Date as a limited partnership with all the powers of a limited partnership pursuant to the applicable law in the jurisdiction in which it is incorporated or formed and pursuant to the

certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws are amended under the Plan or otherwise. To the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law). After the Effective Date, the respective certificate of incorporation and bylaws of the Debtor may be amended or modified without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. After the Effective Date, the Debtor may be disposed of, dissolved, wound down, or liquidated by the Liquidation Trustee without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

### F.    Corporate Action

The Plan will be administered by the Liquidation Trustee and all actions taken under the Plan in the name of the Debtor shall be taken through the Liquidation Trustee. Upon the Distribution or disposition of all Assets pursuant to the Plan and the Filing by the Liquidation Trustee of a certification to that effect with the Bankruptcy Court (which may be included in the application for the entry of the final decree), the Debtor shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtor or payments to be made in connection therewith, provided, however, that the Debtor may, but will not be required to, take appropriate action to dissolve under applicable law.

### G.    Section 1146 Exemption

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from the Debtor to the Liquidation Trust, or to any other Person) of property under the Plan or pursuant to: (i) the issuance, Distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtor; (ii) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (iii) the grant of Collateral as security for the Debtor's obligations under and in connection with any of the settlements set forth herein; or (iv) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and on entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Entity with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for

filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### H.    Closing the Chapter 11 Case

The Liquidation Trustee shall, promptly after the full administration of the Chapter 11 Case, File with the Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Court to close the Chapter 11 Case. Nothing in the Plan shall authorize the closing of the Chapter 11 Case effective as of a date that precedes the date any such order is entered. Any request for such relief shall be made on motion served on the U.S. Trustee, and the Court shall rule on such request after notice and a hearing. Upon Filing a motion to close the Chapter 11 Case, the Liquidation Trustee shall File a final report with respect to the Chapter 11 Case pursuant to Local Rule 3022-1.

## ARTICLE VI
## TREATMENT OF EXECUTORY CONTRACTS AND/OR UNEXPIRED LEASES

### A.    Executory Contracts and Unexpired Leases.

To the extent not previously assumed, assumed and assigned, or rejected, all Executory Contracts shall be deemed rejected by the Debtor pursuant to section 365 of the Bankruptcy Code.

### B.    Rejection Damages Bar Date.

If rejection of an Executory Contract under the Plan results in a Claim, then such Claim shall be forever barred, discharged, and expunged, and shall not be enforceable against the Debtor, its property, or the Liquidation Trustee unless a Proof of Claim is filed with the Bankruptcy Court and served on the Liquidation Trustee not later than 30 days after entry of the Confirmation Order. Any such Claim, to the extent Allowed, shall be classified as a Class 16 Claim.

### C.    Effect of Post-Confirmation Rejection.

Entry of the Confirmation Order authorizing rejection of an executory contract or unexpired lease entered into prior to the Effective Date shall result in such rejection being a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy Code.

## ARTICLE VII
## PROVISIONS GOVERNING DISTRIBUTIONS

### A.    Timing and Calculation of Amounts to Be Distributed

Unless otherwise provided in the Plan, on the initial Distribution Date (or if a Claim is not an Allowed Claim or Allowed Interest on the initial Distribution Date, on the next Distribution Date after such Claim or Interest becomes an Allowed Claim or Allowed Interest), or as soon as is reasonably practicable thereafter, each Holder of an Allowed Claim or Allowed Interests (as applicable) shall receive the full amount of the Distributions that the Plan provides for Allowed Claims or Allowed Interests (as applicable) in the applicable Class. If and to the extent that there are Disputed Claims or Disputed Interests, Distributions on account of any such Disputed Claims

or Disputed Interests shall be made pursuant to the provisions set forth in Article VIII. Except as otherwise provided in the Plan or the Global Settlement, Holders of Claims or Interests shall not be entitled to interest, dividends, or accruals on the Distributions provided for in the Plan, regardless of whether such Distributions are delivered on or at any time after the Effective Date.

### B.    All Distributions by Liquidation Trustee

In addition to the Distributions made by the Liquidation Trustee from the Liquidation Trust Assets, the Liquidation Trustee shall make all Distributions *other than* any payment pursuant to the Global Settlement that occurs prior to the Effective Date. The Liquidation Trustee is not required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Court. Additionally, if the Liquidation Trustee is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be paid from the proceeds of the Liquidation Trust Assets.

### C.    Expenses Incurred on or After the Effective Date

Except as otherwise ordered by the Court, the amount of any reasonable fees and expenses incurred by the Liquidation Trustee on or after the Effective Date (including taxes), and any reasonable compensation and expense reimbursement Claims (including reasonable attorneys' fees and expenses), made by such the Liquidation Trustee shall be paid in Cash from the proceeds of the Liquidation Trust Assets.

### D.    Delivery of Distributions and Undeliverable or Unclaimed Distributions

#### 1.    Record Date for Distribution

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making Distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date. If a Claim, other than one based on a publicly traded security, is transferred twenty (20) or fewer days before the Distribution Record Date, the Liquidation Trustee shall make Distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

#### 2.    Delivery of Distributions in General

Except as otherwise provided herein, the Liquidation Trustee, shall make Distributions to Holders of Allowed Claims and Allowed Interests (as applicable) as of the Distribution Record Date at the address for each such Holder as indicated on the Debtor's records as of the date of any such Distribution.

#### 3.    De Minimis Distributions

Notwithstanding anything to the contrary, the Liquidation Trustee shall not be required to make on account of an Allowed Claim: (i) partial distributions or payments of fractions of dollars; (ii) partial Distributions or payments of fractions of Liquidation Trust Interests; or (iii) a

Distribution if the amount to be distributed is or has an economic value of less than $100. Any funds so withheld and not distributed shall be held in reserve and distributed in subsequent Distributions. Notwithstanding the foregoing, all Cash shall be distributed in the final Distribution of the Liquidation Trust.

4.    **Undeliverable Distributions and Unclaimed Property**

In the event that any Distribution to any Holder of Allowed Claims is returned as undeliverable, no Distribution to such Holder shall be made unless and until the Liquidation Trustee has determined the then-current address of such Holder, at which time such Distribution shall be made to such Holder without interest; provided, however, that such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date. After such date, all unclaimed property or interests in property shall revert to the Liquidation Trust automatically and without need for a further order by the Court (notwithstanding any applicable federal, provincial or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder of Claims to such property or Interest in property shall be discharged and forever barred.

5.    **Surrender of Cancelled Instruments or Securities**

On the Effective Date, or as soon as reasonably practicable thereafter, each Holder of a certificate or instrument evidencing a Claim or an Interest shall be deemed to have surrendered such certificate or instrument to the Liquidation Trustee. Such surrendered certificate or instrument shall be cancelled solely with respect to the Debtor, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such certificate or instrument, including with respect to any agreement that governs the rights of the Holder of a Claim or Interest or a trustee or agent under such documents, which shall continue in effect for purposes of allowing Holders to receive Distribution under the Plan and maintaining priority of payment, and to preserve any applicable charging Liens and reimbursement and/or indemnification rights, in each case as set forth in the applicable certificates or instruments. Notwithstanding anything to the contrary herein, this paragraph shall not apply to certificates or instruments evidencing Claims or Interests that are Unimpaired under the Plan.

E.    **Manner of Payment**

All Distributions of Cash to the Holders of the applicable Allowed Claims or Interests under the Plan shall be made by the Liquidation Trustee on behalf of the Debtor or the Liquidation Trust. At the option of the Liquidation Trustee, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

F.    **Compliance with Tax Requirements**

In connection with the Plan, to the extent applicable, the Debtor, the Liquidation Trustee and any applicable withholding agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all Distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating

a portion of the Distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding Distributions pending receipt of information necessary to facilitate such Distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Liquidation Trustee or the Debtor, as applicable, reserve the right to allocate all Distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

### G.    Allocations

Distributions with respect to Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

### H.    No Post-Petition Date Interest on Claims

Unless otherwise specifically provided for in the Plan, the Confirmation Order, or required by applicable bankruptcy and non-bankruptcy law, post-petition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on such Claim or right. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final Distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes and Allowed Claim.

