Marcus A. Helt (Texas Bar #24052187)
Jane A. Gerber (Texas Bar #24092416)
Jack G. Haake (Texas Bar #24127704)
MCDERMOTT WILL & EMERY LLP
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201
Tel: (214) 210-2821 / Fax: (972) 528-5765
mhelt@mwe.com
jagerber@mwe.com
jhaake@mwe.com

*COUNSEL FOR THE DEBTOR*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RED RIVER WASTE SOLUTIONS, LP,[1] | ) | Case No. 21-42423 (ELM) |
| | ) | |
| Debtor. | ) | |
| | ) | |

## SUMMARY OF SECOND AND FINAL FEE APPLICATION OF
## MCDERMOTT WILL & EMERY LLP FOR COMPENSATION
## FOR SERVICES AND REIMBURSEMENT OF EXPENSES AS
## COUNSEL TO THE DEBTOR AND DEBTOR IN POSSESSION FOR THE
## PERIOD FROM OCTOBER 15, 2021 THROUGH SEPTEMBER 30, 2022

| | |
|---|---|
| **Name of Applicant:** | McDermott Will & Emery LLP |
| **Applicant's Role in Case:** | Counsel to the Debtor and Debtor in Possession |
| **Name of Client:** | Red River Waste Solutions, LP |
| **Petition Date:** | October 14, 2021 |
| **Date of Retention:** | January 19, 2022, effective as of October 14, 2021 [Docket No. 301] |
| **Date of Order Approving Retention:** | January 19, 2022 |
| **Time Period Covered in Application:** | October 15, 2021 through September 30, 2022 |
| **Status of Case:** | Confirmed |
| **Time Period Covered by Prior Applications:** | October 15, 2021 through February 28, 2022 |

---

[1] The last four digits of the Debtor's taxpayer identification number are 8719. The Debtor's principal office is located at 4004 East Hwy, 290 West, Dripping Springs, Texas 78620.

| Total Amounts Awarded in All Prior Applications: | $0.00[2] |
|---|---|
| Total Fees Requested in this Application:[3] | $2,551,882.00 |
| Voluntary Fee Reductions:[4] | $1,144,319.00 (Discounted Rate Total) |
| Total Attorney Fees Requested in this Application: | $2,278,180.50 |
| Total Actual Attorney Hours Covered by this Application: | 2,922.1 |
| Highest Billed Attorney Rate: | $1,295 |
| Average Hourly Rate for Attorneys: | $779.64 |
| Total Paraprofessional Fees Requested in this Application: | $273,701.50 |
| Total Actual Paraprofessional Hours Covered by this Application: | 642.9 |
| Highest Billed Paralegal Rate: | $575 |
| Average Hourly Rate for Paraprofessionals: | $425.73 |
| Average Rate for All Professionals: | $715.82 |
| Reimbursable Expenses Sought in this Application: | $42,180.04 |
| Voluntary Expense Reductions: | $0.00 |

---

[2]  On April 28, 2022, the Debtor filed its *First Interim Fee Application of McDermott Will & Emery LLP for Compensation for Services and Reimbursement of Expenses as Counsel to the Debtor and Debtor in Possession for the Period from October 15, 2021, Through February 28, 2022* [Docket No. 697] (the "First Interim Fee Application"). The first application period covers fees earned and expenses advanced between October 15, 2021, and February 28, 2022 (the "First Application Period"). Following a hearing on May 18, 2022, the Court entered its *Mediation Order* [Docket No. 811] (the "Mediation Order"), which delayed several outstanding hearings, including the hearing scheduled on the First Interim Fee Application. McDermott has received certain payments from the Debtor for work completed and expenses incurred from October 15, 2021, through February 28, 2022, pursuant to the Interim Compensation Order (defined below). The Debtor incorporates the First Interim Fee Application into this Application (defined below) (the First Interim Fee Application and the Application are, individually, an "Application") and, collectively, the "Applications") and will seek approval of all fees identified in the Applications at the same hearing.

[3]  This is the *Second and Final Fee Application of McDermott Will & Emery LLP for Compensation for Services and Reimbursement of Expenses as Counsel to the Debtor and Debtor in Possession for the Period of October 15, 2021 through September 30, 2022* (the "Application"). The information in this Summary as well as in the Application addresses March 1, 2022, through September 30, 2022, which was not previously addressed in the First Interim Fee Application. Further, this Application does not include any fees and expenses incurred post-effective date, although McDermott attorneys and other professionals assisted the Liquidation Trustee get up to speed.

[4]  This Voluntary Fee Reduction is applicable only to the Second Compensation Period. An additional Voluntary Fee Reduction for the First Application Period was included in the First Interim Fee Application.

DM_US 190562749-17.114930.0011

| | |
|---|---|
| **Total Voluntary Fees and Expenses Reductions:**[5] | $1,144,319.00 (Discounted Rate Total) |
| **Total Fees and Expenses Sought in this Application**: | $2,594,062.00 |
| **Interim or Final:** | Second Interim and Final Application |
| **Draw Down Request** | |
| **Retainer Received:** | $290,217.95 |
| **Previous Draw Down(s):** | $65,217.95 (prepetition)[6] |
| **Remaining Retainer (now):** | $225,000.00 |
| **Requested Draw Down:**[7] | $225,000.00 |
| **Retainer Remaining (after):** | $0.00 |
| **Expense Details:** | |
| **Computer Assisted Research: (Westlaw/Lexis/PACER)** | $32,617.78 |
| **Messenger/Courier:** | $1,064.59 |
| **Express Mail:** | $170.19 |
| **Depositions:** | $374.10 |
| **Transcripts: (Dipti Patel)** | $641.75 |
| **Transcripts: (Kathy Rehling)** | $5,319.10 |
| **Reprographics: (Exact Legal Copy Services)** | $784.40 |
| **Reprographics: (Parcels)** | $985.03 |
| **Reprographics: (Reliable)** | $111.10 |
| **Reprographics: (Williams Lea Inc.)** | $35.81 |
| **Filing/Registration Fees:** | $58.00 |
| **Miscellaneous Fees:** | $18.10 |