### I.    Setoffs, Offsets, and Recoupments

Except as expressly provided in the Plan, the Liquidation Trustee may, pursuant to section 553 of the Bankruptcy Code, set off, offset, or recoup against any Distributions to be made on account of any Allowed Claim, any and all Claims, rights, and Causes of Action that such Liquidation Trustee may hold against the Holder of such Allowed Claim to the extent such setoff, offset, or recoupment is either (1) agreed in amount between the Liquidation Trustee and the Holder of the Allowed Claim; or (2) otherwise adjudicated by the Court or another court of competent jurisdiction by Final Order; provided, however, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidation Trustee or its successor of any and all Claims, rights, and Causes of Action that the Liquidation Trustee or its successor may possess against the applicable Holder. In no event shall any Holder of a Claim be entitled to setoff, offset, or recoup, such Claim against any Claim, right, or Cause of Action of the Debtor or the Liquidation Trustee, as applicable, unless such Holder (i) actually has performed such recoupment and provided notice thereof in writing in accordance with Article XIII.G on or before the Effective Date and (ii) received a Final Order prior to the Effective Date from the Bankruptcy Court authorizing such recoupment, offset, or setoff, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

### J.    Claims Paid or Payable by Third Parties

### 1.    Claims Paid by Third Parties

As applicable, the Liquidation Trustee or the Debtor shall reduce a Claim in full, and such Claim shall be Disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtor. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a Distribution on account of such Claim and receives payment from a party that is not the Debtor or Liquidation Trustee on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the Distribution to the Liquidation Trustee, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Distribution under the Plan. The failure of such Holder to timely repay or return such Distribution shall result in the Holder owing the Liquidation Trust annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen (14) day grace period specified above until the amount is repaid.

2.      **Claims Payable by Third Parties**

No Distributions shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's Insurance Contracts until the Holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Contract. To the extent that one or more of the Debtor's Insurers agrees to pay in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction or otherwise settled), then immediately upon such Insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Court.

3.      **Applicability of Insurance Policies**

Except as otherwise provided in the Plan and the Global Settlement, payments to Holders of Claims covered by Insurance Contracts shall be in accordance with the provisions of the applicable Insurance Contract, the Global Settlement, and the Plan. Nothing contained in the Plan or the Global Settlement shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Entity may hold against any other Entity, including Insurers under any Insurance Contract, nor shall anything contained herein constitute or be deemed a waiver by such Insurers of any defenses, including coverage defenses, held by such Insurers.

The XL Policies, the Payment Plan, and the Assumption Order are fully incorporated into and are not altered, amended, modified or affected in any way by the Plan or the Confirmation Order, and the Assumption Order is and shall remain binding on the Debtor, its Estate, and its successors and assigns, including but not limited to any trustee that may be appointed pursuant to the Bankruptcy Code.

<h2 style="text-align:center">ARTICLE VIII<br>PROCEDURES FOR RESOLVING CONTINGENT,<br>UNLIQUIDATED, AND DISPUTED CLAIMS</h2>

### A.      Allowance of Claims

Except as otherwise set forth in the Plan and the Global Settlement, after the Effective Date, the Liquidation Trustee shall have and retain any and all rights and defenses the Debtor had with

respect to any Claim immediately before the Effective Date, including the Causes of Action retained pursuant to Article V.C. Except as specifically provided in the Plan, the Global Settlement, or an order entered by the Court in the Chapter 11 Case, no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed in accordance with the Plan.

### B.     Claims Administration Responsibilities

Except as otherwise specifically provided in the Plan, after the Effective Date, the Liquidation Trustee may: (1) File, withdraw, or litigate to judgment, objections to Claims; (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Court. The Liquidation Trustee, shall reconcile and oversee objections with respect to General Unsecured Claims, shall reconcile and oversee objections with respect to Administrative Expense Claims and Priority Claims, and shall reconcile and oversee objections to all other Claims.

### C.     Adjustment to Claims Without Objection

Any duplicate Claim or any Claim that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Liquidation Trustee without such Entity having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Court.

### D.     Time to File Objections to Claims

Except to the extent Claims are Allowed under the terms of the Plan, any objections to Claims shall be served and Filed by the Claims Objection Deadline. All Claims not objected to by the Claims Objection Deadline shall be deemed Allowed unless such deadline is extended upon approval of the Court.

### E.     Disallowance of Claims or Interests

All Claims (a) objected to, sued, or otherwise challenged by the Liquidation Trustee or (b) from which property is sought by the Debtor or Liquidation Trustee under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Liquidation Trustee or the Debtor, as applicable, allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be Disallowed pursuant to section 502(d) of the Bankruptcy Code until the Claims are deemed Allowed by Final Order.

Except as provided herein or otherwise agreed to by the Liquidation Trustee in its sole discretion, any and all Claims evidenced by Proofs of Claims Filed after the Bar Date shall be deemed Disallowed as of the Effective Date without any further notice to or action, order, or approval of the Court, and Holders of such Claims may not receive any Distributions on account of such Claims, unless such late Proof of Claim has been deemed timely-Filed by a Final Order.

## F.        Estimation of Claims

The Liquidation Trustee may request, at any time, that the Bankruptcy Court (or the District Court, if applicable) estimate any Claim not expressly Allowed by the terms of the Plan and otherwise subject to estimation under section 502(c) of the Bankruptcy Code and for which the Debtor may be liable under the Plan, including any Claim for taxes, to the extent permitted by section 502(c) of the Bankruptcy Code, regardless of whether any party in interest previously objected to such Claim, and the Bankruptcy Court (or the District Court, if applicable) will retain jurisdiction to estimate any Claim pursuant to section 502(c) of the Bankruptcy Code at any time prior to the time that such Claim becomes an Allowed Claim. If the Bankruptcy Court (or the District Court, if applicable) estimates any contingent or unliquidated Claim, the estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court (or the District Court, if applicable). The foregoing objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated by the Bankruptcy Court (or the District Court, if applicable) and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court (or the District Court, if applicable).

## G.        No Recourse

Notwithstanding that the Allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount for which after application of the payment priorities established by the Plan there is insufficient value to provide a recovery equal to that received by other Holders of Allowed Claims in the respective Class, no Claim Holder shall have recourse against the Debtor, the Estate, the Liquidation Trustee, or any of their respective Professional Persons, consultants, officers, directors, or members or their successors or assigns, or any of their respective property. Except as specifically stated otherwise in the Plan, nothing in the Plan shall modify any right of a Holder of a Claim under section 502(j) of the Bankruptcy Code.

THE ESTIMATION OF CLAIMS AND ESTABLISHMENT OF RESERVES UNDER THE PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS IF THE ESTIMATION IS MADE SOLELY FOR THE PURPOSE OF ESTIMATING A MAXIMUM LIABILITY FOR RESERVE PURPOSES, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.

## H.        Amendments to Proofs of Claim

A Proof of Claim or Interest may not be Filed or amended without prior authorization of the Court or the Liquidation Trustee after the Bar Date, and any such new or amended Proof of Claim Filed that is not so authorized by the Bankruptcy Court through the entry of a Final Order before it is Filed shall be deemed Disallowed in full without any further action.

## I.        No Transfers of Claims After Effective Date

After the Effective Date, no Holder of a Claim may sell, transfer, encumber, pledge or assign all or any part of its Claim except (1) to the spouse of such Holder; (2) by devise or bequest;

or (3) by operation of law. Any purported sale, transfer, encumbrance, pledge or assignment by a Holder of a Claim in violation of this Article VIII.I shall be null and void.

### J.    No Distributions Pending Allowance

Notwithstanding any other provision of the Plan, if any portion of a Claim is a Disputed Claim, as applicable, no payment or Distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim; provided, however, that if only the Allowed amount of an otherwise valid Claim is Disputed, such Claim shall be deemed Allowed in the amount not Disputed and payment or Distribution shall be made on account of such undisputed amount.

### K.    Distributions After Allowance

If a Disputed Claim ultimately becomes an Allowed Claim, Distributions shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of the Court allowing any Disputed Claim becomes a Final Order, the Liquidation Trustee shall provide to the Holder of such Claim the Distribution to which such Holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim.