---

[5]    *Id.*

[6]    Due to an inadvertent accounting error, McDermott's Retention Application (defined below) filed at Docket No. 142 incorrectly stated that McDermott held a Retainer of $290,217.95 on the Petition Date. A draw down in the amount of $65,217.95 occurred prepetition on September 29, 2021, and McDermott maintains a Retainer of $225,000.00.

[7]    This Application includes McDermott's request for this Draw Down.

3

## Summary of Monthly Fee Statements

| Period Covered | Requested | | Paid/Received | |
| --- | --- | --- | --- | --- |
| | Fees | Expenses | Fees | Expenses |
| October 15, 2021, to November 30, 2021 | $363,066.00 | $4,180.77 | $290,452.80 | $4,180.77 |
| December 1, 2021, to December 31, 2021 | $257,107.00[8] | $319.02 | $205,940.82 | $319.02 |
| January 1, 2022, to January 31, 2022 | $330,402.50 | $1,790.92 | $264,322.00 | $1,790.92 |
| February 1, 2022, to February 28, 2022 | $527,148.50 | $2,079.42 | $352,993.67[9] | $0 |
| March 1, 2022, to March 31, 2022 | $416,053.50 | $4,207.15 | $0 | $0 |
| April 1, 2022, to April 30, 2022 | $537,042.50 | $12,442.18 | $0 | $0 |
| May 1, 2022, to May 31, 2022 | $432,602.50 | $7,101.60 | $0 | $0 |
| June 1, 2022, to June 30, 2022 | $342,676.00 | $4,090.26 | $0 | $0 |
| July 1, 2022, to July 31, 2022 | $340,200.50 | $2,204.50 | $0 | $0 |
| August 1, 2022, to August 31, 2022 | $290,388.50 | $7,021.49 | $0 | $0 |
| September 1 2022 to September 30, 2022 | $192,918.50 | $5,112.86 | $0 | $0 |
| **TOTALS:** | **$4,029,606.00** | **$50,550.17** | **$1,113,709.29** | **$6,290.71** |

---

[8]  McDermott's Fee Statement for December 1, 2021 through December 31, 2021, inadvertently excluded fees incurred in the amount of $3,632.47.  As described herein, McDermott has not requested payment for these fees.

[9]  *See* ¶ 17.

DM_US 190562749-17.114930.0011

Dated:  November 10, 2022

/s/ Marcus A. Helt

Marcus A. Helt (Texas Bar #24052187)
Jane A. Gerber (Texas Bar #24092416)
Jack G. Haake (Texas Bar #24127704)
**MCDERMOTT WILL & EMERY LLP**
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201
Tel: (214) 210-2821
Fax: (972) 528-5765
mhelt@mwe.com
jagerber@mwe.com
jhaake@mwe.com

*COUNSEL FOR THE DEBTOR*

Marcus A. Helt (Texas Bar #24052187)
Jane A. Gerber (Texas Bar #24092416)
Jack G. Haake (Texas Bar #241277004)
MCDERMOTT WILL & EMERY LLP
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201
Tel: (214) 210-2821 / Fax: (972) 528-5765
mhelt@mwe.com
jagerber@mwe.com
jhaake@mwe.com

*COUNSEL FOR THE DEBTOR*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| RED RIVER WASTE SOLUTIONS, LP,[1] | ) | Case No. 21-42423 (ELM) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

## SECOND INTERIM AND FINAL FEE APPLICATION OF
## MCDERMOTT WILL & EMERY LLP FOR COMPENSATION
## FOR SERVICES AND REIMBURSEMENT OF EXPENSES AS
## COUNSEL TO THE DEBTOR AND DEBTOR IN POSSESSION FOR THE
## PERIOD FROM OCTOBER 15, 2021 THROUGH SEPTEMBER 30, 2022

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON DECEMBER 6, 2022, AT 1:30 P.M. (PREVAILING CENTRAL TIME) BEFORE THE HONORABLE EDWARD L MORRIS, IN THE ELDON B. MAHON U.S. COURTHOUSE, AND MAY BE ATTENDED REMOTELY (BY VIDEO AND TELEPHONE VIA THE COURT'S WEBEX PLATFORM) AS SET FORTH IN GENERAL ORDER 2021-06.  IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-THREE (23) DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING.  YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

---

[1]   The last four digits of the Debtor's taxpayer identification number are 8719. The Debtor's principal office is located at 4004 East Hwy, 290 West, Dripping Springs, Texas 78620.