### ARTICLE IX
### SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

### A.    Releases by the Debtor

EXCEPT AS PROVIDED FOR IN THE PLAN OR THE CONFIRMATION ORDER, PURSUANT TO SECTION 1123(B) OF THE BANKRUPTCY CODE, FOR GOOD AND VALUABLE CONSIDERATION, ON AND AFTER THE EFFECTIVE DATE, EACH RELEASED PARTY IS DEEMED RELEASED AND DISCHARGED BY THE DEBTOR AND ITS ESTATE (AND ANY ENTITY SEEKING TO EXERCISE RIGHTS OF THE ESTATE) FROM ANY AND ALL CAUSES OF ACTION, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED ON BEHALF OF THE DEBTOR, THAT THE DEBTOR OR ITS ESTATE WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM AGAINST, OR INTEREST IN, A DEBTOR OR OTHER ENTITY, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTOR, THE DEBTOR'S IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, THE LIQUIDATION CONTEMPLATED BY THE PLAN, THE SALE, THE CHAPTER 11 CASE, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE DISCLOSURE STATEMENT, THE PLAN, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION THERETO, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR UPON ANY OTHER ACT OR OMISSION, TRANSACTION,

AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN OR THE GLOBAL SETTLEMENT, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THE PLAN.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING OR ANY OTHER PROVISION OF THE PLAN, THE RELEASES CONTAINED IN THE PLAN DO NOT (1) RELEASE ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE SALE, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN, (2) RELEASE PROFESSIONAL CLAIMS, OR (3) AFFECT THE RIGHTS OF HOLDERS OF ALLOWED CLAIMS AND INTERESTS TO RECEIVE DISTRIBUTIONS UNDER THE PLAN. FURTHER, NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE PLAN, THE RELEASE, INJUNCTION, EXCULPATION, AND OTHER PROVISIONS WITH SIMILAR EFFECT IN THE PLAN SHALL EXCLUDE (AND NOTHING HEREIN SHALL RELEASE, WAIVE OR DISCHARGE): (A) ANY CLAIM, CAUSE OF ACTION, OR OBLIGATION UNDER THE PLAN, (B) ANY DOCUMENT, AGREEMENT, OR TRANSACTION ENTERED INTO PURSUANT TO THE PLAN; OR (C) ANY CLAIMS OR CAUSES OF ACTION OF THE DEBTOR THAT ARE EXPRESSLY PRESERVED AS SET FORTH IN THE PLAN, THE DISCLOSURE STATEMENT, AND THE GLOBAL SETTLEMENT, INCLUDING, WITHOUT LIMITATION, THE RETAINED CAUSES OF ACTION.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE DEBTOR RELEASE SET FORTH IN THIS ARTICLE, WHICH INCLUDES BY REFERENCE EACH RELATED PROVISION AND DEFINITION IN THE PLAN, AND FURTHER, SHALL CONSTITUTE THE COURT'S FINDING THAT THE DEBTOR RELEASE IS: (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, INCLUDING, WITHOUT LIMITATION, THE RELEASED PARTIES' CONTRIBUTIONS TO FACILITATING THE IMPLEMENTATION OF THE PLAN; (2) A GOOD-FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE DEBTOR RELEASE; (3) IN THE BEST INTERESTS OF THE DEBTOR AND ITS ESTATE; (4) FAIR, EQUITABLE, AND REASONABLE; (5) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (6) A BAR TO THE DEBTOR OR THE ESTATE (AND ANY ENTITY SEEKING TO EXERCISE RIGHTS OF THE ESTATE) ASSERTING ANY CLAIM OR CAUSE OF ACTION AGAINST ANY RELEASED PARTY OR RELEASED PURSUANT TO THE DEBTOR RELEASE.

## B. Consensual Releases by the Releasing Parties

EXCEPT AS PROVIDED FOR IN THE PLAN OR THE CONFIRMATION ORDER, AS OF THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION, INCLUDING THE OBLIGATIONS OF THE DEBTOR UNDER THE PLAN AND THE CONTRIBUTIONS OF THE RELEASED PARTIES TO FACILITATE AND IMPLEMENT

THE PLAN, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, AS SUCH LAW MAY BE EXTENDED OR INTEGRATED AFTER THE EFFECTIVE DATE, EACH RELEASING PARTY IS DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER, RELEASED AND DISCHARGED EACH RELEASED PARTY FROM ANY AND ALL CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED ON BEHALF OF THE DEBTOR, THAT SUCH PERSON OR ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTOR, THE DEBTOR'S IN- OR OUT-OF- COURT RESTRUCTURING EFFORTS, THE REORGANIZATION CONTEMPLATED BY THE PLAN, THE SALE, THE CHAPTER 11 CASE, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE DISCLOSURE STATEMENT OR THE PLAN, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION THERETO, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE OBLIGATIONS OF ANY PERSON OR ENTITY UNDER THE PLAN, THE GLOBAL SETTLEMENT, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THE PLAN. THE BALLOT OR AN OPT-OUT FORM, AS APPLICABLE, WILL CONTAIN AN OPT-OUT ELECTION, AND ANY HOLDER OF A CLAIM OR INTEREST THAT DESIGNATES ITSELF AS "OPTING-OUT" SHALL NOT BE A RELEASING PARTY.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING OR ANY OTHER PROVISION IN THE PLAN, THE RELEASES CONTAINED IN THE PLAN DO NOT (1) RELEASE ANY POST-EFFECTIVE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE SALE, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN OR THE GLOBAL SETTLEMENT OR (2) AFFECT THE RIGHTS OF HOLDERS OF ALLOWED CLAIMS AND INTERESTS TO RECEIVE DISTRIBUTIONS UNDER THE PLAN. FURTHER, NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE PLAN, THE RELEASE, INJUNCTION, EXCULPATION, AND OTHER PROVISIONS WITH SIMILAR EFFECT IN THE PLAN SHALL EXCLUDE (AND NOTHING HEREIN SHALL RELEASE, WAIVE, OR DISCHARGE) (1) ANY CLAIM, CAUSE OF ACTION, OR OBLIGATION UNDER THE PLAN; (2) ANY DOCUMENT, AGREEMENT, OR TRANSACTION ENTERED INTO PURSUANT TO THE PLAN; OR (3) ANY CLAIMS OR CAUSES OF ACTION THAT ARE EXPRESSLY PRESERVED AS SET FORTH IN THE PLAN, THE DISCLOSURE STATEMENT, AND THE GLOBAL SETTLEMENT, INCLUDING, WITHOUT LIMITATION, THE RETAINED CAUSES OF ACTION.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE THIRD-PARTY RELEASE SET FORTH IN THIS ARTICLE IX.B, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN, AND, FURTHER, SHALL CONSTITUTE THE COURT'S FINDING THAT THE THIRD PARTY RELEASE IS: (1) CONSENSUAL; (2) ESSENTIAL TO THE CONFIRMATION OF THE PLAN; (3) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES; (4) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD PARTY RELEASE; (5) IN THE BEST INTERESTS OF THE DEBTOR AND ITS ESTATE; (6) FAIR, EQUITABLE, AND REASONABLE; (7) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (8) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD PARTY RELEASE.

## C.   Exculpation

EXCEPT AS PROVIDED FOR IN THE PLAN OR THE CONFIRMATION ORDER, NO EXCULPATED PARTY SHALL HAVE OR INCUR, AND EACH EXCULPATED PARTY IS RELEASED AND EXCULPATED FROM ANY CAUSE OF ACTION FOR ANY CLAIM RELATED TO ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF, THE CHAPTER 11 CASE, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE DISCLOSURE STATEMENT, THE PLAN, OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE DISCLOSURE STATEMENT OR THE PLAN, THE FILING OF THE CHAPTER 11 CASE, THE PURSUIT OF CONFIRMATION, OR THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE DISTRIBUTION OF PROPERTY UNDER THE PLAN, OR ANY OTHER RELATED AGREEMENT, EXCEPT FOR CLAIMS RELATED TO ANY ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD, GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, BUT IN ALL RESPECTS SUCH PERSONS OR ENTITIES SHALL BE ENTITLED TO REASONABLY RELY ON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN.