**WEBEX CONNECTION INFORMATION AND INSTRUCTIONS MAY BE FOUND IN GENERAL ORDER 2021-06 AND CLERK'S NOTICE 21-05.**

**<u>For WebEx Video Participation/Attendance</u>**:

,https://us-courts.webex.com/meet/morris

**<u>For WebEx Telephonic Only Participation/Attendance</u>**:

Dial-In: 1.650.479.3207

Meeting ID: 473 581 124

**WEBEX HEARING INSTRUCTIONS FOR THE HONORABLE EDWARD L. MORRIS MAY BE FOUND AT THE FOLLOWING WEB ADDRESS:**

https://www.txnb.uscourts.gov/content/judge-edward-l-morris-0

McDermott Will & Emery LLP ("<u>McDermott</u>" or the "<u>Firm</u>"), counsel for Red River Waste Solutions, LP, the debtor in the above-captioned Chapter 11 Case (defined below) (the "<u>Debtor</u>"), hereby files its second and final fee application (the "<u>Application</u>") for final allowance (i) of compensation for professional services performed by McDermott during the second compensation period commencing March 1, 2022, through and including September 30, 2022 (the "<u>Second Compensation Period</u>"), in the amount of $2,551,882.00 as fees for services rendered and for reimbursement of its actual and necessary expenses in the amount of $42,180.04 incurred during the Second Compensation Period; and (ii) of compensation for professional services performed by McDermott during the final compensation period from October 15, 2021, through and including September 30, 2022 (the "<u>Final Compensation Period</u>") in the amount of $4,029,606.00 as fees for services rendered and for reimbursement of its actual and necessary expenses in the amount of $50,550.17. The $4,029,606.00 includes (a) $1,477,724.00 for fees incurred and $8,370.13 in expenses advanced during the First Compensation Period and (b)

2

$2,551,882.00 for fees incurred and expenses advanced during the Second Compensation Period.[2] The First Interim Fee Application filed on April 28, 2022, which specifically sets forth all fees and expenses requested for the First Interim Compensation Period, is incorporated herein by reference. The Debtor seeks final approval of and payment of $4,029,606.00 in fees and $50,550.17 in expenses incurred during the Final Compensation Period, which after the application of the Applied Funds and Unapplied Funds (each as defined below) results in a total balance due of $2,960,156.10 to McDermott. In support of this Application, McDermott respectfully represents as follows:

### Preliminary Statement

1.     During the Second Compensation Period, McDermott's professionals continued to guide the Debtor through the Chapter 11 process by, among other things, (a) successfully marketing and completing a sale of substantially all of the Debtor's assets to a third party; (b) successfully litigating with Union Bank on a number of things, including use of cash collateral to maintain operations for the benefit of the estate and parties in interest; (c) mediating significant disputes, contested matters, and future litigation with Union Bank, the Committee, and Equity,[3] which resulted in the Global Settlement (described in more detail in the Debtor's *Fourth Amended Chapter 11 Plan for Red River Waste Solutions, LP* [Docket No. 1095], as amended and supplemented (the "Plan")); (d) mediating or otherwise settling significant disputes with multiple contract counter-parties, including, without limitation, Metropolitan Government of Nashville and Davidson County, Tennessee ("Nashville"), the City of Fort Wayne, Indiana ("Fort Wayne"), the city of Del Rio, Texas ("Del Rio"), and the Solid Waste Disposal Authority of the City of

---

[2]   This Application also seeks permission to apply any Retainer (defined herein) remaining that exceeds the amounts due to McDermott for fees and expenses incurred by the Debtor prior to the Petition Date.

[3]   Capitalized terms not otherwise defined herein shall have the meanings set forth in the Plan (defined herein).

DM_US 190562749-17.114930.0011

Huntsville, Alabama ("SWDA"); and (e) negotiating resolutions with multiple purchase-money-security-interest and lessor parties, as set forth in the Plan and other filings on the docket.

2.      The services performed and expenses incurred by McDermott during the Second Compensation Period were actual and necessary to preserve and protect the value of the Debtor's estate and minimize any disruption in waste-haul and recycling services. Given the challenging circumstances of this Chapter 11 case and the speed and efficiency with which it has been administered, McDermott's charges for services performed and expenses incurred are reasonable and appropriate under applicable standards. McDermott respectfully requests that the Court approve the Applications and allow final compensation for professional services performed and reimbursement for expenses incurred during the First Compensation Period and the Second Compensation Period.

### Relief Requested

3.      This Application has been prepared in accordance with sections 330(a) and 331 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), Rule 2016-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas (as amended, the "Local Rules"), the U.S. Trustee's *Appendix B Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under United States Code by Attorneys in Larger Chapter 11 Cases* (the "UST Fee Guidelines"), and the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals*, dated January 18, 2022 [Docket No. 296] (the "Interim Compensation Order").

4

4.      The Debtor requests approval of the Applications on a final basis. A proposed form of order granting the relief requested in the Applications on a final basis is attached as **Exhibit A** (the "Proposed Order").

5.      Under the Court's *Order Confirming Fourth Amended Plan for Red River Waste Solutions, LP* [Docket No. 1183] (the "Confirmation Order"), McDermott shall be paid the approved amounts in accordance with the terms of the Global Settlement as described in the Plan. Under the Global Settlement, the Debtor Professionals (McDermott and CRS Capstone Partners LLC ("Capstone")) and the Committee Professionals have agreed to receive deferred payments of their fees and expenses after payment of the Debtor Professionals' Initial Payment. This deferred amount is expected to be $900,000. The Debtor Professionals will then be paid the Debtor Professionals' Unpaid Administrative Claim pursuant to the Global Settlement.

## Jurisdiction and Venue

6.      The United States Bankruptcy Court for the Northern District of Texas (the "Court") has jurisdiction to consider this Application pursuant to 28 U.S.C. § 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The Debtor confirms its consent, pursuant to Rule 7008 of the Bankruptcy Rules, to entry of a final order by this Court.

7.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

8.      On October 14, 2021, the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Petition Date"), initiating this bankruptcy case (the "Chapter 11 Case").