THE EXCULPATED PARTIES AND PARTIES COVERED BY SECTION 1125(E) OF THE BANKRUPTCY CODE HAVE, AND UPON CONSUMMATION OF THE PLAN SHALL BE DEEMED TO HAVE, PARTICIPATED IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE LAWS WITH REGARD TO THE SOLICITATION OF VOTES AND DISTRIBUTION OF CONSIDERATION PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS SHALL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN. EACH OF THE EXCULPATED PARTIES AND PARTIES COVERED BY SECTION 1125(E) OF THE

70

BANKRUPTCY CODE SHALL BE ENTITLED TO AND GRANTED THE PROTECTIONS AND BENEFITS OF SECTION 1125(E) OF THE BANKRUPTCY CODE.

### D.    Releases of Union Bank

PURSUANT TO SECTION 1123(B) OF THE BANKRUPTCY CODE, AND AS FURTHER PROVIDED IN THE GLOBAL SETTLEMENT, AS OF THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION, ON AND AFTER THE EFFECTIVE DATE, UNION BANK IS DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER, RELEASED AND DISCHARGED BY THE DEBTOR RELEASING PARTIES, THE COMMITTEE, AND EQUITY FROM ANY AND ALL CLAIMS OR CAUSES OF ACTION, KNOWN OR UNKNOWN, INCLUDING, WITHOUT LIMITATION, ANY DERIVATIVE CLAIMS, ASSERTED ON BEHALF OF THE DEBTOR RELEASING PARTIES, THE COMMITTEE, OR EQUITY, THAT THE DEBTOR RELEASING PARTIES, THE COMMITTEE, OR EQUITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM AGAINST, OR INTEREST IN, THE DEBTOR RELEASING PARTIES, THE COMMITTEE, OR EQUITY, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN  WHOLE OR IN PART, UNION BANK'S PREPETITION OR POSTPETITION TRANSACTIONS WITH THE DEBTOR RELEASING PARTIES, THE COMMITTEE, OR EQUITY, THE DEBTOR'S PREPETITION OR POSTPETITION IN- OR - OUT-OF-COURT RESTRUCTURING EFFORTS, THE LIQUIDATION CONTEMPLATED BY THE PLAN, THE SALE, THE CHAPTER 11 CASE, THE GLOBAL SETTLEMENT, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE DISCLOSURE STATEMENT, THE PLAN, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION THERETO, INCLUDING THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE. FOR THE AVOIDANCE OF DOUBT, THE FOREGOING SHALL INCLUDE ANY CLAIMS OR CAUSES OF ACTION FOR ALLEGED LENDER-LIABILITY, EQUITABLE SUBORDINATION, SETOFFS, AND SURCHARGES. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE OBLIGATIONS OF UNION BANK UNDER THE PLAN OR THE GLOBAL SETTLEMENT, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THE PLAN.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF (A) THE RELEASE SET FORTH IN THIS ARTICLE IX.D, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN, AND (B) THE RELEASES CONTAINED IN THE GLOBAL SETTLEMENT (TOGETHER, THE "UNION BANK RELEASES"), AND FURTHER, SHALL CONSTITUTE THE COURT'S FINDING THAT UNION BANK RELEASES ARE (1) IN EXCHANGE FOR THE GOOD AND

VALUABLE CONSIDERATION PROVIDED BY UNION BANK, INCLUDING, WITHOUT LIMITATION, UNION BANK'S CONTRIBUTIONS TO FACILITATING THE RESTRUCTURING AND IMPLEMENTATION OF THE PLAN; (2) A GOOD-FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE UNION BANK RELEASES; (3) IN THE BEST INTERESTS OF THE DEBTOR AND ITS ESTATE; (4) FAIR, EQUITABLE, AND REASONABLE; (5) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (6) A BAR TO THE DEBTOR RELEASING PARTIES, THE COMMITTEE, AND EQUITY (AND ANY ENTITY SEEKING TO EXERCISE RIGHTS OF SUCH PARTIES) ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE UNION BANK RELEASES.

### E.    Union Bank Release of Equity

AS OF THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION, INCLUDING (A) PAYMENT IN THE TOTAL AMOUNT OF $5,000,000.00 TO UNION BANK, CONSISTING OF $3,850,000.00 THAT WAS PAID ON THE SALE CLOSING DATE AND $1,150,000.00 TO BE PAID ON THE EARLIER OF (1) SEPTEMBER 30, 2022, AND (2) THE EFFECTIVE DATE, AND (B) THE COURT'S APPROVAL OF THE UNION BANK RELEASES IN ARTICLE IX.D ABOVE ((A) AND (B) TOGETHER, THE "EQUITY RELEASE CONDITIONS PRECEDENT"), AND IN ACCORDANCE WITH THE TERMS OF THE GLOBAL SETTLEMENT, UNION BANK IS DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER, RELEASED AND DISCHARGED EQUITY FROM ANY AND ALL CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED ON BEHALF OF THE DEBTOR, THAT UNION BANK WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED ON OR RELATING TO THE DEBTOR, ANY CLAIM OF EQUITY, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTOR, THE DEBTOR'S IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, THE REORGANIZATION CONTEMPLATED BY THE PLAN, THE SALE, THE CHAPTER 11 CASE, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE DISCLOSURE STATEMENT OR THE PLAN, THE PURSUIT OF CONFIRMATION, THE UNION BANK GUARANTY, OR ANY RESTRUCTURING OR SALE TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION THERETO, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE RELATING TO THE UNION BANK GUARANTY TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE; PROVIDED, HOWEVER, NO SUCH RELEASE SHALL BE GRANTED BY UNION BANK TO THE EXTENT THE EQUITY RELEASE CONDITIONS PRECEDENT ARE NOT SATISFIED PURSUANT TO THE TERMS OF THE PLAN AND THE GLOBAL SETTLEMENT. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE OBLIGATIONS OF EQUITY UNDER THE PLAN OR THE GLOBAL SETTLEMENT, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THE PLAN.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING OR ANY OTHER PROVISION IN THE PLAN, THE RELEASES CONTAINED IN THE PLAN DO NOT (1) RELEASE ANY POST-EFFECTIVE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE SALE, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN OR THE GLOBAL SETTLEMENT OR (2) AFFECT THE RIGHTS OF HOLDERS OF ALLOWED CLAIMS AND INTERESTS TO RECEIVE DISTRIBUTIONS UNDER THE PLAN. FURTHER, NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE PLAN, THE RELEASE, INJUNCTION, EXCULPATION, AND OTHER PROVISIONS WITH SIMILAR EFFECT IN THE PLAN SHALL EXCLUDE (AND NOTHING HEREIN SHALL RELEASE, WAIVE, OR DISCHARGE) (1) ANY CLAIM, CAUSE OF ACTION, OR OBLIGATION UNDER THE PLAN; (2) ANY DOCUMENT, AGREEMENT, OR TRANSACTION ENTERED INTO PURSUANT TO THE PLAN; OR (3) ANY CLAIMS OR CAUSES OF ACTION THAT ARE EXPRESSLY PRESERVED AS SET FORTH IN THE PLAN, THE DISCLOSURE STATEMENT, AND THE GLOBAL SETTLEMENT, INCLUDING, WITHOUT LIMITATION, THE RETAINED CAUSES OF ACTION.