9.      Prior to the Effective Date (defined below) of the Plan, the Debtor operated its business and managed properties as debtor in possession pursuant to §§ 1107(a) and 1108 of the

DM_US 190562749-17.114930.0011

Bankruptcy Code. No statutory trustee or examiner was appointed in this Chapter 11 Case. On October 28, 2021, the Office of the United States Trustee filed the *Amended Appointment of the Official Unsecured Creditors' Committee* [Docket No. 89], appointing the Official Committee of Unsecured Creditors (the "Committee").

10.    On September 30, 2022, the Court entered the Confirmation Order, thereby confirming the Plan. On September 30, 2022 (the "Effective Date"), the Plan became effective. *See* Docket No. 1190.

11.    Additional information regarding the Debtor and this Chapter 11 Case, including the Debtor's business operations, financial condition, and the reasons for and objectives of this Chapter 11 Case, is set forth in the *Declaration of James Calandra in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 2] and the *Statement of Background Information* [Docket No. 3].

### Debtor's Retention of McDermott

12.    On November 12, 2021, the Debtor filed the *Debtor's Amended Application for Entry of an Order Authorizing the Employment of McDermott Will & Emery LLP as Counsel to the Debtor Effective as of the Petition Date* [Docket No. 142] (the "Retention Application").

13.    On January 19, 2022, the Court entered the *Order Authorizing Employment of McDermott Will & Emery LLP as Counsel for the Debtor Effective as of the Petition Date*, [Docket No. 301] (the "Retention Order"). The Retention Order authorizes McDermott to provide the following services to the Debtor:

> (a)    advising the Debtor with respect to its powers and duties as debtor in possession in the continued management and operation of its business and properties;

6

(b)    advising and consulting on the conduct of this Chapter 11
Case, including all of the legal and administrative
requirements of operating in chapter 11;

(c)    attending meetings and negotiating with representatives of
creditors and other parties in interest;

(d)    taking all necessary actions to protect and preserve the
Debtor's estate, including prosecuting actions on the
Debtor's behalf, defending any action commenced against
the Debtor, and representing the Debtor in negotiations
concerning litigation in which the Debtor is involved,
including objections to claims filed against the Debtor's
estate;

(e)    preparing pleadings with this Chapter 11 Case including
motions, applications, answers, orders, reports, and papers
necessary or otherwise beneficial to the administration of the
Debtor's estate;

(f)    representing the Debtor with obtaining authority to continue
using cash collateral and securing post-Petition Date
financing;

(g)    appearing before the Court and any appellate courts to
represent the interests of the Debtor's estate;

(h)    taking any necessary action on Debtor's behalf to negotiate,
prepare, and obtain approval of a disclosure statement and
confirmation of a chapter 11 plan and all related documents;
and

(i)    performing all other necessary legal services for the Debtor
in connection with the prosecution of this Chapter 11 Case,
including, without matter: (a) analyzing the Debtor's leases
and contracts and the assumption and assignment or
rejection thereof; (b) analyzing the validity of liens against
the Debtor; and (c) advising the Debtor on corporate and
litigation matters.

**Summary of Professional Compensation
and Reimbursement of Expenses Requested**

14.    McDermott seeks (a) allowance of compensation for professional services

performed during the Second Compensation Period in the amount of $2,551,882.00 and for

7

reimbursement of expenses incurred in connection with the rendition of such services in the amount of $42,180.04; and (b) final allowance of compensation for professional services performed during the Final Compensation Period (which includes the First Interim Period and the Second Compensation Period) in the collective amount of $4,029,606.00 and for reimbursement of expenses incurred in connection with the rendition of such services in the amount of $50,550.17. During the Second Compensation Period, McDermott attorneys, paraprofessionals, and other non-legal staff expended a total of 3,565 hours in connection with the necessary services performed. During the Final Compensation Period, McDermott attorneys, paraprofessionals, and other non-legal staff expended a total of 5,456 hours in connection with the necessary services performed.

15.    There is no agreement or understanding between McDermott and any other person, other than members of the Firm, for the sharing of compensation to be received for services rendered in this Chapter 11 Case. During the Final Compensation Period, McDermott received no payment or promises of payment from any source other than the Debtor for services rendered, or to be rendered, in any capacity whatsoever in connection with the matters covered by this Application.

16.    Prior to the Petition Date, the Debtor paid a retainer to McDermott for professional services to be performed and expenses to be incurred in connection with its representation of the Debtor and in preparation of the Debtor seeking relief under Chapter 11. Based on a reconciliation of all charges and expenses through the date of this Application, the balance of the retainer as of the date of this Application is $225,000.00 (the "Retainer"). At this time, McDermott requests the application of this Retainer (a) to McDermott's services provided and expenses incurred prior to the Petition Date; and (b) to the extent the Retainer exceeds these pre-Petition Date amounts, to McDermott's services provided and expenses incurred during the Final Compensation Period.

8

17.     During the course of this Chapter 11 Case and in accordance with the Interim
Compensation Order, the Debtor paid $1,120,000.00 to McDermott for fees and expenses incurred.
As set forth in the Summary of Monthly Fee Statements above, McDermott has applied
$800,000.00 of these funds (the "Applied Funds") to partially satisfy its fees and expenses
requested and disclosed in the First Interim Fee Application. McDermott has not applied
$320,000.00 (the "Unapplied Funds") of the $1,120,000.00 received. At this time, McDermott
requests the application of the Unapplied Funds to McDermott's professional services provided
and expenses incurred after the Petition Date that have not already been satisfied.