## F.    Injunction

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, THE GLOBAL SETTLEMENT, THE CONFIRMATION ORDER, OR FOR OBLIGATIONS ISSUED OR REQUIRED TO BE PAID PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER, ALL PERSONS OR ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CAUSES OF ACTION, CLAIMS, OR INTERESTS THAT HAVE BEEN RELEASED, DISCHARGED, SETTLED, OR ARE SUBJECT TO EXCULPATION, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST THE PROTECTED PARTIES: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, INTERESTS, OR CAUSES OF ACTION; (2) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CAUSES OF ACTION, CLAIMS, OR INTERESTS; (3) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH PERSONS OR ENTITIES OR THE PROPERTY OR THE ESTATE OF SUCH PERSONS OR ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CAUSES OF ACTION, CLAIMS, OR INTERESTS; (4) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT, OR OTHER SIMILAR LEGAL OR EQUITABLE RIGHT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM SUCH PERSONS OR ENTITIES OR AGAINST THE PROPERTY OF SUCH PERSONS OR ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, INTERESTS, OR CAUSES OF ACTION, UNLESS SUCH HOLDER HAS FILED A MOTION REQUESTING THE RIGHT TO PERFORM SUCH SETOFF ON OR BEFORE THE EFFECTIVE DATE, AND NOTWITHSTANDING AN INDICATION OF A CAUSES OF ACTION, CLAIM, OR INTEREST OR OTHERWISE THAT SUCH HOLDER ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (5) COMMENCING OR

CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CAUSES OF ACTION, CLAIMS, OR INTERESTS RELEASED, DISCHARGED, OR SETTLED PURSUANT TO THE PLAN.

UPON ENTRY OF THE CONFIRMATION ORDER, ALL HOLDERS OF CLAIMS AND INTERESTS AND THEIR RESPECTIVE CURRENT AND FORMER EMPLOYEES, AGENTS, OFFICERS, DIRECTORS, PRINCIPALS, AND DIRECT AND INDIRECT AFFILIATES SHALL BE ENJOINED FROM TAKING ANY ACTIONS TO INTERFERE WITH THE IMPLEMENTATION OR CONSUMMATION OF THE PLAN. EACH HOLDER OF AN ALLOWED CLAIM OR ALLOWED INTEREST, AS APPLICABLE, BY ACCEPTING, OR BEING ELIGIBLE TO ACCEPT, DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIM OR INTEREST, AS APPLICABLE, PURSUANT TO THE PLAN, SHALL BE DEEMED TO HAVE CONSENTED TO THE INJUNCTION PROVISIONS SET FORTH IN THIS ARTICLE.

NO ENJOINED PARTY MAY COMMENCE OR PURSUE A CLAIM OR CAUSE OF ACTION OF ANY KIND AGAINST ANY PROTECTED PARTY THAT AROSE OR ARISES FROM OR IS RELATED TO THE CHAPTER 11 CASE, THE NEGOTIATION OF THE PLAN, THE ADMINISTRATION OF THE PLAN OR PROPERTY TO BE DISTRIBUTED UNDER THE PLAN, THE WIND DOWN OF THE BUSINESS OF THE DEBTOR, THE ADMINISTRATION OF THE LIQUIDATION TRUST, OR THE TRANSACTIONS IN FURTHERANCE OF THE FOREGOING WITHOUT THE BANKRUPTCY COURT (I) FIRST DETERMINING, AFTER NOTICE AND A HEARING, THAT SUCH CLAIM OR CAUSE OF ACTION REPRESENTS A COLORABLE CLAIM OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, NEGLIGENCE, BAD FAITH, CRIMINAL MISCONDUCT, WILLFUL MISCONDUCT, FRAUD, OR GROSS NEGLIGENCE AGAINST A PROTECTED PARTY AND (II) SPECIFICALLY AUTHORIZING SUCH ENJOINED PARTY TO BRING SUCH CLAIM OR CAUSE OF ACTION AGAINST ANY SUCH PROTECTED PARTY. THE BANKRUPTCY COURT WILL HAVE SOLE AND EXCLUSIVE JURISDICTION TO DETERMINE WHETHER A CLAIM OR CAUSE OF ACTION IS COLORABLE AND, ONLY TO THE EXTENT LEGALLY PERMISSIBLE AND AS PROVIDED FOR IN ARTICLE XII, SHALL HAVE JURISDICTION TO ADJUDICATE THE UNDERLYING COLORABLE CLAIM OR CAUSE OF ACTION.

## G.    Reimbursement, Contribution, and Indemnification Claims

Until such time as a Contingent Claim or a Contingent portion of an Allowed Claim becomes fixed or absolute or is a Disallowed Claim, such Claim will be treated as a Disputed Claim for all purposes related to Distributions under the Plan. The holder of a Contingent Claim will only be entitled to a Distribution under the Plan when and if such Contingent Claim becomes an Allowed Claim, subject, however, to section 502(e) of the Bankruptcy, and, provided that if such Contingent Claim is for reimbursement, indemnification, or contribution at the time of allowance or disallowance, it will be a Disallowed Claim pursuant to Bankruptcy Code § 502(e)(1)(B), notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date (1) such Claim has been adjudicated as non-contingent; or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final

Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

## ARTICLE X
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

**A.      Conditions to Confirmation**

The following are conditions precedent to the occurrence of the Confirmation Date, each of which must be satisfied:

1.      An order finding that the Disclosure Statement contains adequate information pursuant to Section 1125 of the Bankruptcy Code shall have been entered; and

2.      The Confirmation Order is in form and substance reasonably acceptable to the Debtor, the Committee, the Bank, and Equity.

**B.      Conditions Precedent to the Effective Date**

The following conditions precedent must be satisfied on or prior to the Effective Date:

1.      The Confirmation Order shall be a Final Order; it must be reasonably acceptable in form and substance to the Debtor, the Committee, the Bank, and Equity, and it shall:

a.      authorize the Debtor to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, settlements, and other agreements or documents created in connection with the Plan;

b.      decree that the provisions of the Confirmation Order and the Plan are nonseverable and mutually dependent;

c.      authorize the Debtor, as applicable/necessary, to: (i) make all Distributions as required under the Plan; and (iii) enter into any agreements as set forth in the Plan and Plan Supplement, including the Global Settlement;

d.      authorize the implementation of the Plan in accordance with its terms; and

e.      provide that, pursuant to section 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed

in connection with any disposition or transfer of Assets contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

2.    The Liquidation Trust shall have received the Liquidation Trust Seed Funding.

3.    Union Bank shall have received the Union Bank Distribution.

4.    The Debtor shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan.

5.    The final versions of the Plan Supplement and all of the schedules, documents, annexes, and exhibits contained therein shall have been Filed in a manner consistent in all material respects with the Plan in form and substance reasonably acceptable to the Debtor.

6.    The Plan Supplement documents shall have been executed by the applicable parties thereto and all conditions precedent to the effectiveness of the applicable Plan Supplement documents shall have been satisfied or waived in accordance with the terms of such Plan Supplement documents.

## C.    Effect of Failure of Conditions

If Consummation does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by the Debtor, or Claims against, or Interests in, the Debtor; (2) prejudice in any manner the rights of the Debtor, any Holders of Claims or Interests, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtor, any Holders of Claims or Interests, or any other Entity.

## D.    Substantial Consummation

"Substantial Consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

## ARTICLE XI
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

## A.    Modification and Amendments

Except as otherwise specifically provided in the Plan, the Debtor reserves the right to modify the Plan with the prior written consent of Union Bank, the Committee, and Equity, which such consent shall not be unreasonably withheld, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan; provided, however, no such modification shall be inconsistent with the terms of the Global Settlement.

Subject to those restrictions on modifications set forth in the Plan and the requirements of section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, the Debtor expressly reserves its rights to seek to alter, amend, or modify the Plan, one or more times, after Confirmation, and, to the extent necessary may initiate proceedings in the Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

### B.    Effect of Confirmation on Modifications

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

### C.    Revocation or Withdrawal of Plan

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date consistent with its fiduciary duties. If the Debtor revokes or withdraws the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts and/or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Entity.