18.     The fees charged by McDermott in this case are billed in accordance with
McDermott's existing billing rates and procedures in effect from time to time during the Final
Compensation Period. McDermott's charges for the services rendered by its professionals and
paraprofessionals in this Chapter 11 Case are no greater than the rates charged by McDermott for
professional and paraprofessional services rendered in comparable bankruptcy and non-
bankruptcy related matters in this District. In fact, as part of its agreement to represent the Debtor
in its restructuring, McDermott agreed to a substantial, one-time discount from its standard rates
for its services. The Retention Order approved that discount for the four McDermott attorneys
primarily responsible for this case, Marcus A. Helt, Debbie Green, Jane A. Gerber and Jack G.
Haake (the "Primary Attorneys"). McDermott discounted hourly rates for the other attorneys and
paraprofessionals serving the Debtor in this Chapter 11 Case. The discounted rates for services
provided by Primary Attorneys during the Second Compensation Period resulted in a
$1,108,254.50 savings to the Debtor. The discounted hourly rates for the other attorneys and
paraprofessionals serving the Debtor during the Second Compensation Period reflect an additional

9

$36,064.50 savings to the Debtor, equaling a total savings to the Debtor during the Second Compensation Period of $1,144,319.00.

19.    Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy and non-bankruptcy matters in a competitive national legal market.

### **Supporting Documents**

20.    Attached as **Exhibit B** is the Certification of Marcus A. Helt (the "Helt Certification") regarding McDermott's compliance with the UST Fee Guidelines.

21.    Attached as **Exhibit C** is a schedule of McDermott's attorneys and paraprofessionals who have performed services for the Debtor during the Second Compensation Period, the capacities in which each individual is employed by McDermott, the department in which each individual practices, the hourly billing rate charged by McDermott for services performed by such individuals, the year in which each attorney was first licensed to practice law, where applicable, and the aggregate number of hours expended in this matter and fees billed in connection therewith (the "Schedule of Professional Fees").

22.    For the convenience of the Court and all parties in interest, a schedule setting forth a description of the project categories utilized in this case, the number of hours expended by McDermott partners, associates, and paraprofessionals by category and the aggregate fees associated with each project category is attached as **Exhibit D** (the "Project Categories").

23.    Attached as **Exhibit E** is a schedule of the expenses for which McDermott is seeking reimbursement and a summary specifying the categories of expenses included in the schedule and the total amount for each such expense category (the "Expenses"). An itemized

accounting of each of the expenses for each month in the Second Compensation Period is included in McDermott's Time Records (as defined below).

24.     In addition, McDermott's computerized records of time expended providing professional services to the Debtor and its estate during the Second Compensation Period (the "McDermott's Time Records") are attached as **Exhibit F**. McDermott's computerized records of time expended providing professional services to the Debtor and its estate for the period of October 15, 2021, through and including February 28, 2022, are attached as **Exhibit F to the First Interim Fee Application**.

25.     Attached as **Exhibit G** is a summary and comparison of the aggregate blended hourly rates billed by McDermott's timekeepers to non-bankruptcy matters during the prior twelve-month period ending September 2022, and the blended hourly rates billed to the Debtor during the Second Compensation Period (the "Blended Rate Comparison Chart").

**Summary of Services Performed by
McDermott During Second Compensation Period**

26.     During the Second Compensation Period, McDermott devoted substantial resources and rendered significant professional services to (a) ensure that the Debtor continued to operate its business without interruption and (b) obtain Court approval of various motions designed to maximize value of the estate, including multiple settlements and work towards the Global Settlement, described in more detail in the Plan. The following is a summary of some of the significant professional services rendered by McDermott during the Second Compensation Period, organized in accordance with McDermott's internal time-tracking system, and broken down by project or task codes:

11

A.    **Case Administration (B110)**
Fees:  $158,219.00; Total Hours:  278.8

27.    During the Second Compensation Period, McDermott's services performed in connection with this category relate to, among other things: (a)  working with Stretto, Inc. ("Stretto"), the Debtor's claims and noticing agent, to maintain the complex service list and amend and file the Debtor's Schedules; (b) reviewing and analyzing pleadings; (d) preparing and maintaining a critical dates calendar; (e) reviewing and filing pleadings, including monthly operating reports;  (f) attending various conferences with Debtor's staff, Capstone, and representatives of the U.S. Trustee for the Northern District of Texas (the "U.S. Trustee"); and (g) handling additional tasks which do not appear to be included in other, specific categories.

B.    **Asset Disposition (B130)**
Fees:  $766,226.50; Total Hours:  1,012.0

28.    During the Second Compensation Period, McDermott's services performed in connection with this category relate to, among other things: (a) communicating with potential financing parties and potential bidders; (b) reviewing and revising non-disclosure agreements; (c) reviewing materials from potential bidders; (d) revising and finalizing bidding procedures to address multiple objections; (e) working and negotiating with the stalking horse bidder; (f) drafting and revising asset purchase agreement and related schedules;  (g) communicating with parties concerning formal and informal objections to the Debtor's bid procedures, sale motion, and sale order; (h) addressing assumption and assignment issues related to the sale of the Debtor's assets; (i) resolving credit-bid, allocation, and cure amount issues; (j) finalizing and executing the sale of substantially all of the Debtor's assets to the stalking horse bidder; and (k) addressing post-closing issues.

DM_US 190562749-17.114930.0011

### C.  Relief from Stay/Adequate Protection Proceedings (B140)
Fees: $113,827.50; Total Hours: 153.9

29.    During the Second Compensation Period, McDermott's services performed in connection with this category relate to, among other things: (a) conferring with creditors' counsel regarding stay relief motions and requests for adequate protection; (b) preparing and filing objections to and agreed orders resolving stay relief motions; and (c) preparing for and attending hearings on stay relief motions and requests for adequate protection.