## ARTICLE XII
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Court shall retain jurisdiction over all matters arising out of, or relating to, the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

A.    allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

B.    decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

C.    resolve any matters related to: (1) the assumption, assumption and assignment, or rejection of any Executory Contract and/or Unexpired Lease to which the Debtor is party or with respect to which the Debtor may be liable and to hear, determine, and, if necessary, liquidate, any

Claims arising therefrom, including Cures pursuant to section 365 of the Bankruptcy Code; (2) any potential contractual obligation under any Executory Contract and/or Unexpired Lease that is assumed; (3) the Debtor or Liquidation Trustee amending, modifying, or supplementing, after the Effective Date, pursuant to Article VI hereof, any Executory Contracts to the list of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (4) any dispute regarding whether a contract is or was executory or expired;

D.      ensure that Distributions to Holders of Allowed Claims and Allowed Interests (as applicable) are accomplished pursuant to the provisions of the Plan;

E.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

F.      adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

G.      adjudicate, decide, or resolve any and all matters related to the Global Settlement;

H.      enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement, except to the extent that a Plan Supplement document provides for exclusive jurisdiction and venue in another forum;

I.      enter and enforce any order for the sale of property pursuant to sections 1123, or 1146(a) of the Bankruptcy Code;

J.      resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

K.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation or enforcement of the Plan;

L.      resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, exculpations, and other provisions contained in Article IX hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

M.      resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of Distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VII.I hereof;

N.      enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

O.      determine any other matters that may arise in connection with or relate to the Plan, the Plan Supplement, the Disclosure Statement, the Sale Order, if applicable, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement, except to the extent that any Plan Supplement document provide for exclusive jurisdiction and venue in another forum;

P.      enter an order concluding or closing the Chapter 11 Case;

Q.      adjudicate any and all disputes arising from or relating to Distributions under the Plan;

R.      consider any modifications of the Plan, to Cure any defect or omission, or to reconcile any inconsistency in any Court order, including the Confirmation Order;

S.      determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

T.      hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan, except to the extent that any Plan Supplement document provide for exclusive jurisdiction and venue in another forum;

U.      hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

V.      hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in the Plan, including under Article IX hereof;

W.      enforce all orders previously entered by the Court; and

X.      hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

### A.      Immediate Binding Effect

Subject to Article X.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan (including, the documents and instruments contained in the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtor, any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and/or Unexpired Leases with the Debtor.

### B.    Additional Documents

On or before the Effective Date, the Debtor may File with the Court such agreements and other documents as may be necessary to effectuate and further evidence the terms and conditions of the Plan. The Debtor and all Holders of Claims orInterests receiving Distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### C.    Payment of Statutory Fees

All fees payable to the U.S. Trustee under 28 U.S.C. section 1930(a)(6) (including interest under31 U.S.C. section 3717) as of the Confirmation Date will be paid on the Effective Date or as soon as reasonably practicable thereafter. Notwithstanding anything to the contrary in the Plan, such fees are not subject to an allowance procedure under 11 U.S.C. section 503(b), nor is the U.S. Trustee required to File a request for payment of such fees.

Following Confirmation, the Liquidation Trustee shall not be required to File with the Bankruptcy Court quarterly operating reports nor pay U.S. Trustee fees on account of Liquidation Trust Assets and none shall be owed by the Liquidation Trust.

### D.    Reservation of Rights

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Court shall enter the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

### E.    Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, manager, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

### F.    Notice of Effective Date

Within a reasonable time following the Effective Date, the Debtor shall File a notice of the occurrence of the Effective Date of the Plan in accordance with the Bankruptcy Rules and orders of the Bankruptcy Court.

### G.    Notices

All notices, requests, and demands to or upon the Debtor to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be

deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

| Debtor | Counsel to the Debtor |
|---|---|
| Red River Waste Solutions, LP<br>CRS Capstone Partners LLC<br>500 N. Akard Street, Suite 2350<br>Dallas, Texas 75201<br>Attention: James Calandra | McDERMOTT WILL & EMERY LLP<br>2501 North Harwood Street, Suite 1900<br>Dallas, Texas 75201<br>Attention: Marcus A. Helt, Jane Gerber<br>mhelt@mwe.com, jagerber@mwe.com |
| **U.S. Trustee** | |
| Office of the United States Trustee<br>Earle Cabell Federal Building<br>1100 Commerce Street, Rm. 976<br>Dallas, TX 75242<br>Attention: Erin Marie Schmidt | |

After the Effective Date, Entities that have received documents pursuant to Bankruptcy Rule 2002 must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Liquidation Trustee is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

### H.    Term of Injunctions or Stays

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in this Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court shall remain in full force and effect until the Chapter 11 Case is closed. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

### I.    Entire Agreement

Except as otherwise indicated, the Plan (including, the documents and instruments in the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

### J.    Exhibits and Annexes

All exhibits, annexes, and documents attached hereto or included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits, annexes, and documents are Filed, copies of such exhibits, annexes, and documents shall be available upon written request to the Debtor's counsel at the address above or by downloading

such exhibits, annexes, and documents from the Debtor's restructuring website at
https://cases.stretto.com/redriverwastesolutions/ or the Court's website at
www.txnb.uscourts.gov. To the extent any exhibit, annex, or document is inconsistent with the
terms of the Plan, unless otherwise ordered by the Court or otherwise specifically provided for in
such exhibit, annex, or document, the non-exhibit, non-annex, or non-document portion of the Plan
shall control.

### K.    Nonseverability of Plan Provisions

If prior to Confirmation, any term or provision of the Plan is held by the Court to be invalid,
void, or unenforceable, the Court shall have the power to alter and interpret such term or provision
to make it valid or enforceable to the maximum extent practicable, consistent with the original
purpose of the term or provision held to be invalid, void, or unenforceable, and such term or
provision shall then be applicable as altered or interpreted. Notwithstanding any such holding,
alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in
full force and effect and will in no way be affected, Impaired, or invalidated by such holding,
alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and
shall provide that each term and provision of the Plan, as it may have been altered or interpreted
in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to
the Plan and may not be deleted or modified without the Debtor's consent; and (3) nonseverable
and mutually dependent.

### L.    Votes Solicited in Good Faith

Upon entry of the Confirmation Order, the Debtor will be deemed to have solicited votes
on the Plan in good faith and in compliance with section 1125(g) of the Bankruptcy Code, and
pursuant to section 1125(e) of the Bankruptcy Code, the Debtor and each of its respective
Affiliates, agents, representatives, members, principals, unitholders, officers, directors,employees,
advisors, and attorneys will be deemed to have participated in good faith and in compliance with
the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under
the Plan and any previous Plan, and, therefore, neither any of such parties or individuals or the
Debtor will have any liability for the violation of any applicable law, rule, or regulation governing
the solicitation of votes on the Plan or the offer, issuance, sale,or purchase of the Securities offered
and sold under the Plan and any previous Plan.

### M.    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy
Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas,
without giving effect to the principles of conflict of laws, shall govern the rights, obligations,
construction, and implementation of the Plan, any agreements, documents, instruments, or
contracts executed or entered into in connection with the Plan (except as otherwise set forth in
those agreements, in which case the governing law of such agreement shall control), and corporate
governance matters.

### N.    Dissolution of Statutory Committees

Following the Effective Date, the Committee shall remain in place with respect to the Debtor solely for the purpose of addressing (a) all final fee applications for all Professionals, and (b) the resolution of any appeals of the Confirmation Order. Upon the dissolution of the Committee, the members of the Committee and their respective Professionals will cease to have any duty, obligation, or role arising from or related to the Chapter 11 Case and shall be released and discharged from all rights and duties from or related to the Chapter 11 Case.

The Liquidation Trustee shall constitute a successor-in-interest to the Committee and the Debtor in connection with any motions, objections, or requests for relief Filed by the Committee or the Debtor that are pending as of the Effective Date, and the Liquidation Trustee shall be deemed substituted for the Committee or the Debtor, as applicable, in all such pending matters without any further action by the Committee, the Debtor, the Liquidation Trustee, or the Bankruptcy Court.

On the Effective Date, any other statutory committee appointed in the Chapter 11 Case shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Case.

### O.    Waiver or Estoppel

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtor or its counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Court prior to the Confirmation Date.

### P.    Closing of the Chapter 11 Case

The Liquidation Trustee shall, promptly after full administration of the Chapter 11 Case, File with the Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Court or close the Chapter 11 Case.