### D.  Meetings/Communications with Creditor (B150)
Fees: $75,399.50; Total Hours: 91.9

30.    During the Second Compensation Period, McDermott's services performed in connection with this category relate to, among other things: (a) communicating with secured and unsecured creditors, including the Committee's counsel; (b) attending conferences with Capstone concerning payments to multiple creditors; (c) conferring with contract counterparties; and (d) attending to settlement negotiations with multiple parties.

### E.  Court Hearings (B155)
Fees: $272,898.00; Total Hours: 399.1

31.    During the Second Compensation Period, McDermott's services performed in connection with this category relate to, among other things: (a) preparing notices, agendas, witness and exhibit lists, and exhibit binders for hearings; (b) preparing witnesses for hearings; (c) preparing arguments for and attending hearings; (d) addressing post-hearing orders and other administrative tasks; and (e) attending to post-hearing conversations and negotiations with parties.

### F.  Fee/Employment Applications (B160)
Fees: $68,443.00; Total Hours: 123.6

32.    During the Second Compensation Period, McDermott's services performed in connection with this category relate to, among other things: (a) reviewing and revising monthly fee statements, including redacting confidential information, as needed; (b) preparing fee

applications for the Debtor and Capstone; (c) drafting a supplemental declaration for Capstone;

(c) preparing fee statements; (d) reviewing fee statements for Committee professionals;

(e) addressing objections to fee applications in preparation for a contested hearing; and

(f) reviewing and revising a draft application to employ Stretto as solicitation agent.

### G.   Fee/Employment Objections (B170)
Fees:  $3,760.00; Total Hours:  5.0

33.    During the Second Compensation Period, McDermott's services performed in

connection with this category relate to, among other things, reviewing and analyzing objections

to the McDermott and Capstone fee applications.

### H.   Assumption/Rejection of Leases (B185)
Fees:  $25,225.50; Total Hours:  37.2

34.    During the Second Compensation Period, McDermott's services performed in

connection with this category relate to, among other things: (a) drafting and revising motions to

reject leases and extend time to assume or reject leases; (b) conducting research and analysis

related to various lease and contract issues; and (c) communicating with lease counterparties.

### I.   Other Contested Matters (B190)
Fees:  $478,031.50; Total Hours:  586.6

35.    During the Second Compensation Period, McDermott's services performed in

connection with this category relate to, among other things: (a) engaging in discovery and legal

research and preparing for contested hearings; (b) communicating with Capstone regarding

pending litigation and settlement matters; (c) preparing for and attending settlement conferences

and other meetings with opposing counsel on contested issues; (d) drafting and revising multiple

settlement agreements; (e) preparing for and attending extensive mediation meetings facilitated by

Judge Mullin; (f) addressing valuation matters; (g) preparing and filing suggestions of bankruptcy

14

in various courts; and (h) addressing insurance, tax, and employment matters related to the Debtor's ongoing operations.

### J.    Business Operations (B210)
Fees: $22,612.50; Total Hours: 27.2

36.     During the Second Compensation Period, McDermott's services performed in connection with this category relate to, among other things: (a) communicating with Capstone on operational and employee issues; (b) addressing on-site operational items at the Debtor's multiple locations; and (c) investigating payroll provider issues.

### K.    Employee Benefits/Pensions (B220)
Fees: $5,110.50; Total Hours: 5.7

37.     During the Second Compensation Period, McDermott's services performed in connection with this category relate to, among other things, researching and addressing (a) employee retention issues; and (b) employee complaints.

### L.    Financing/Cash Collections (B230)
Fees: $116,539.50; Total Hours: 154.6

38.     During the Second Compensation Period, McDermott's services performed in connection with this category relate to, among other things: (a) negotiating with the Committee, secured creditors, and DIP lenders on financing motions, orders, budgets, and a forbearance agreement; (b) preparing for hearings on the Debtor's cash collateral motion; (c) communicating with Capstone regarding DIP lending, cash collateral, and budget issues; and (d) reviewing and revising draft cash collateral orders.

### M.    Tax Issues (B240)
Fees: $4,605.00; Total Hours: 6.8

39.     During the Second Compensation Period, McDermott's services performed in connection with this category relate to, among other things, conferring with Capstone on tax issues.

**N.**     **Insurance (B290)**
Fees:  $39,391.50; Total Hours:  49.8

40.     During the Second Compensation Period, McDermott's services performed in connection with this category relate to, among other things: (a) communicating with Capstone regarding the Debtor's insurance coverage and payments; (b) researching and analyzing insurance issues; (c) conferring with counsel for the Debtor's insurance providers and the Debtor's insurance broker; and (d) preparing and filing motions related to the Debtor's insurance policies.

**O.**     **Claims Administration & Objections (B310)**
Fees:  $26,972.00; Total Hours:  44.4

41.     During the Compensation Period, McDermott's services performed in connection with this category relate to, among other things, (a) reviewing the claims register and conferring with Stretto on the same; (b) conferring with counsel on bar date extensions; and (c) researching and drafting objections concerning the valuation of the Debtor's assets.

**P.**     **Plan and Disclosure Statement (B320)**
Fees:  $370,220.50; Total Hours:  583.5

42.     During the Compensation Period, McDermott's services performed in connection with this category relate to, among other things: (a) revising the Chapter 11 plan, disclosure statement, and solicitation procedures; (b) analyzing and negotiating a plan support agreement; (c) participating in conversations with Capstone on restructuring issues; (d) attending to potential plan-sponsor arrangements; (e) filing and arguing motions to extend the Debtor's exclusive periods to file and solicit a Chapter 11 plan; (f) reviewing and analyzing case claims for appropriate treatment under the Chapter 11 plan; (g) reviewing and analyzing objections to disclosure statement and proposed solicitation procedures; and (h) preparing for hearing on disclosure statement and solicitation procedures.