Submitted on this 7th day of September 2022


Red River Waste Solutions, LP


By:  */s/ James Calandra*
Name: James Calandra
Title: Chief Restructuring Officer

Dated:  September 7, 2022

Respectfully submitted,

/s/ Jack G. Haake

Marcus A. Helt, Esq. (Texas Bar #24052187)
Jane A. Gerber, Esq. (Texas Bar #24092416)
Jack G. Haake, Esq. (Texas Bar #24127704)
**MCDERMOTT WILL & EMERY LLP**
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201
Tel:    (214) 210-2821
Fax:    (972) 528-5765
Email: mhelt@mwe.com
Email: jagerber@mwe.com
Email: jhaake@mwe.com

*COUNSEL FOR THE DEBTOR*
*AND DEBTOR IN POSSESSION*

### Certificate of Service

I certify that on September 7, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

/s/ Jack G. Haake

Jack G. Haake

## EXHIBIT A

The Liquidation Trust Waterfall[3] provides the order of payments under Global Settlement as set forth herein. Following the payment of the Union Bank Effective Date Settlement Payment, the Debtor Professionals' Initial Payment, Committee Professionals' Initial Payment, and the Allowed General Administrative Expense Claims, proceeds of the Liquidation Trust Assets, as they become available for Distribution, shall be distributed to the Liquidation Trust Beneficiaries as follows:

A.    First, provided the Debtor receives the Nashville Additional Payment, $100,000 to pay $100,000.00 of the Committee Professionals' Initial Payment Shortfall.

B.    Second, provided the Debtor receives the Nashville Additional Payment, $250,000 to pay the Debtor Professionals.

C.    Third, $500,000.00 will be distributed by the Liquidation Trustee to the Liquidation Trust General Unsecured Beneficiaries;[4]

D.    Fourth, the next $5,000,000.00 will be paid to the following parties based on the following pro rata amounts:

   i.    Liquidation Trust Union Bank Beneficiaries will receive sixty-seven percent (67%) (representing up to $3,350,000.00);

   ii.    Liquidation Trust Debtor Professionals Beneficiaries will receive thirteen percent (13%) (representing up to $650,000.00); and

   iii.    Liquidation Trust General Unsecured Beneficiaries will receive twenty percent (20%) (representing up to $1,000,000.00).

E.    Fifth, if the Debtor Professionals' Initial Payment is less than $2,692,000.00, then the resulting shortfall will be paid with the next available funds until the Debtor Professionals have received the full $2,692,000.00; and

F.    Sixth, all proceeds recovered by the Liquidation Trust over $5,850,000.00 (and the amount in subsection E above) will be paid according to the following amounts:

   i.    Liquidation Trust Union Bank Beneficiaries will receive 33.3% of such proceeds;

   ii.    Liquidation Trust Equity Beneficiaries will receive 33.3% of such proceeds; and

   iii.    Liquidation Trust General Unsecured Beneficiaries will receive 33.4% of such proceeds.

---

[3] Capitalized terms used but not defined herein shall have the meanings given to them in the Plan.
[4] Equity shall have an Allowed General Unsecured Claim in the amount of $266,000.00.

# **EXHIBIT B**

Confirmation Notice

DM_US 190743286-8.114930.0011

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **RED RIVER WASTE SOLUTIONS, LP,**[1] | ) | **Case No. 21-42423 (ELM)** |
| | ) | |
| **Debtor.** | ) | |
| | ) | |

**NOTICE OF CONFIRMATION, EFFECTIVE DATE, AND
ADMINISTRATIVE EXPENSE CLAIMS BAR DATE**

**PLEASE TAKE NOTICE** that, on September [_], 2022, the United States Bankruptcy
Court for the Northern District of Texas (the "Court") entered the *Order Confirming Modified
Fourth Amended Plan for Red River Waste Solutions, LP* [Docket. No. ____] (the "Confirmation
Order"). Among other things, the Confirmation Order approved the Debtor's *Fourth Amended
Plan for Red River Waste Solutions, LP*, a copy of which was attached to the Confirmation Order
(the "Plan") and authorized the above captioned debtor (the "Debtor") to implement the Plan on
the Effective Date.

**PLEASE TAKE FURTHER NOTICE** that, on September [_], 2022, the Effective Date
under the Plan occurred.

**PLEASE TAKE FURTHER NOTICE** that the Plan establishes a deadline for Filing
requests for payment of Administrative Expense Claims, which: (a) with respect to General
AdministrativeExpense Claims shall be thirty (30) days after the Confirmation Date; and (b) with

---

[1] The last four digits of the Debtor's taxpayer identification number are 8719. The Debtor's principal office is
located at 4004 East Hwy, 290 West, Dripping Springs, Texas 78620.

1

respect to Professional Claims, shall be sixty (60) days after the Confirmation Date. Any such

Administrative Expense Claim not filed by the applicable Administrative Expense Claims Bar

Date shall be deemed disallowed and expunged in its entirety, without further Order of the

Bankruptcy Court or any action required by the Debtor or the Liquidation Trustee. For the

avoidance of doubt, the Administrative Expense Claims Bar Date applies to all General

Administrative Expense Claims, including such Claims filed or sought under section 503(b)(9) of

the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE** that copies of all documents filed in this chapter

11 case are available free of charge by visiting

https://cases.stretto.com/redriverwastesolutions/court-docket/.  You may also obtain copies of any

pleadings by visiting the Court's website at https://ecf.txeb.uscourts.gov in accordance with the

procedures and fees set forth therein.

Dated:  September __, 2022                    Respectfully submitted,

                                        */s/ Jack G. Haake*
                                        Marcus A. Helt, Esq. (Texas Bar #24052187)
                                        Jane A. Gerber, Esq. (Texas Bar #24092416)
                                        Jack G. Haake, Esq. (Texas Bar #24127704)
                                        **MCDERMOTT WILL & EMERY LLP**
                                        2501 North Harwood Street, Suite 1900
                                        Dallas, Texas 75201
                                        Tel:    (214) 210-2821
                                        Fax:    (972) 528-5765
                                        Email: mhelt@mwe.com
                                        Email: jagerber@mwe.com
                                        Email: jhaake@mwe.com

                                        *COUNSEL FOR THE DEBTOR*
                                        *AND DEBTOR IN POSSESSION*

DM_US 190743286-8.114930.0011

# **EXHIBIT C**

## Retained Causes of Action

DM_US 190743286-8.114930.0011

## Retained Causes of Action

The retained Causes of Action (the "<u>Retained Causes of Action</u>")[1] specifically include, but are not limited to, any claims of the Estate related to the specific litigation listed in the Debtor's Statement of Financial Affairs (as supplemented and amended) and schedules (as supplemented and amended), including, but not limited to, the causes of action identified against (i) the Debtor's former Mezzanine Lenders Ironwood Mezzanine Funds III-A, LP; Ironwood Mezzanine Funds III, LP; Patriot Capital III SBIC, LP; and Patriot Capital III, LP, (ii) any current or former directors, officers, members, managers, insiders (whether statutory or non-statutory insiders), affiliates, employees, related person, or individual, agents, professionals, advisors, consultants, and Affiliates of the Debtor or the D&O Policies, including damage to goodwill or reputation; (iii) current and former holders of Interests in the Debtor, (iv) any Person against whom the Debtor or Liquidation Trustee may assert an Avoidance Action or Chapter 5 cause of action; (v) Brown Gibbons Lang & Company; (vi) the city of Fort Wayne, Indiana, (vii) the city of Nashville, Tennessee,[2] (viii) Huntsville, Alabama, (ix) Hardin County, Kentucky, (x) Union City, Tennessee, (xi) Del Rio, Texas, (xii) BDO USA LLC, (xiii) Platform Waste Solutions, LLC, (xiv) all parties asserting secured interests in the Debtor's assets other than MUFG Union Bank, N.A., (xv) all parties asserting administrative claims in this case, (xvi) against any affiliated, related, predecessor, or successor person or entity of any person or entity described in subparagraphs (i – xv); (xvii) any agent, employee, owner, advisor, or other person or entity affiliated with any foregoing person or entity in subparagraphs (i – xvi); and (xviii) the following Retained Causes of Action and claims, all of which are retained by the Plan and the Confirmation Order:

> all claims and Retained Causes of Action listed in, referenced in, or attached as an exhibit to the Plan, the Disclosure Statement, the Schedules, Statements of Financial Affairs, or in any Plan Document, and all Claims and Causes of Action for all contract theories of recovery, including contract and usury, quasi-contract claims, including quantum meruit, promissory estoppel, suit on a sworn account, money had and received, tort theories of liability, including tortious interference with existing contract, tortious interference with contractual/business relations, conversion, breach of fiduciary duty, fraud, bad faith denial of coverage or other insurance claim, constructive eviction, wrongful eviction, wrongful foreclosure, malpractice, libel, slander, malicious prosecution, negligence, gross negligence, premises liability, trade-secret misappropriation, misrepresentation; breach of warranty claims and related theories of recovery; statutory claims and related theories of recovery, including claims under the Bankruptcy Code, including objections to the allowance of claims for disgorgement or otherwise, including any related to extent, priority, subordination, or validity of liens, claims under 11 U.S.C. §§ 509, 510, 542, 543, 544, 547, 548, 549, and 550, claims pursuant to the Texas Business and Commerce

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Plan.
[2] If the Nashville Settlement is approved, the Claims and Causes of Action held by the Debtor will be released pursuant to the terms of the Plan and Nashville Settlement.