16

**Q.     General Bankruptcy Advice/Opinions (B410)**
        Fees:  $4,410.00; Total Hours:  4.9

43.     During the Compensation Period, McDermott's services performed in connection with this category relate to, among other things, preparing for and attending board meetings.

44.     In addition, McDermott prepared all necessary motions, objections, applications, orders, responses, and other papers in support of positions taken by the Debtor.

45.     The foregoing professional services were necessary and appropriate to the administration of the Chapter 11 Case. The professional services performed by McDermott were in the Debtor's best interests. Compensation for such services sought is less than market given the complexity, importance, and nature of the issues and tasks that were involved in this case. Every McDermott professional performed the services billed skillfully and efficiently.

46.     The professional services performed by McDermott on the Debtor's behalf during the Second Compensation Period required an aggregate expenditure of approximately 3,565 hours. Of the aggregate time expended, approximately 1,095.8 recorded hours were expended by partners and counsel of McDermott, approximately 1,826.3 hours were expended by associates, and approximately 642.9 recorded hours were expended by paraprofessionals and other non-legal staff of McDermott.[4] The professional services performed by McDermott on the Debtor's behalf during the Final Compensation Period required an aggregate expenditure of approximately 5,455.8 hours. Of the aggregate time expended, approximately 1,792.8 recorded hours were expended by partners and counsel of McDermott, approximately 2,782.2 hours were expended by associates, and approximately 880.8 recorded hours were expended by paraprofessionals and other non-legal staff of McDermott. Of the 14 McDermott attorneys who billed time, 10 attorneys billed fewer than 25

---

[4]     Marcus Helt, Debtor's lead counsel, expended significant time providing professional services to the Debtor during the Second Compensation Period, particularly June 2022, July 2022, August 2022, and September 2022, for which he is not seeking payment in the Applications.

DM_US 190562749-17.114930.0011

hours to this matter during the Second Compensation Period. Of the 8 McDermott paraprofessionals and non-legal staff who billed time, 7 paraprofessionals and non-legal staff billed fewer than 25 hours to this matter during the Second Compensation Period.

47.    During the Second Compensation Period, McDermott billed the Debtor for time expended by attorneys based on hourly rates ranging from $600 to $1,295 per hour. Allowance of compensation in the amount of requested would result in a blended hourly billing rate for McDermott attorneys in the Second Compensation Period of approximately $779.64 (based on 2,922.1 recorded hours for attorneys at McDermott's billing rates at the time of the performance of services).

### Actual and Necessary Disbursements of McDermott

48.    As set forth in the attached **Exhibit E**, McDermott has disbursed $42,180.04 as expenses incurred in providing professional services during the Second Compensation Period. These expenses are reasonable and necessary and were essential to the overall administration of this case.

49.    With respect to photocopying expenses, McDermott does not charge more than $0.10 per page for photocopies, does not charge for incoming facsimile transmissions, and does not charge more than $0.25 per page for outgoing facsimiles. McDermott does not surcharge for computerized research.

### Requested Compensation Should be Allowed

50.    Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 to govern the Court's award of such compensation. *See* 11 U.S.C. § 331. Section 330(a)(1) of the Bankruptcy Code also sets forth the criteria for award of such compensation and reimbursement, which include:

DM_US 190562749-17.114930.0011

(A)     the time spent on such services;

(B)     the rates charged for such services;

(C)     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under [Chapter 11 of the Bankruptcy Code];

(D)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E)     with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F)     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under [Chapter 11 of the Bankruptcy Code].

*See* 11 U.S.C. § 330(a)(3).

51.     In an attempt to establish an objective basis for determining the amount of compensation that is reasonable for attorneys' services pursuant to section 330 of the Bankruptcy Code, the Fifth Circuit has instructed the lower courts that they must explain the findings and reasons on which an award of professional fees is based. *See In re First Colonial Corp. of Am.*, 544 F.2d 1291 (5th Cir. 1977), *cert. denied*, 431 U.S. 904 (1977).

52.     To aid the lower courts, the *First Colonial* court applied the factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The *Johnson Factors* to be considered in determining the "reasonableness" of attorneys' fees are delineated below, and McDermott's compliance therewith, if applicable, is described following each factor:

a.     Time and Labor Required. **Exhibit F** to this Application delineates all of the work performed by McDermott for which compensation is requested during the Second Compensation Period. McDermott submits that the information contained in this exhibit supports the fees requested and reflects the reasonableness of such fees.

19

b. <u>Novelty and Difficulty</u>. McDermott believes the various issues involved in these cases have been complex and challenging. This case has required counsel to draft, review, and address motions (and their respective legal authorities) in a relatively short period of time and prepare for and participate in substantial evidentiary hearings in connection with the same. The specific circumstances of this case, including the highly contentious relationships among the key parties, have also contributed to the complex nature of this engagement.

c. <u>Skill Requisite to Perform the Legal Service Properly</u>. The professionals primarily working on this matter are specialists in bankruptcy, litigation, and related areas of practice. McDermott contends that professionals without such expertise would have expended many more hours addressing the issues in this case with less success.

d. <u>Preclusion of Other Employment</u>. The time demands of the general representation of the Debtor in this case resulted in some disruption of other employment engagements undertaken by McDermott. While no large-scale reassignment of work was required to properly represent the Debtor, this representation did consume a significant amount of time and preclude work for other clients.