Code, including preferences, fraudulent transfers under all applicable law, including chapter 27, and claims pursuant to title 18 U.S.C., participatory, vicarious, secondary, and related theories of liability including, without limitation, aiding and abetting, conspiracy, principal-agent, partnership, alter ego, common enterprise, joint and several liability, proportionate responsibility, contribution, and veil piercing; equitable claims including claims for lien subordination and contempt; any such claim or cause of action relating to any counterclaim, demand, controversy, cost, debt, sum of money, account, reckoning, bond, bill, damage, obligation, liability, objection, legal proceeding, equitable proceeding, and execution of any nature, type, or description, avoidance action, fraudulent-transfer action, strongarm-power action, state-law fraudulent-transfer action, improper assignment of interest, negligence, gross negligence, willful misconduct, usury, fraud, deceit, misrepresentation, conspiracy, unconscionability, duress, economic duress, defamation, control, interference with contractual and business relations, conflict of interest, misuse of insider information, concealment, disclosure, secrecy, misuse of collateral, wrongful release of collateral, failure to inspect, environmental due diligence, negligent loan processing and administration, wrongful recoupment, wrongful setoff, violations of statutes and regulations of governmental entities, instrumentalities and agencies, equitable subordination, debt recharacterization, substantive consolidation, securities and antitrust laws violations, tying arrangements, deceptive trade practices, breach or abuse of any alleged fiduciary duty, breach of any special relationship, course of conduct or dealing, obligation of fair dealing, obligation of good faith, at law or in equity, in contract, in tort, or otherwise, known or unknown, suspected or unsuspected; and any claims or causes of action related to any matter listed on the Schedules or Statement of Financial Affairs of the Debtor, including all attachments and amendments thereto, which include all payments made by the Debtor on or within ninety (90) days before the Petition Date, or between ninety (90) days and one (1) year before the Petition Date if such Creditors at the time of such transfer was an Insider.

The Liquidating Trust shall have the right to supplement the Retained Causes of Action as necessary. In connection with the Retained Causes of Action, the following is designated as potential damages claims:

all available theories of recovery and damages, including, without limitation, all actual, punitive, and other statutory damage claims, rights to reimbursement and costs, and all other relief, general or special, at law or in equity, to which the Debtor, the Liquidation Trust, or the Liquidation Trustee may be rightfully entitled.

2

The following non-exhaustive and non-mutually exclusive list of entities and individuals as potential defendants to the Retained Causes of Action includes all names listed in the Debtor's Schedules, and:

All trade vendors and other creditors of the Debtor all entities and individuals that received transfers from or on behalf of the Debtor from October 14, 2017 to the present; all entities and individuals that owed fiduciary duties to the Debtor from October 14, 2017 to the present; all insurance companies with any insurance coverage in place for the benefit of the Debtor from October 14, 2017, to the present; all individuals and entities listed on the Schedules or Statement of Financial Affairs of the Debtor, including any attachments and amendments thereto; all companies that furnished utilities for the Debtor; all unsecured creditors of the Debtor; all investors of the Debtor and any non-Debtor Affiliates; any entity or individual in possession of or having control over property of the Debtor or operations of the Debtor; any entity or individual responsible or who contributed to any losses or damages suffered by the Debtor or its creditors or investors, including, without limitation, (i) the Debtor's former Mezzanine Lenders Ironwood Mezzanine Funds III-A, LP; Ironwood Mezzanine Funds III, LP; Patriot Capital III SBIC, LP; and Patriot Capital III, LP, (ii) any current or former directors, officers, members, managers, insiders (whether statutory or non-statutory insiders), affiliates, employees, related person, or individual, agents, professionals, advisors, consultants, and Affiliates of the Debtor or the D&O Policies, including damage to goodwill or reputation; (iii) current and former holders of Interests in the Debtor, (iv) any Person against whom the Debtor or Liquidation Trustee may assert an Avoidance Action or Chapter 5 cause of action; (v) Brown Gibbons Lang & Company; (vi) the city of Fort Wayne, Indiana, (vii) the city of Nashville, Tennessee,[3] (viii) Huntsville, Alabama, (ix) Hardin County, Kentucky, (x) Union City, Tennessee, (xi) Del Rio, Texas, (xii) BDO USA LLC, (xiii) Platform Waste Solutions, LLC, (xiv) all parties asserting secured interests in the Debtor's assets other than MUFG Union Bank, N.A., (xv) all parties asserting administrative claims in this case, (xvi) against any affiliated, related, predecessor, or successor person or entity of any person or entity described in subparagraphs (i – xv); (xvii) any agent, employee, owner, advisor, or other person or entity affiliated with any foregoing person or entity in subparagraphs (i – xvi); and (xviii) any party that has appeared in the Chapter 11 Cases (collectively referred to as the "Potential Parties").

---

[3] If the Nashville Settlement is approved, the Claims and Causes of Action held by the Debtor will be released pursuant to the terms of the Plan and Nashville Settlement.

3

The Potential Parties include all affiliates, successors, transferees, directors, officers, employees, and other agents of any entity or individual that would otherwise qualify as a Potential Party.

Additionally, the Debtor preserves and retains rights with respect to any Claims, Causes of Action or Avoidance Actions it may have, including but not limited to those arising out of any quasi-contract, any and all tort claims, and any and all claims arising under or relating to any federal, state or local statute, regulation or ordinance, in each case that arise from, or relate in any way to the Municipalities' entitlement, receipt, and/or use of federal or state funding available or provided in response to COVID-19 or any other related disaster, and neither these Global Notes nor the Schedules and Statements shall be deemed a waiver of any such claims, causes of action, or Avoidance Actions or in any way prejudice or impair the assertion of such Claims or Causes of Action. For the avoidance of doubt, "Municipalities" includes: (i) Fort Wayne, Indiana; (ii) Nashville, Tennessee; (iii) Huntsville, Alabama; (iv) Hardin County, Kentucky; (v) Union City, Tennessee; and (vi) Del Rio, Texas.  Claims against Nashville, Tennessee will be released pursuant to the Nashville Settlement.

The Debtor also reserves all section 506(c) surcharge Claims against all creditors who hold a Secured Claim against the Estate except those Secured Creditors who were expressly released in the Sale Order, the Plan, or the Global Settlement.  For the avoidance of doubt, nothing in this Schedule of Retained Causes of Action shall be construed to retain any Claim or Cause of Action expressly released in the Plan or Global Settlement.

The Debtor reserves the right to assert any and all rights, Claims, and Causes of Actions that it has against Platform Waste Solutions, LLC, including, without limitation, rights, Claims, and Causes of Action arising under the *Order (I) Authorizing (A) the Sale of all or Substantially all of the Debtor's Assets Free and Clear of all Claims, Liens, Liabilities, Rights, Interests, and Encumbrances, (B) the Debtor's Entry into and Performance of its Obligations under the Asset Purchase Agreement and Ancillary Agreements, and (C) the Debtor's Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (II) Granting Related Relief* [Docket No. 953] and the Amended and Restated Asset Purchase Agreement by and between Red River Waste Solutions, LP, and Platform Waste Solutions, LLC entered into as of May 3, 2022.

The Liquidation Trust shall have the right to supplement the Retained Causes of Action as necessary throughout its investigation of the Debtor's affairs.

4