e. <u>Customary Fee</u>. The hourly rates charged for each professional and paraprofessional performing services are no greater than, and in some instances lower than, those being charged by professionals with similar qualifications and experience. The rates used in this case are consistent with or lower than the rates customarily charged by McDermott to its usual and regular corporate legal clients. The hourly rates requested herein compare favorably with average costs for similar legal services being provided by national and regional firms. The discounts McDermott has provided to the Debtor during the Final Compensation Period is detailed above in the *Summary of Professional Compensation and Reimbursement of Expenses Requested.*

f. <u>Whether the Fee is Fixed or Contingent</u>. McDermott's fees are neither fixed nor contingent other than on the contingency of allowance by the Court and the availability of assets for payment. Fees are based on the actual total number of hours worked, less hours written off, plus actual expenses incurred.

g. <u>Time Limitations</u>. The representation of a debtor in a Chapter 11 case is inherently time sensitive. McDermott was required to provide capable representation within the time limitations imposed by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, counsel for various parties in interest, and this Court.

h. <u>Amount Involved and Results Obtained</u>. McDermott has assisted the Debtor in all facets of this case. McDermott believes that the information contained herein and in the attached exhibits, as well as the entire record of this Chapter 11 Case, support the reasonableness of the requested compensation.

i. <u>Experience, Reputation, and Ability of the Attorneys</u>. McDermott's partners and associates have a well-established, exemplary reputation within both regional and

20

national bankruptcy communities, and have extensive experience and skill gained through regular appearances in significant representations over many years in bankruptcy cases throughout the United States.

j.   <u>Undesirability of Case</u>. McDermott has not found this case to be undesirable, but rather, considers the issues that have been raised in this case to be of the type that McDermott is trained to adequately address.

k.   <u>Nature and Length of Professional Relationship with Client</u>. McDermott began its representation of the Debtor as general bankruptcy counsel in May 2021.

l.   <u>Awards in Similar Cases</u>. Based on McDermott's experience, the fees requested herein are commensurate with, if not lower than, fees allowed in proceedings of similar scope for the services rendered.

53.   McDermott submits that the compensation requested herein is reasonable and necessary for, beneficial to, and in the best interests of, the Debtor. The professional services rendered by McDermott were appropriate and necessary for the effective administration of this Chapter 11 Case. They were in the best interests of the Debtor, the Committee and other parties-in-interest. Compensation for the foregoing services is commensurate with the complexity, importance, and nature of the problems, issues, and tasks involved, as applicable.  The professional services were performed in an appropriately expeditious and efficient manner.

54.   In sum, the services rendered by McDermott were necessary and beneficial to the Debtor's estate and were consistently performed in a timely manner commensurate with the types of issues involved in this Chapter 11 Case. Accordingly, approval of the compensation for professional services and reimbursement of expenses sought in this Application is warranted.

DM_US 190562749-17.114930.0011

**Notice**

55.     Pursuant to the Interim Compensation Order, this Application has been served upon: (a) counsel for the Debtor, McDermott Will & Emery LLP, Attn.: Marcus A. Helt (mhelt@mwe.com) and Jane A. Gerber (jageber@mwe.com); (b) counsel to MUFG Union Bank, N.A., Chapman and Cutler LLP, Attn.: Michael T. Benz (benz@chapman.com) and Bryan E. Jacobson (bjacob@chapman.com) and Bracewell LLP, Attn: Trey Wood (trey.wood@bracewell.com) and Jonathan Lozano (jonathan.lozano@bracewell.com); (c) counsel to Comerica Bank, Haynes and Boone LLP, Attn: J. Frasher Murphy (frasher.murphy@haynesboone.com) and Jordan E. Chavez (jordan.chavez@haynesboone.com); (d) counsel for the Official Committee of Unsecured Creditors, Womble Bond Dickinson (US) LLP, Attn: Todd A. Atkinson(todd.atkinson@wbd-us.com) and Matthew P. Ward (matthew.ward@wbd-us.com); and (e) the U.S. Trustee for the Northern District of Texas, Attn: Erin M. Schmidt (erin.schmidt2@usdoj.gov) (collectively, the "Notice Parties").

56.     No previous request for the relief sought for the Second Compensation Period herein has been made by McDermott or the Debtor to this or any other Court.

**Conclusion**

57.     McDermott respectfully requests that the Court (i) award compensation of McDermott's compensation for professional services rendered during the Second Compensation Period in the amount of $2,594,062.00, consisting of $2,551,882.00 representing 100% of fees incurred during the Second Compensation Period, and reimbursement in the amount of $42,180.04 representing 100% of actual and necessary expenses incurred during the Second Compensation Period; (ii) award final compensation for professional services rendered during the Final Compensation Period in the amount of $4,080,156.10 consisting of $4,029,606.00 representing

22

100% of fees incurred during the Final Compensation Period, and reimbursement in the amount of $50,550.17, representing 100% of actual and necessary expenses incurred during the Final Compensation Period; and (iii)  grant such other and further relief as is proper and just.

Dated:  November 10, 2022

*/s/ Marcus A. Helt*
Marcus A. Helt (Texas Bar #24052187)
Jane A. Gerber (Texas Bar #24092416)
Jack G. Haake (Texas Bar #24127704)
**MCDERMOTT WILL & EMERY LLP**
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201
Tel: (214) 210-2821
Fax: (972) 528-5765
mhelt@mwe.com
jagerber@mwe.com
jhaake@mwe.com

*COUNSEL FOR THE DEBTOR*

**Certificate of Service**

I certify that, on November 10, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

*/s/ Marcus A. Helt*
Marcus A. Helt

.

23